# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
Petition of Mr. Peter Walker and Mr. Gregory                     : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C.                      of the Bankruptcy Code
LEARNING CENTRES LIMITED,                                        :
                                                                 :
Debtor in a Foreign Proceeding.                                  : Case No. 10-B-_11711_
---------------------------------------------------------------- x


---------------------------------------------------------------- x
In re                                                            :
                                                                 :
Petition of Mr. Peter Walker and Mr. Gregory                     : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA                  of the Bankruptcy Code
HOLDINGS PTY LTD,                                                :
                                                                 :
Debtor in a Foreign Proceeding.                                  : Case No. 10-B-_11712_
---------------------------------------------------------------- x

## VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN PROCEEDINGS AND RELATED RELIEF

Mr. Peter Walker and Mr. Greg Moloney, in their capacities as administrators (the "Administrators" or the "Petitioners") and foreign representatives of A.B.C. Learning Centres Limited (Administrators appointed)(Receivers and Managers appointed) (the "ABC Learning") and A.B.C. USA Holdings Pty Ltd (Administrators appointed)(Receivers and Managers appointed) ("ABC Holdings", and together with ABC Learning, the "Debtors"), who are parties in a proceeding under Australia's *Corporations Act 2001* (Cth) (the "Corporations Act"), file this verified petition pursuant to Chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") seeking recognition of foreign main proceedings and related relief (the "Verified Petition"). In support hereof, the Petitioners respectfully submit the following: (i) the *Declaration of Peter Walker in Support of (I) Administrators' Verified Petition Under Chapter*

*15 for Recognition of Foreign Proceedings and Related Relief; (II) Administrators' Motion for Joint Administration; and (III) Administrators' Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521* (the "Walker Declaration"); (ii) the *Declaration of John Kenneth Martin in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; (II) Administrators' Motion for Joint Administration; and (III) Administrators' Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521* (the "Martin Declaration"); (iii) the *Memorandum of Law in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; and (II) Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521* (the "Memorandum of Law"); (iv) the lists required to be filed with the Chapter 15 Petitions (as defined below) pursuant to Bankruptcy Rule 1007(a)(4) (the "1007(a)(4) Lists"); and (vi) the statements of foreign representatives of the Australian Proceedings (as defined below) required to be filed pursuant to Bankruptcy Code Section 1515 (the "1515 Statements") (collectively, the "Supporting Documents"). In further support hereof, the Petitioners respectfully represent as follows:

### PRELIMINARY STATEMENT

The Petitioners have commenced these Chapter 15 cases by filing the Chapter 15 Petitions contemporaneously with, and accompanied by, all certifications, statements, lists and documents required under Chapter 15 and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). As set forth in the Supporting Documents and herein:

(a) voluntary administration proceedings, which qualify as "foreign main proceedings" under the Bankruptcy Code, respecting the Debtors were duly commenced in Australia;

2

(b) the Debtors' registered offices and places of incorporation are in Australia;

(c) the Debtors carry out nontransitory economic activity in Australia;

(d) the Petitioners are duly authorized to serve as foreign representatives, as defined by section 101(24) of the Bankruptcy Code, and to petition for relief under Chapter 15 of the Bankruptcy Code in connection with the administrations of the Debtors in Australia; and

(e) the Petitioners are entitled to the relief requested.

By the Chapter 15 Petitions, the Petitioners seek recognition of the voluntary administration proceedings of the Debtors (together, the "Australian Proceedings"), through the implementation, substantially in the form attached hereto as Exhibit "A" (the "Proposed Chapter 15 Order"), of an order granting recognition to the Australian Proceedings and granting such other relief as is applicable.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is properly located in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 105(a), 1515, 1517 and 1520 of the Bankruptcy Code.

## BACKGROUND

2. Contemporaneously herewith, on May 26, 2010 (the "Petition Date"), the Petitioners commenced the Debtors' Chapter 15 cases by filing petitions (the "Chapter 15 Petitions") pursuant to section 1504 and 1515 of the Bankruptcy Code. By this Verified Petition, the Petitioners seek recognition of the Australian Proceedings as "foreign main proceedings" as defined in section 1502(4) and 1517(b)(1) of the Bankruptcy Code.

A. The Debtors

3. ABC Learning is the ultimate parent of a group of affiliated companies (together, the "ABC Group") that operated childcare centers in Australia and abroad, including the United Kingdom, the United States of America and New Zealand. ABC Learning is registered and incorporated in Australia and is listed on the Australian Stock Exchange. ABC Learning's registered office and principal place of business is located at 43 Metroplex Avenue, Murarrie, Queensland, 4172. ABC Learning also lists another principal place of business at Level 2, 99 Creek Street, Brisbane, Queensland, 4000. ABC Learning has no assets in the United States other than its direct ownership interests in ABC Delaware (as defined below) and potential recoveries in connection with a pending lawsuit.[1]

4. ABC Holdings is registered and incorporated in Australia. ABC Holdings's registered office and principal place of business is located at 43 Metroplex Avenue, Murarrie, Queensland, 4172. Other than its direct ownership interests in Learning Care Group (US) Inc. ("LCG US"), ABC Holdings has no assets in the United States. ABC Holdings is wholly owned by ABC Learning.

5. In November 2008, at the beginning of the administration proceedings, the ABC Group operated approximately 1,045 childcare centers in Australia alone, and processed approximately 100,000 childcare transactions per week. The ABC Group had approximately 15,000 full time employees in Australia, and also contracted with a significant number of part-time or staff employees. See Walker Declaration, ¶¶ 4-6.

---

[1] ABC Learning is a plaintiff in a lawsuit pending in Nevada in which it is seeking damages of approximately AUS $41 million and the return of certain properties located in Nevada and Virginia. This lawsuit is discussed in more detail in paragraphs 31 to 32, *infra*.

### B. ABC Group's Activities in the United States

6. In addition to its Australian operations, ABC Learning transacted business in the United States primarily through two subsidiaries, A.B.C. Development Learning Centres (USA) Inc. ("ABC Delaware"), a Delaware company, and its indirect interest in LCG US, which was acquired in 2006.

7. ABC Delaware has no principal place of business or employees in the United States. The management and business decisions relating to ABC Delaware are made by ABC Group's management in Australia. ABC Delaware, amongst other things, contracted with developers for the construction and development of childcare facilities located primarily in Florida, South Carolina, Nevada, Virginia, Arizona, Colorado and Georgia. Once developed, the contracts usually provided for ABC Delaware the option to purchase the childcare facilities. ABC Learning guaranteed the obligations of ABC Delaware under many of the development contracts (and related leases) to which ABC Delaware was, and may continue to be, a party.

8. LCG US managed and operated many childcare centers that were already in existence prior to it being acquired by the ABC Group in 2006.[2]

9. In June 2008, ABC Learning, through one of its wholly owned partnerships, sold approximately 60% of its interest in LCG US to LCG Investment Holdings LLC, an affiliate of Morgan Stanley. ABC Holdings holds the remaining 40% minority interest in LCG US. See Walker Declaration, ¶¶ 8-11.

---

[2] LCG US in turn is the 100% owner of Learning Care Group (US) No 2 Inc. which is the 100% owner of Learning Care Group Inc. ("LCGI") and La Petite Holding Inc. ("LPHI"). LCGI and LPHI own and operate further wholly owned subsidiaries which operate in the U.S. under the names of "Childtime," "Tudor Time," "Children's Courtyard," "Children's Garden," "La Petite" and "Montessori Unlimited."

### C. Overview of Australian Insolvency Proceedings

10. As explained in further detail in the Martin Declaration, Australian law has evolved from English law, and is very similar to English common law and rules of equity. In Australia, the formation, operation and dissolution of companies is primarily regulated by the Australian Corporations Act 2001 (the "Corporations Act"). In general, the Corporations Act applies to companies that are either registered or registrable. Locally formed companies, such as the Debtors, are registered on incorporation. The Corporations Act provides for five principal formal insolvency procedures, including, *inter alia*, voluntary administration. See Martin Declaration, ¶¶ 7-8.

11. Section 435A of the Corporations Act provides that voluntary administration is designed to: (a) maximize the chances of the company, or as much as possible of its business, to continue in existence; or (b) if it is not possible for the company or its business to continue in existence, to result in a better return for the company's creditors and members than would result from an immediate winding up of the company. See Martin Declaration, ¶ 10.

12. The administration process commences with the appointment of a voluntary administrator, who acts as the company's agent with the full powers of its officers. The powers of the company officers are suspended and, subject to the overriding rights of a receiver, only the administrator may deal with the company's property during the administration. See Martin Declaration, ¶ 11.

13. The courts in Australia do not have a necessary role in initiating a voluntary administration. Nevertheless, the courts do have general supervisory jurisdiction and there is substantial judicial oversight which can be invoked by interested persons, including the company, a creditor, the administrator or the Australian Securities and Investments Commission.

  000025.1886

Division 13 of Part 5.3A of the Corporations Act sets out the powers conferred by the Corporations Act on the Federal Court of Australia and the Supreme Courts of each state of Australia in relation to voluntary administrations. These powers include (a) section 447A which allows these Courts to "make such order as it thinks appropriate about how this Part is to operate in relation to a particular company"; (b) section 447D which enables the administrator to apply to the Court for directions about the exercise of any of his functions and powers; and (c) section 447E which provides the Court with a supervisory role in relation to the administrator's conduct. Effectively, the court may make orders it considers appropriate for the operation of the voluntary administration regime in relation to the company which is the subject of the administration. See Martin Declaration, ¶¶ 23-27.

D. The Australian Voluntary Administration

14. On or about November 6, 2008, the Board of Directors of ABC Learning and each of the other 38 Australian companies in the ABC Group conducted meetings and entered resolutions (collectively, the "Board Resolutions") concluding that (i) each of the companies of the ABC Group in Australia was or was likely to become insolvent and (ii) that each of the companies of the ABC Group in Australia should appoint Administrators.

15. On November 6, 2008, in accordance with the Board Resolutions, each of the companies of the ABC Group in Australia commenced a voluntary administration proceeding by appointing the Administrators.

16. The commencement of the voluntary administrations resulted in an automatic moratorium on the rights of creditors of the ABC Group to, inter alia, commence or continue suits against these companies and their respective properties. See Walker Declaration, ¶¶ 12-14.

7

E.   The Australian Receivership Proceeding

17.   The ABC Group's operations were funded in part by loans made by a syndicate of mainly Australian based banks (the "Secured Bank Loans"). The loans are secured by substantially all of the assets of the ABC Group. The commencement of the administration proceedings triggered a default under the loan documents evidencing the Secured Bank Loans. Pursuant to the loan documents and provisions of Australian law, the commencement of the administration proceeding and resulting default gave the secured lenders the right to appoint a receiver.

18.   On November 6, 2008, following the commencement of the voluntary administration, CBA Corporate Services (NSW) Pty Limited ("CBA"),[3] acting on behalf of the secured banking syndicate, appointed Mr. Murray Campbell Smith, Mr. John Patrick Cronin and Mr. Christopher Honey of McGrathNicol[4] as joint receivers and managers of the ABC Group (the "Receivers"). As described in the Martin Declaration, the primary role of a receiver is to protect and recover property for the benefit of the secured creditors who appointed the receiver and return any surplus to the company. See Walker Declaration, ¶¶ 15-16.

19.   The appointment of a receiver, however, does not nullify the voluntary administration. Rather, the administration and receivership proceedings proceed in tandem, with the rights and responsibilities of the administrators and the receivers set by Australian law. See Martin Declaration, ¶ 64.

---

[3]  CBA is the Security Trustee of the A.B.C. Learning 2008 Security Trust (the "Bank Lenders") which is owed approximately AUS $1 billion from the ABC Group. The Bank Lenders have a fixed and floating charge (i.e., a first priority security interest) in substantially all of the property of the ABC Group.

[4]  McGrathNicol is an independent advisory firm specialising in corporate advisory, forensic, transaction services and corporate recovery. The firm has approximately 270 people with offices in all major Australian cities.

20. Here, the voluntary administration and receivership processes are occurring concurrently, with the Administrators carrying out their roles and responsibilities as administrators under Australian law and the Receivers carrying out their roles and responsibilities as receivers under Australian law. Paragraphs 73 to 78 of the Martin Declaration provide a detailed description of the interplay between the roles and responsibilities of administrators and receivers.

F.  Status of the Administration

21. The Australian administration process requires the occurrence of two separate meetings of creditors. The purpose of the first meeting is to determine whether a committee of creditors is required (and if so, to compose such committee) and whether to remove the administrators and to appoint alternate administrators. See Martin Declaration, ¶¶ 14-17. On November 18, 2008, a first meeting of creditors was held and a committee of creditors was appointed to advise and assist the Administrators in the administration of the ABC Group.

22. Under Australian law, a second meeting of creditors must be held during which the creditors will determine the outcome of the administration. See Martin Declaration, ¶ 19. At this second meeting, creditors can vote for one of the following outcomes:

- that the company under administration execute a Deed of Company Arrangement;

- that the administration end with control of the company reverting back to the companies' directors; or

- that the company be wound up (and ultimately liquidated).

23. The Administrators, on three separate occasions, filed an application with the Federal Court of Australia (the "Australian Court") seeking an extension of time to convene the second meeting of creditors. The Australian Court granted each of the Administrators' requests, and eventually required that the second meeting be convened no later than March 31, 2010. The

meeting was held on March 26, 2010. At the meeting, instead of voting on the options outlined above, the creditors passed a motion to adjourn the meeting for an additional 45 days. The meeting is currently scheduled to recommence on June 2, 2010. Accordingly, as of the date hereof, no formal decision has been made by the creditors regarding the path to be taken by the Debtors (and the entire ABC Group), although it is expected that the creditors of the ABC Group will elect to proceed into a formal winding-up (liquidation) process.

24. During the course of the past year and a half, the following steps have been taken to sell the bulk of ABC Group's assets in Australia:

- In December 2008, the Receivers were able to identify which of the 1,045 childcare centers could be operated beyond December 31, 2008 on a profitable basis (the "Profitable Centers") and those that could not continue to operate profitably as a going concern without financial support (the "Non-Profitable Centers");

- On or about December 10, 2008, the Receivers announced that on December 31, 2008, 55 Non-Profitable Centers would close and their customer base would merge with other centers, the remaining 262 Non-Profitable Centers would not continue to be operated or supported by the Receivers, and that the Receivers would continue to operate the remaining 720 Profitable Centers;

- The Australian Federal Government agreed to provide financial support for the continuing operation of the 262 Non-Profitable Centers with a view to the centers being sold as soon as practicable. In order to facilitate the sale process, the Non-Profitable Centers were transferred to a dormant subsidiary of the ABC Group to which neither Administrators or Receivers had been appointed, and the Australian Federal Government sought the appointment of a court-appointed receiver (the "Government Receiver") for that entity;

- By June 30, 2009, the Government Receiver (with the consent of the Receivers) had sold most of the Non-Profitable Centers to a large number of separate purchasers. As of the date hereof, all of the Non-Profitable Centers have been sold;

- In late August 2009, the Receivers commenced a sale process for the remaining 720 Profitable Centers. That process involved the production of a data-room for due-diligence by entities interested in the purchase of all or substantially all of the Profitable Centers;

- On December 23, 2009, the Receivers agreed to the sale of approximately 678 of the Profitable Centers, along with the ABC Group Australian head office functions, to

GoodStart Childcare Limited ("GoodStart"). The Receivers have subsequently sought separate purchasers for those of the Profitable Centers not sold to GoodStart;

- The sale to GoodStart involves a staged completion process which is dependent on achieving an assignment of various threshold numbers of the leases of the properties from which the centers are operated to GoodStart. Since December 2009, negotiations with lessors has been on-going so as to achieve the assignment of the leases.

See Walker Declaration, ¶¶ 19-22.

### G. The Arizona Lawsuit Against ABC Learning and ABC Delaware

25. ABC Learning and ABC Delaware are defendants in a lawsuit brought by RCS Capital Development LLC ("RCS") that was filed in the Superior Court of Arizona in Marciopa County (the "Arizona Lawsuit"). The claims asserted in the Arizona Lawsuit relate to a development contract between RCS and ABC Delaware for the development of childcare centers in Arizona, Colorado, Georgia and certain parts of Nevada. ABC Learning guaranteed ABC Delaware's obligations under the development contract in question. RCS sought damages against ABC Learning and ABC Delaware in excess of $107 million, based on a number of claims, including, without limitation, breach of the development contract.

26. Despite vigorously defending the Arizona Lawsuit, on May 14, 2010, a jury verdict was issued against ABC Learning and ABC Delaware in the amount of $47,031,574. ABC Learning and ABC Delaware are considering their respective rights of appeal.

27. While judgment has not yet been entered against ABC Learning and ABC Delaware, RCS has already sought to commence enforcement and collection efforts. First, on May 18, 2010, RCS sent a letter to "Learning Care Group" (generically) laying claim to ABC Learning's interest in Learning Care Group and making threats if ABC Learning's interest in Learning Care Group is transferred. RCS sent this letter despite the fact that (i) ABC Learning, the party to the Arizona Lawsuit, has no direct interest in Learning Care Group (as noted above,

ABC Learning's wholly owned subsidiary, ABC Holdings, owns 40% of the shares of LCG US), and (ii) neither ABC Holdings or LCG US were parties to the Arizona Lawsuit.

28. Second, on or about May 20, 2010, RCS filed an application by order to show cause with the Arizona court seeking a preliminary injunction restraining ABC Learning and ABC Delaware from transferring any of its assets outside the U.S. The hearing date for the preliminary injunction is scheduled for May 27, 2010. See Walker Declaration, ¶¶ 23-27.

H. The Nevada Lawsuit

29. ABC Learning and ABC Delaware are plaintiffs in a lawsuit pending in the District Court, Clark County, Nevada (the "Nevada Lawsuit") against RCS, American Childcare Properties Inc. ("ACCP") and Mr. Kenneth Krynski (a former principal of ACCP).

30. The Nevada Lawsuit arises out of a dispute concerning a development arrangement between the parties in which ABC Learning advanced certain funds to ACCP for the development and eventual purchase of 11 properties located in Nevada and Virginia. In the Nevada Lawsuit, ABC Learning has sued to recover in excess of AUS $41 million (based on the monies advanced by ABC Learning) and, alternatively, for specific performance to recover the subject properties, based on multiple legal causes of action, including, without limitation, breach of constructive trust, fraudulent transfer, unjust enrichment and breach of contract. ABC Learning and ABC Delaware have also filed *lis pendens* against certain of the properties that are the subject of the Nevada Lawsuit. The Nevada Lawsuit is in the discovery stage, with a trial date scheduled for February 7, 2011. See Walker Declaration, ¶¶ 28-30.

**STATUTORY BASIS FOR RELIEF REQUESTED**

31. As set forth fully in the Memorandum of Law, Chapter 15 of the Bankruptcy Code was specifically designed to assist a foreign representative, such as the Petitioners, in the performance of its duties. One of Chapter 15's express objectives is the "fair and efficient

administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3). Here, granting recognition to the Australian Proceedings is necessary to ensure an orderly administration of the Debtors' financial affairs by the Petitioners and to maximize the value to be distributed to all creditors and parties in interest. Without recognition and extension of the Australian moratorium, there is nothing to prevent RCS and other creditors in the United States from continuing or commencing enforcement actions against the Debtors' assets. This would undermine the administration process in Australia. It would be unfair and contrary to the policies underlying Chapter 15 for any creditors in the United States to unilaterally pursue remedies in the United States that advantage them over similarly situated creditors in Australia that are complying with the stay and procedures in Australia.

32. The Chapter 15 Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code. Moreover, the relief requested by the Petitioners is well within the scope of Chapter 15 of the Bankruptcy Code, which authorizes this Court to: (i) recognize a "foreign proceeding" upon the proper commencement of a case under Chapter 15 by a "foreign representative;" and (ii) grant assistance in the United States to such foreign representative in connection with the foreign proceeding. Additionally, ABC Learning has assets in this district consisting of its direct ownership interest in ABC Delaware, a Delaware company. Further, the relief requested herein is necessary and appropriate under Chapter 15 of the Bankruptcy Code and is consistent with the goals of international cooperation and assistance to foreign courts, embodied in Chapter 15 of the Bankruptcy Code.

# RELIEF REQUESTED

33. The Petitioners, as the foreign representatives of the Debtors, seek entry of the Proposed Chapter 15 Order granting the following relief:

   (a) recognition of the Australian Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code; and

   (b) all relief afforded a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code, as of right if the Australian Proceedings are recognized as foreign main proceedings.[5]

34. In addition, the Proposed Chapter 15 Order provides further additional relief, as authorized by section 1521 of the Bankruptcy Code, including, among other things, that:

   (i) all persons and entities are permanently enjoined from seizing, repossessing, transferring, relinquishing or disposing of any property of the Debtors or the proceeds thereof in the United States;

   (ii) all persons and entities are permanently enjoined from: (a) commencing or continuing any action or legal proceeding (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, administrative action, proceeding or process whatsoever), including by way of counterclaim, against the Debtors, or any of their property in the United States, or any proceeds thereof, and seeking discovery of any nature against the Debtors; (b) enforcing any judicial, quasi-judicial, administrative judgment, assessment or order, or arbitration award, or commencing or continuing any action or legal proceeding (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, administrative action, proceeding or process whatsoever) or any counterclaim to create, perfect or enforce any lien, attachment, garnishment, setoff or other claim against the Debtors or any of their property in the United States, or any proceeds thereof, including, without limitation, rights under reinsurance or retrocession contracts; (c) invoking, enforcing or relying on the benefits of any statute, rule or requirement of federal, state, or local law or

---

[5] Alternatively, if this Court determines that the Australian Proceedings are foreign nonmain proceeding, as defined in section 1502(5) of the Bankruptcy Code, rather than foreign main proceedings, the Petitioners respectfully request that this Court grant all relief afforded a foreign main proceeding, pursuant to section 1520 of the Bankruptcy Code, as additional relief for a foreign nonmain proceeding as authorized by section 1521 of the Bankruptcy Code.

regulation requiring the Debtors to establish or post security in the form of a bond, letter of credit or otherwise as a condition of prosecuting or defending any action or legal proceeding (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, administrative action, proceedings or process whatsoever) and such statute, rule or requirement will be rendered null and void for such proceedings;

(iii) every creditor of the Debtors and every party to any action or other legal proceeding (including, without limitation, arbitration or any judicial, quasi-judicial, administrative action, proceeding or process whatsoever) pending in connection with any claim in which a Debtor is or was named as a party, or as a result of which a claim may be established, is required to place the Petitioners' United States counsel (Chadbourne & Parke LLP, 30 Rockefeller Plaza, New York, NY 10112, Attn: Howard Seife, Esq. and Andrew Rosenblatt, Esq.; and Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, Attn: Joel Waite, Esq.) on the master service list of any such action or other legal proceeding, and to take such other steps as may be necessary to ensure that such counsel receives: (a) copies of any and all documents served by the parties to such action or other legal proceeding or issued by the court, arbitrator, administrator, regulator or similar official having jurisdiction over such action or legal proceeding; and (b) any and all correspondence, or other documents circulated to parties named in the master service list;

(iv) all persons and entities in possession, custody or control of property of the Debtors or the proceeds thereof, are required to turn over and account for such property or proceeds thereof to the Petitioners;

(v) nothing in the Proposed Chapter 15 Order shall in any respect prevent the commencement or continuation of any action or legal proceeding against any person or entity other than the Debtors; provided, however, that if any third party shall reach a settlement with, or obtain a judgment against, any person or entity other than the Debtors, such settlement or judgment shall not be binding on or enforceable against the Debtors;

(vi) no action taken by the Petitioners, their successors, directors, officers, agents, employees, representatives, advisers or attorneys, or any of them, in preparing, disseminating, applying for, implementing or otherwise acting in furtherance of the Australian Proceedings, the Proposed Chapter 15 Order, any further order for additional relief in the ancillary Proceedings or cases filed under Chapter 15 of the Bankruptcy Code, or any adversary proceedings

YCST01:9708857.1  000025.1886

in connection therewith as the Bankruptcy Code may make, will be deemed to constitute a waiver of the immunity afforded to the Petitioners and their successors, directors, officers, agents, employees, representatives, advisers or attorneys, pursuant to section 1510 of the Bankruptcy Code;

(vii) except as otherwise provided herein or in the Australian Proceedings, all persons are permanently enjoined from commencing or continuing any proceedings against the Debtors, the Petitioners, or any of their respective directors, officers, agents, employees, representatives, financial advisers or attorneys, or any of them with respect to any claim or cause of action, in law or in equity, which may arise out of the construction or interpretation of the Australian Proceedings or out of any action taken or omitted to be taken by either of the Debtors in connection with the administration of the estates;

(viii) the Petitioners are authorized to transfer to the foreign proceedings subject to the Chapter 15 case for distribution, any monies or assets of the Debtors, which the Debtors or the Petitioners have or may hereafter recover;

(ix) this Court shall retain jurisdiction with respect to the enforcement, amendment or modification of the Proposed Chapter 15 Order, and requests for any additional relief in the Chapter 15 case and all adversary proceedings in connection therewith properly commenced and within the jurisdiction of this Court; and

(x) the Petitioners are awarded such other and further relief as this Court may deem just and proper.

## NOTICE

35. As set forth more fully in the Petitioners' Motion for Order (I) Specifying Form and Manner of Service or Notice of Filing of Petitions and Other Pleadings Pursuant to Chapter 15 of the Bankruptcy Code, and (II) Scheduling a Hearing on Chapter 15 Petitions for Recognition, the Petitioners will serve the Verified Petition on the "Notice Parties" listed therein, in the form and manner proposed therein. Under the circumstances, the Petitioners respectfully submit that the foregoing provides due and adequate notice to all interested parties, and that no further notice is required.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the accompanying Memorandum of Law, the Walker Declaration, and the Martin Declaration, the Petitioners respectfully request that this Court, after notice and a hearing, (i) grant the relief requested; (ii) enter an order substantially in the form attached hereto as Exhibit A; and (iii) grant such further relief as may be just and proper.

Dated: Wilmington, Delaware
May 26, 2010

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_/s/ Joel A. Waite_
Joel A. Waite (No. 2925)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

**CHADBOURNE & PARKE LLP**
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Members of the Firm
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

Attorneys for the Petitioners

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re                                                              :
                                                                   :
Petition of Mr. Peter Walker and Mr. Gregory      : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C.      of the Bankruptcy Code
LEARNING CENTRES LIMITED,                          :
                                                                   :
Debtor in a Foreign Proceeding.                    : Case No. 10-B-_11711_
------------------------------------------------------------------ x


------------------------------------------------------------------ x
In re                                                              :
                                                                   :
Petition of Mr. Peter Walker and Mr. Gregory      : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA  of the Bankruptcy Code
HOLDINGS PTY LTD,                                  :
                                                                   :
Debtor in a Foreign Proceeding.                    : Case No. 10-B-_11712_
------------------------------------------------------------------ x

I, Peter Walker, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

I am an Administrator. I have the full authority to verify this Petition.

I have read the foregoing Petition, and I am informed and believe that the factual allegations contained therein are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of May 2010 in Australia

_/s/ Peter Walker_

Administrator of A.B.C. Learning Centres Limited
(Administrators appointed)(Receivers and
Managers appointed) and
A.B.C. USA Holdings Pty Ltd (Administrators
appointed)(Receivers and Managers appointed)