# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
In re                                      :

Petition of Mr. Peter Walker and Mr. Gregory    : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C.      of the Bankruptcy Code
LEARNING CENTRES LIMITED,                  :

Debtor in a Foreign Proceeding.            : Case No. 10-B-_11711_
------------------------------------------------------------- x


------------------------------------------------------------- x
In re                                      :

Petition of Mr. Peter Walker and Mr. Gregory    : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA    of the Bankruptcy Code
HOLDINGS PTY LTD,                          :

Debtor in a Foreign Proceeding.            : Case No. 10-B-_11712_
------------------------------------------------------------- x
```

## MEMORANDUM OF LAW IN SUPPORT OF (I) ADMINISTRATORS' VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN PROCEEDINGS AND RELATED RELIEF; AND (II) MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(A), 1519 AND 1521

YOUNG CONAWAY STARTGATT &
TAYLOR, LLP
Co-Counsel for the Petitioners
The Brandywine Building
1000 West Street, 17th Floor P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
Joel A. Waite

CHADBOURNE & PARKE LLP
Co-Counsel for the Petitioners
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100
Howard Seife
Andrew Rosenblatt

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------  x
In re                                                    :

Petition of Mr. Peter Walker and Mr. Gregory             :   In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C.                of the Bankruptcy Code
LEARNING CENTRES LIMITED,                                :

Debtor in a Foreign Proceeding.                          :   Case No. 10-B-_____
-------------------------------------------------------  x


-------------------------------------------------------  x
In re                                                    :

Petition of Mr. Peter Walker and Mr. Gregory             :   In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA            of the Bankruptcy Code
HOLDINGS PTY LTD,                                        :

Debtor in a Foreign Proceeding.                          :   Case No. 10-B-_____
-------------------------------------------------------  x
```

## MEMORANDUM OF LAW IN SUPPORT OF (I) ADMINISTRATORS' VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF FOREIGN PROCEEDINGS AND RELATED RELIEF; AND (II) MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(A), 1519 AND 1521

The Petitioners (as defined herein) as duly authorized foreign representatives, as

defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of

A.B.C. Learning Centres Limited (Administrators appointed)(Receivers and Managers

appointed) and A.B.C. USA Holdings Pty Ltd (Administrators appointed)(Receivers and

Managers appointed) (together, the "Debtors"), by their undersigned counsel, respectfully submit

this Memorandum of Law in support of (i) the Administrators' Verified Petition under Chapter

15 for Recognition of Foreign Main Proceedings and Related Relief dated May 26, 2010 (the

"Verified Petition")[1] and (ii) Motion for *Ex* Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(a), 1519 and 1521.

## PRELIMINARY STATEMENT

By the Verified Petition, the Petitioners, as foreign representatives of the Debtors, seek recognition of the Australian Proceedings as foreign main proceedings. On November 6, 2008, in accordance with the Australian Corporations Act of 2001 (the "Corporations Act") and pursuant to the Instrument of Appointment of Administrators, the Board of Directors of A.B.C. Learning Centres Limited ("ABC Learning") and each of the other 38 companies that formed the "ABC Group" in Australia conducted meetings and entered resolutions (collectively, the "Board Resolution") concluding that (i) each of the companies of the ABC Group was or was likely to become insolvent and (ii) that each of the companies of the ABC Group should appoint Mr. Peter Walker and Mr. Greg Maloney of Ferrier Hodgson[2] as voluntary administrators (together, the "Administrators" or the "Petitioners").

The Petitioners are responsible for, inter alia, preserving the Debtors' property and taking measures to secure the Debtors' assets. In furtherance of their duties to the Debtors, the Petitioners seek an order granting recognition of the Australian Proceedings and injunctive relief to preserve the Debtors' assets in the United States. Absent the relief requested, the Australian Proceedings will be undermined and the Petitioners, the Debtors and their creditors will suffer irreparable harm.

---

[1] Capitalized terms used, but not defined, herein have the meanings ascribed to them in the Verified Petition.

[2] Ferrier Hodgson is one of the top accounting firms in the world, and specializes in insolvency matters in the Australian and Asia Pacific region. The firm's core business is providing corporate recovery, corporate advisory and forensic accounting services.

Chapter 15 of the Bankruptcy Code authorizes this Court to: (i) recognize a foreign proceeding, as defined under section 101(23) of the Bankruptcy Code, upon the proper commencement of a case under Chapter 15 by a foreign representative, as defined under section 101(24) of the Bankruptcy Code; and (ii) grant assistance in the United States to such foreign representative in connection with the foreign proceeding, including by granting injunctive relief pursuant to sections 1519 and 1521 of the Bankruptcy Code.

The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code. Moreover, the relief requested therein is necessary and is appropriate under Chapter 15 of the Bankruptcy Code. Granting recognition to the Australian Proceedings and the relief requested is consistent with the goals of international cooperation and assistance to foreign courts, embodied in Chapter 15 of the Bankruptcy Code. Further, it is consistent with the relief afforded by the Court in other ancillary proceedings involving foreign corporations, both under former section 304 and now under Chapter 15 of the Bankruptcy Code.

The Petitioners have also filed a Motion for *Ex Parte* Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521 (the "Interim Relief Motion") seeking provisional relief (the "Interim Relief"), including: (i) on an *ex parte* basis, an emergency order with a temporary restraining order (the "TRO"), imposing a stay of proceedings and actions against the Debtors and their property to the extent provided pursuant to the moratorium in effect in the Australian Proceedings and (ii) after notice and a hearing (if unresolved objections exist), an order recognizing and enforcing the Australian Proceedings (the "Preliminary Injunction").

<u>**FACTS**</u>

The Court is respectfully referred to the Verified Petition,[3] which contains the relevant facts, all of which are incorporated herein by reference.

<u>**ARGUMENT**</u>

**I**

<u>**THESE CASES ARE PROPER UNDER CHAPTER 15**</u>

Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of the United States Bankruptcy Court in connection with a foreign insolvency or debt-adjustment proceeding. <u>See</u> 11 U.S.C. § 1501(b)(l). One of the objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3). These Chapter 15 cases have been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the Australian Proceedings by, <u>inter alia</u>, restricting the Debtors' creditors from taking certain actions in the United States that would undermine the unified, collective and equitable resolution of the Debtors' liabilities in the Australian Proceedings under the general supervisory jurisdiction of the Federal Court of Australia (the "<u>Australian Court</u>").[4]

**A.      These Cases Concern a Foreign Proceeding**

Section 10l (23) of the Bankruptcy Code defines a "foreign proceeding" as:

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition.

[4]   The supervisory jurisdiction of the Australian Court may be invoked by various parties, including the creditors, the Petitioners or the Australian Securities and Investments Commission (the "<u>ASIC</u>") (collectively, the "<u>Interested Persons</u>").

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by a
> foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). As discussed in the Declaration of John Kenneth Martin, dated May 26, 2010 (the "Martin Declaration"), the Australian Proceedings are authorized under the Corporations Act and the voluntary administration provides for a controlled debt-adjustment/insolvency procedure designed to (i) protect the priority rights of the secured creditors, and (ii) implement a controlled and orderly process for the reorganization or unwinding of the Debtors, which would best protect unsecured creditors and other Interested Persons. The Petitioners are responsible for, inter alia, preserving the Debtors' property and taking measures to secure the Debtors' assets.

### 1. Voluntary Administration

Under Australian law, an administrator may be appointed by:

(i) a company, if the board has resolved that the company is insolvent or is likely to become insolvent at some future time, provided that the company has not already been wound up (Corporations Act § 436A);

(ii) a liquidator or provisional liquidator of a company, if he or she thinks the company is insolvent or is likely to become insolvent at some future time (Corporations Act § 436B);

(iii) a holder of a charge on the whole, or substantially the whole, of a company's property, provided the charge is enforceable and the company is not already being wound up (Corporations Act § 436C).

As discussed above, the voluntary administration was commenced by the Board Resolution.

After appointment, the primary goals of the administrators are to protect the company's business, property, assets and affairs so that they may be administered in a way that: (i) maximises the chances of the company, or as much as possible of its business, continuing in existence; or (ii) if it is not possible for the company or its business to continue in existence, results in a better return for the company's creditors and members than would result from an immediate winding up of the company. <u>Martin Declaration</u> ¶ 10. Once appointed, the duties of the administrators include the following:

(i)     to begin to investigate the company's business, property, affairs and financial circumstances as soon as is practicable after the administration begins;

(ii)    to form an opinion about: (a) whether an arrangement with the company's creditors will be in the creditors' best interests; (b) whether it would be in the creditors' interests for the administration to end; (c) and whether it would be in the creditors' interests for the company to be wound up; and

(iii)   to convene a meeting of the company's creditors to "decide the company's future." These actions are designed to best facilitate the administrators' main priorities, which are to secure the company's assets and ultimately achieve a <u>pari</u> <u>passu</u> distribution of assets.

The administrator acts as the company's agent with the full powers of its officers and the powers of the company's officers are suspended. Subject to the rights of a receiver, only the administrator may deal with the company's property during the administration. Additionally, any attempt to exercise control over the company's property by a party other than the administrator or a receiver is void (unless the administrator consented to it or it was pursuant to a Court order. <u>See</u> Martin Declaration, ¶ 13.

The Australian Court has general supervisory jurisdiction over the voluntary administrations and there is substantial judicial oversight which can be invoked by Interested Persons. In relation to a voluntary administration, the Australian Court has the authority to: (a) make such order (or orders) as it thinks appropriate about how the laws governing voluntary administration are to operate in relation to a particular company; (b) upon application by the administrator, to provide directions about the exercise of any of the administrator's functions and powers; and (c) invoke Corporations Act section 447E, which provides the Australian Court with a supervisory role in relation to the administrator's conduct. See Martin Declaration, ¶¶ 23-27.

Here, the Administrators have made multiple applications to the Australian Court since their appointment on November 6, 2008. See Martin Declaration, ¶ 27 First, the Administrators applied to the Australian Court for the purposes of convening the first meeting of creditors seeking approval to send the notice of meeting to creditors in electronic form. Second, the Administrators sought directions from the Australian Court pursuant to section 447D of the Corporations entitling the Administrators to participate in a funding agreement provided by the syndicate of lenders to the Receivers. Finally, the Administrators recently applied to the Australian Court to streamline the meeting process and enable meetings of creditors to be held concurrently and for an order for a joint committee of creditors to all companies, rather than for individual committees of creditors for each group company. The Court is respectfully referred to paragraphs 23 to 27 of the Martin Declaration for a more detailed discussion of the powers of the Australian Court in a voluntary administration.

## 2. **Receivership**

The Debtors are currently the subject of a receivership that operates concurrently with the Australian Proceedings. The primary role of the receiver is to protect and recover property for the benefit of the secured creditors, provide for the orderly repayment of the secured

creditors' debt, and return any surplus to the company.  See Martin Declaration, ¶ 58.   The

Australian Court has general supervisory jurisdiction over the receivership, which may be

invoked by Interested Persons  The Court is respectfully referred to paragraphs 47 to 60 of the

Martin Declaration for a more detailed discussion of receivership proceeding and the powers of

receivers.

      **3.**      <u>**Foreign Proceeding**</u>

      The Australian Proceedings qualify as foreign proceedings because they satisfy all

seven requirements of section 101(23) of the Bankruptcy Code.  <u>See</u> <u>In re Betcorp Ltd.</u>, 400 B.R.

266, 277 (Bankr. D. Nev. 2009) (holding that the definition of foreign proceeding contains seven

elements); <u>In re Oversight and Control Commission of Avanzit, S.A.</u>, 385 B.R. 525, 533 (Bankr.

S.D.N.Y. 2008) (noting that the definition of foreign proceeding "incorporates several

requirements").  As more fully described in the Verified Petition and the Martin Declaration, the

Australian Proceedings satisfy all of the requirements to be foreign proceedings.

      First, the Australian Proceedings qualify as "proceedings."   For the purpose of

Chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a

company's actions and that regulates the final distribution of a company's assets."  <u>In re Betcorp</u>

<u>Ltd.</u>, 400 B.R at 278.  Here, as in <u>Betcorp</u>, the relevant statutory framework is provided by the

Australian Corporations Act.   The court in <u>Betcorp</u> expressly found that actions under the

statutory framework of the Corporations Act are "proceedings" within the meaning of section

101(23) of the Bankruptcy Code.  <u>See</u> <u>Id.</u> at 278.

      Second, the Australian Proceedings are judicial or administrative in character.

Proceedings are administrative in nature if they make provision for submitting proofs of debt and

ultimate payment of creditors outside of a judicial context.  <u>See</u> <u>Id.</u> at 280.  Here, the proceedings

were commenced voluntarily through the Board Resolution, rather than by judicial order, and, through the statutory framework of the Corporations Act, make provision for submitting proofs of debt and payment of creditors. Further, the proceedings have a judicial aspect as they are, at all times, subject to the supervisory jurisdiction of the Australian Court.[5]

Third, the voluntary administration is a collective proceeding. A proceeding is "collective" if it "considers the rights and obligations of all creditors." In re Betcorp Ltd., 400 B.R. at 281. As discussed in the Martin Declaration, under the voluntary administration, the Petitioners are responsible for: (i) recovering and realizing the assets of the debtors in an orderly fashion; (ii) maximizing the chances of debtors, or as much of their businesses as possible, continuing in existence, and (iii) if it is not possible for debtors or their businesses to continue in existence, obtaining a better return for debtors' creditors and members than would result from an immediate winding up of debtors. The Australian Proceedings are therefore collective in nature because they considers the rights and obligations of all creditors by protecting the interests of all of the Debtors' creditors and helping to ensure an orderly restructuring or liquidation of the Debtors for the benefit of all of the Debtors' creditors.

Fourth, the Australian Proceedings are located in a foreign country. The Board Resolutions commencing the Debtors' administration were made at a meeting held in Sydney, Australia. Likewise, the Administrators themselves are located in Australia and conduct the proceeding under the auspices of Australian law.

Fifth, the Australian Proceedings were initiated under a law relating to insolvency or adjustment of debt. The Australian Proceedings were commenced under the Corporations Act,

---

[5]   In this case, the Australian Court has repeatedly been called on to exercise such supervisor jurisdiction, as evidence by the three separate instances in which the Petitioners have applied to the Australian Court for directions. See Declaration of Martin, ¶ 27.

the primary Australian insolvency law. See Martin Declaration, ¶¶ 7-8. Other courts have held

that the Corporations Act constitutes a law relating to insolvency or the adjustment of debt. See

e.g. In re Betcorp, 400 B.R. at 282-283 (holding that a corporation engaged in a voluntary

winding up under the Corporations Act is being administered under a law relating to

insolvency.). Notably, Australia's Parliament has declared that the Corporations Act qualifies for

recognition under the UNCITRAL Model Law on Cross-Border Insolvency (upon which Chapter

15 is based).[6]

Sixth, the Australian Proceedings subject the Debtors' assets and affairs to a foreign

court's control or supervision. As discussed in the Martin Declaration, in the context of the

Australian Proceeding, Interested Persons have access to the Australian Court, and, in this case,

have repeatedly availed themselves of that access. See Martin Declaration, ¶ 23.

Seventh, the Australian Proceedings are for the purpose of reorganization or

liquidation. A voluntary administration is a statutory process whereby a company is afforded the

opportunity to reorganize its debts or be wound up, as necessary. See Martin Declaration, ¶ 10.

The purpose of a voluntary administration under Australian law is to reorganize a company's

finances such that it may continue to do business; or, failing that, to provide for better

distributions to the company's creditors than would result from an immediate winding up of the

company. See Martin Declaration, ¶ 10. As such, the Australian Proceedings are for the purpose

of reorganization or liquidation.

Significantly, under prior section 304 of the Bankruptcy Code, the predecessor to

Chapter 15 of the Bankruptcy Code, an Australian voluntary administration was held to

---

[6]  See Cross-Border Insolvency Bill 2008, Explanatory Memorandum, http://www.comlaw.gov.au/
ComLaw/legislation/bills1.nsf/0/0C4BA8C26A7BE888CA2573EF00117EAC/$file/13020811.pdf
(last visited May 24, 2010).

constitute a foreign proceeding for purposes of recognition and assistance. See In re Poltech Trust, No. 05-39020, 2005 Bankr. LEXIS 3214, *1 (Bankr. N.D. Tex. Nov. 22, 2005) (holding that a voluntary administration in Australia qualified as a "foreign proceeding," as that term was defined under former sections 101(23) and 304 of the Bankruptcy Code.). Likewise, courts have repeatedly granted recognition to administrations conducted under the English Insolvency Act of 1986, upon which the Corporations Act is based. See e.g., In re Premier Oil Ons Ltd. Case No. 09-12641 (Bankr. S.D.N.Y. Sept. 17, 2009); In re Britannica Bulk plc, Case. No. 08-14543 (Bankr. S.D.N.Y. Dec. 10, 2008); In re Laurence, Scott, and Electromotors Ltd., Case No. 07-12017 (Bankr. S.D.N.Y. Aug. 16, 2007); In re Brierley, 145 B.R. 151 (Bankr. S.D.N.Y. 1992) (under predecessor section 304 of the Bankruptcy Code). Accordingly, the Australian Proceedings satisfy all of the requirements of section 101(23) of the Bankruptcy Code and qualify as foreign proceedings.

**B.     These Cases Were Commenced by Foreign Representatives**

These Chapter 15 cases were commenced by the duly appointed and authorized "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code. That section provides as follows:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

Under the Corporations Act, upon appointment as administrator, the administrator, amongst other things:

> (i)      has control of the company's business, property and affairs;

(ii)     may carry on that business and manage the company's property and affairs; and

(iii)    may perform any function, and exercise any power, that the company or any of its officers could perform or exercise if the company were not under administration.

Once the Australian Proceedings began, all of the powers of the directors over the Debtors ceased and were assumed by the Petitioners. <u>See</u> Martin Declaration ¶ 13. Pursuant to the applicable provisions of the Corporations Act and the Board Resolution, the Administrators were appointed, and are duly authorized under Australian law to act as the Administrators in the voluntary administration of the Debtors. Additionally, subject to certain exceptions, only the Petitioners and the Receivers may exercise control the Debtors' property during the Australian Proceedings. Exercise of control over the Debtors' property, by anyone other than the Petitioners or Receivers, acting within the scope of their respective roles, is void unless the action (a) is taken with the consent the Petitioners or (b) if it was taken pursuant to a court order. <u>See</u> Martin Declaration ¶ 74.

Accordingly, under the Australian Proceedings, in conjunction with the receivership proceedings, the power to act in the name of the Debtors is vested in the Petitioners and the Receivers. The Petitioners are the persons that can speak for the Debtors and the only persons, subject to the constraints of the receivership, who have the authority and power to give instructions on behalf of the Debtors.

Based on the evidence submitted on behalf of the Petitioners -- the Martin Declaration and Walker Declaration -- the Petitioners are duly authorized to jointly act as the foreign representatives, as defined under section 101(24), in these Chapter 15 cases. The

Petitioners, as the foreign representatives of the Debtors, are therefore entitled to commence these ancillary cases under Chapter 15 of the Bankruptcy Code. See In re Poltech Trust, No. 05-39020, 2005 Bankr. LEXIS 3214, *1 (Bankr. N.D. Tex. Nov. 22, 2005) (holding that an administrator in a voluntary administration in Australia qualified as a "foreign representative," as that term was defined under former sections 101(24) and 304 of the Bankruptcy Code.)

## II

## THE CHAPTER 15 CASES WERE PROPERLY COMMENCED

These Chapter 15 cases were duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by the filing of a petition for recognition of a foreign proceeding under section 1515(a) of the Bankruptcy Code, accompanied by all documents and information required by section 1515(b) and (c). See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), aff'd, 389 B.R. 325 (S.D.N.Y. 2008). Because the Verified Petition satisfies the requirements set forth in section 1515 of the Bankruptcy Code, the Chapter 15 cases have been properly commenced by the Petitioners.

## III

## THE AUSTRALIAN PROCEEDINGS SHOULD BE RECOGNIZED AS FOREIGN MAIN PROCEEDINGS

This Court should recognize the Australian Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code. The Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its center of its main interests. See 11 U.S.C. § 1517(b)(l). While the

Bankruptcy Code does not define "center of main interests," it does provide that absent evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. 11 U.S.C. § 1516(c); see In re Bear Stearns, 374 B.R. at 127 (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary").

The Debtors are registered and incorporated in Australia and ABC Learning is listed on the Australian Stock Exchange. The Debtors' registered office is 43 Metroplex Avenue, Murarrie, Queensland, 4172. ABC Learning also lists its principal place of business as Level 2, 99 Creek Street, Brisbane, Queensland, 4000.

All of the Debtors' principal corporate, management, banking, and strategic functions are undertaken in Australia. Specifically:

(i)   ABC Learning, the ultimate parent company and equity holder of the ABC Group, including ABC Holdings, is incorporated under Australian laws, has its headquarters located in Australia, maintains additional offices in Australia, and is a publicly held company that was listed on the Australian Stock Exchange.

(ii)  All of the directors of both ABC Learning and ABC Holdings are Australian and reside in Australia. Moreover, all business decisions and all major budgeting, financial, marketing, sales, and overall strategy decisions are made in Australia. Similarly, treasury, cash management, human resources, and banking arrangements are coordinated from Australia.

(iii) The principal records and books of the Debtors are located and maintained in Australia.

See Walker Declaration, ¶ 33.

At its peak, the ABC Group operated approximately 1,045 childcare centers in Australia alone, and processed approximately 100,000 childcare transactions per week. The ABC Group had approximately 15,000 full time employees in Australia, and contracts with a

significant number of part-time or staff employees who may work at an ABC Group childcare center in any given week.

Based on the foregoing, Australia should be found to be the center of Debtors' main interests. In re SPhinX, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006) (noting that a debtor's center of main interests is presumed to be the country in which it is registered), aff'd, 371 B.R. 10 (S.D.N.Y. 2007). In this instance, the facts presented by the Petitioners do not rebut that presumption, but rather support a finding that the Debtors' center of main interests is in Australia. At least one court has equated a company's principal place of business to its center of main interests. See In re Tri-Continental Exch. Ltd., 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).

Indeed, as described above, nearly all of the Debtors' corporate business was conducted from Australia. As such, Australia is "ascertainable by third parties" as the Debtors' center of main interests. See In re Bear Stearns, 374 B.R. at 130 (noting that debtors' center of main interests is the United States where the debtors "conduct the administration of their interests on a regular basis and is therefore ascertainable by third parties"). Accordingly, given that the Australian Proceedings are pending in Australia, which is the Debtors' center of main interests, the Australian Proceedings should be recognized as foreign main proceedings as defined in section 1502(4) of the Bankruptcy Code.

Certain recent Chapter 15 cases have suggested that a debtor's center of main interests should be determined as of the date of the filing of the petition with the Bankruptcy Court. See In re Ran, 390 B.R. 257, 300 (Bankr S.D. Tex 2008), aff'd Lavie v. Ran, 406 B.R. 277 (S.D. Tex. 2009); In Re British Am. Ins. Co., Ltd., 425 B.R. 884, 909 (Bankr. S.D. Fla. 2010). In cases where the foreign representative has been in place for an extended period of time, the "center of main interest has become lodged with the foreign representative." Id. at 914. Here, the

Administrators have been in place for over a year-and-a-half, thereby causing creditors and other third parties to look to the Administrators as the location of the Debtors' business. The Administrators are located in Australia, giving further weight to the conclusion that the center of main interests of the Debtors is in Australia.

**IV**

**THE REQUESTED RELIEF SHOULD BE GRANTED**

An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met. 11 U.S.C. § 1517. As set forth above, the Australian Proceedings are foreign main proceedings within the meaning of section 1502 of the Bankruptcy Code, the Petitioners qualify as foreign representative, and the Verified Petition meets the requirements of Bankruptcy Code section 1515. Accordingly, under section 1517(a) of the Bankruptcy Code, the Court should enter an order granting recognition to the Australian Proceedings. 11 U.S.C. § 1517 (an order recognizing a foreign proceeding "shall be entered" if all of the requirements for recognition have been met). As the legislative history of Chapter 15 makes clear:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. Rep. 109-31, pt. 1 (2005). Thus, recognition under section 1517(a) of the Bankruptcy Code is mandatory where, as here, the Chapter 15 petition meets the statutory requirements.

Moreover, recognition of the Australian Proceedings as foreign proceedings is consistent with the provisions of section 1506 of the Bankruptcy Code. That section provides that nothing in Chapter 15 shall prevent the court from refusing to take an action otherwise

required by Chapter 15 if such action would be manifestly contrary to the public policy of the United States."[7] 11 U.S.C. § 1506. The relief requested by the Petitioners is not manifestly contrary to, but rather consistent with, United States public policy.

It is well established that one of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor. See, e.g., In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . .'"). Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that Canadian liquidation proceeding would not violate laws or public policy of New York or the United States). The Australian Proceedings are similar to cases under Chapters 7 and 11 of the Bankruptcy Code in that they provide for a centralized process to (i) assert and resolve claims against an estate and (ii) ultimately will result in distributions to creditors. Recognizing the Australian Proceedings and enjoining certain actions or proceedings against the Debtors and their assets will assist the orderly administration of the Debtors. Such orderly administration is demonstrably consistent with the public policy of the United States. Absent the relief requested, there is a risk that the assets of the Debtors in the United States would be subject to attachments or executions brought by individual creditors, including RCS,[8] which would result

---

[7] As the legislative history explains, "[section 1506] follows the Model Law article 5 exactly, [which] is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." H.R. REP. 109-31 pt. 1 (2005).

[8] As described in the Walker Declaration, RCS has obtained a jury verdict against ABC Learning and has begun enforcement proceedings. Specifically, RCS has filed an application seeking to enjoin ABC Learning from transferring any of its assets out of the U.S., and a hearing on this application is scheduled for tomorrow, May 27, 2010. See Walker Declaration, ¶ 39.

in a piecemeal disposition of assets that would undermine the Australian Proceedings and prevent the equal treatment of similarly situated creditors that the Bankruptcy Code seeks to promote.

Further, recognition of the Australian Proceedings would be consistent with the purpose of Chapter 15 and its predicate, the UNCITRAL Model Law on Cross-Border Insolvency. Section 1501 of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -
>
> (1) cooperation between -
>
>          * * *
>
>   (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
>          * * *
>
> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4) protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

The relief requested by the Petitioners is consistent with, and critical to effectuate, the objectives of Chapter 15 for several reasons. First, recognition of the Australian Proceedings would foster cooperation between the Australian and United States insolvency and debt-adjustment regimes. By granting recognition to the Australian Proceedings and granting injunctive relief, this Court can effectively assist the Australian Proceedings in the orderly administration of the Debtors. The Debtors' creditors would generally be enjoined by this Court from commencing or continuing actions against the Debtors, thereby assisting in the uniform resolution of claims against the Debtors.

Second, recognition of the Australian Proceedings would promote the fair and efficient administration of a cross-border debt-adjustment procedure that protects the interests of all creditors and interested entities. By recognizing the Australian Proceedings and granting the injunctive relief requested, the process of resolving claims against the Debtors would be centralized in Australia. Creditors would be required to assert their claims in accordance with Australian law in the Australian Proceedings and any disputes would be subject to the uniform jurisdiction of one tribunal, the Australian Court. If the Debtors' U.S. creditors are not effectively stayed, the uniform and orderly voluntary administration of the Debtors in the Australian Proceedings will be jeopardized.

Finally, the relief requested would protect the Debtors' assets. Absent such relief, the Debtors' assets may be depleted and available resources may be expended unnecessarily to defend collection and other actions brought in the United States, including the enforcement proceedings brought by RCS in the Arizona Lawsuit. Accordingly, the relief requested would further the objectives of Chapter 15 by assisting the orderly voluntary administration of the Debtors in the Australian Proceedings.

## A. The Petitioners are Entitled to Relief under Section 1520 without Limitation

Upon recognition of the Australian Proceedings as foreign main proceedings, certain relief is automatically granted as a matter of right, including a stay that enjoins actions against the Debtors and otherwise protects the Debtors. See 11 U.S.C. § 1520. In particular, upon the Court's recognition of the Australian Proceedings as foreign main proceedings, section 1520(a)(l) of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtors.

**B.    The Relief Requested under Section 1521 is Necessary and Appropriate**

In addition to the relief provided by section 1520 of the Bankruptcy Code, the Petitioners request relief under section 1521 of the Bankruptcy Code to assist in the orderly administration of the Debtors.  Upon recognition of a foreign proceeding, at the request of the foreign representative, the Court may grant, with certain express exceptions, "any appropriate relief," including "any additional relief that may be available to a trustee" and injunctive relief provided that the Court determines that doing so is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interests of the creditors.  11 U.S.C. § 1521(a).  Indeed, the Court may grant such relief only if the interests of creditors and other interested entities, including the debtor, are sufficiently protected.  See 11 U.S.C. § 1522.

The additional relief requested by the Petitioners includes injunctive relief in addition to the recognition of the Australian Proceedings.  Here, the Petitioners are requesting relief in the form of a permanent injunction enjoining actions against the Debtors and their assets.  Without the relief requested, the Australian Proceedings cannot be administered in a unified, fair and efficient manner that would protect the interests of all of the Debtors' stakeholders, nor would the value of the Debtors' assets be maximized.  In the absence of the relief requested, creditors could obtain judgments without regard to the Australian Proceedings, and in particular the automatic stay imposed under the Corporations Act upon the commencement of the voluntary administration, leading to the unequal treatment of certain creditors.  Such an outcome would be contrary to the goals of the Australian Proceedings as well as to the fundamental purpose of the Bankruptcy Code.  See Cunard Steamship Co. Ltd. v. Salen Reefer Services A.B., 773 F.2d 452, 459 (2d Cir. 1985) (explaining that the "guiding premise of the Bankruptcy Code, like its predecessor, the Bankruptcy Act, is the equality of distribution of assets among creditors.").

As discussed in the following section, the Petitioners have satisfied the standards for injunctive relief. Accordingly, section 1521 of the Bankruptcy Code expressly authorizes the Court to grant the requested relief upon recognition of the Australian Proceedings.

V.

### THE INTERIM RELIEF REQUESTED BY THE ADMINISTRATORS IS WITHIN THE SCOPE OF SECTION 1519 AND APPROPRIATE UNDER THE CIRCUMSTANCES

Upon recognition of the Australian Proceedings as foreign main proceedings, the Petitioners will have, as a matter of right, the benefit of the relief conferred by section 1520 of the Bankruptcy Code, including the automatic stay under section 362. However, pursuant to Rule 2002(q), an order granting recognition cannot be granted until at least 21 days of notice have been given. In the interim, the Petitioners require immediate, provisional relief to (i) prevent the attachment of, or enforcement of remedies against, the Debtors' and their property and (ii) protect commencement of other potential actions against the Debtors and their property. Accordingly, the Petitioners have filed the Interim Relief Motion, seeking the entry of (i) on an *ex parte* basis, the TRO, and (ii) after notice and a hearing (if unresolved objections exist), the Preliminary Injunction.

Sections 1519(a)(1) and (a)(3) authorize the Court to grant the Interim Relief pursuant to section 1521(a)(7), which provides for any relief available to a trustee in a chapter 11 case, subject to certain exceptions not relevant here. Section 105(a) of the Bankruptcy Code further allows the court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, again, subject to certain exceptions not relevant here. The Interim Relief sought by the Administrators is within the broad power of this Court as clearly contemplated in sections 1519, 1521 and 105(a) of the Bankruptcy Code

and fully consistent with the relief granted in past cases in which bankruptcy courts, including this Court, have recognized, enforced and cooperated with foreign proceedings under chapter 15 of the Bankruptcy Code. See, e.g., W.G. Wood Corp. Ltd., Case No 09-11893 (Bankr. D. Del. June 10, 2009); In re Chemokine Therapeutics, Inc., Case No. 09-11189 (Bankr. D. Del. Apr. 6, 2009); In re Destinator Technologies, Case No. 08-11003 (Bankr. D. Del. May 20, 2008). Specifically, under prior section 304 of the Bankruptcy Code, a similar injunction was granted at the request of an administrator in an Australian Administration proceeding. See Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp.(In re McKenna), 244 B.R. 209, 221 (S.D.N.Y. 2000) (affirming the Bankruptcy Court's granting of a preliminary injunction that stayed arbitration pending the resolution of the request for recognition), aff'd 238 F.3d 186 (2d Cir. 2001).

By the Interim Relief Motion, and in compliance with procedures in the Australian Proceedings, the Petitioners have asked this Court, among other things, to immediately stay the commencement or continuation of actions against the Debtors and their property. The Interim Relief sought is wholly consistent with and in furtherance of the injunctive relief that has been granted in the Australian Proceedings. See In re Singer, 205 B.R. 355 (S.D.N.Y. 2000) (applying a foreign stay injunction without notice under former section 304(b) of the Bankruptcy Code). The Interim Relief is necessary, among other things, "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group." In re Banco Nacional de Obras v. Servicios Publico, SNC., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988); see also In re Bird, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998).

The relief available under section 1519 is available pursuant to "the standards, procedures, and limitations applicable to an injunction." 11 U.S.C. § 1519(e). In the Third Circuit, the "standard for evaluating a motion for preliminary injunction is a four-part inquiry as to: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." U.S. v. Bell, 414 F.3d 474, 478 n. 4 (3d Cir 2005) (citing ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996) (en banc)). The latter two factors should be taken into account only when they are relevant. See e.g., Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990).

Based on the facts presented in these chapter 15 cases, it is highly likely that the Chapter 15 petitions will be granted and the Australian Proceedings recognized as foreign main proceedings. Accordingly, upon such recognition, the Interim Relief requested herein will automatically apply to each of the Debtors, by operation of sections 1520 and 1521 of the Bankruptcy Code. Such relief is not repugnant to United States public policy; to the contrary, it is consistent with public policy and relief granted in previous similar cases. Entry of the TRO and Preliminary Injunction will permit the Administrators to administer the Australia Proceeding without disruption.

As more fully discussed in the Interim Relief Motion, the Debtors face irreparable harm in the absence of the Interim Relief. *Ex parte* relief, pending provisional relief upon notice and a hearing (if unresolved objections exist), is appropriate when, as with the Debtors, the applicants are in need of immediate relief. The relief sought *ex parte* in

the TRO is limited and seeks only to temporarily preserve the status quo pending hearing on the Preliminary Injunction. Such limiting of *ex parte* relief is favored by United States public policy. See <u>Granny Goose Foods, Inc</u>. v. <u>Brotherhood of Teamsters and Auto Truck Drivers</u>, 415 U.S. 423, 439 (1974) (holding that the policy of courts in the United States is to limit temporary restraining orders to "preserving the status quo for so long as is necessary to hold a hearing."). Rule 65(b) of the Federal Rules of Civil Procedure, made applicable in these cases by Bankruptcy Rule 7065, requires that the applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition" to obtain an *ex parte* temporary restraining order. See, e.g., <u>TKR Cable</u> v. <u>Cable City Corp</u>., 267 F.3d 196, 198 (3d Cir. 2001). Such temporary restraining orders have recently been issued by this Court in order to provide relief similar in all material respects to the Interim Relief sought in chapter 15 cases, and are becoming a routine feature of chapter 15 practice in this and other districts. See, e.g., <u>In re Grant Forest Prods. Inc</u>., Case No. 10-11132 (Bankr. D. Del. April 6, 2010); <u>In re Japan Airlines Corporation</u>, Case No. 10-10190 (Bankr. S.D.N.Y. Jan. 19, 2010); <u>W.G. Wood Corporation Ltd</u>., Case No. 09-11893 (Bankr. D. Del. June 10, 2009); <u>In re Chemokine Therapeutics, Inc</u>., Case No. 09-11189 (Bankr. D. Del. Apr. 6, 2009).

In contrast to the potentially irreparable injury that the Debtors would face in the absence of Interim Relief, the Interim relief will not significantly prejudice the Debtors' creditors or any other party in interest. To the contrary, the Interim Relief will benefit the Debtors' creditors by supporting the Administrators' efforts to preserve and maximize the Debtors' estate for the benefit of all creditors by achieving a global and equitable resolution of claims against the Debtors. Without the interim relief, equitable and orderly

distribution of assets pursuant to the Australian Proceedings would be jeopardized. Thus, the balance of the hardships tips decidedly in favor of granting the Interim Relief.

Under section 1525(a), "consistent with section 1501, this court shall cooperate to the maximum extent possible with a foreign court or a foreign representative." The Interim Relief is necessary to give effect to the Australian Proceedings because the Debtors have assets located beyond the territorial reach of the Australia Court. Thus, in addition to the reasons set forth above, the Interim Relief is justified pursuant to sections 1519 and 1521 of the Bankruptcy Code, the stated purposes of chapter 15, and under well-established principles of international comity.

## VI.

## NOTICE SHOULD BE LIMITED AS REQUESTED

The Petitioners have also filed the Notice Motion, which requests that the court approve notice of the of the chapter 15 petitions and the Supporting Documents in a form substantially similar to Exhibit "B" of the Notice Motion. The Court is respectfully referred to the Notice Motion, which contains the relevant facts and legal authorities in support of the Notice Motion, all of which are incorporated herein by reference. The Petitioners, as Joint Administrators of the Company, respectfully request that this Court permit notice in a form substantially similar to that described in the Notice Motion.

## CONCLUSION

For the foregoing reasons, the Petitioners respectfully request that this Court grant the relief requested.

Dated:    Wilmington, Delaware      **YOUNG CONAWAY STARTGATT & TAYLOR, LLP**
           May 26, 2010

                          */s/ Joel A. Waite*
                          Joel A. Waite (No. 2925)
                          The Brandywine Building
                          1000 West Street, 17th Floor
                          P.O. Box 391
                          Wilmington, Delaware 19899-0391
                          Telephone: (302) 571-6600
                          Facsimile: (302) 571-1253

                          - and -

                          **CHADBOURNE & PARKE LLP**
                          Howard Seife, Esq.
                          Andrew Rosenblatt, Esq.
                          Members of the Firm
                          30 Rockefeller Plaza
                          New York, New York 10112
                          Telephone: (212) 408-5100
                          Facsimile: (212) 541-5369

                          Attorneys for the Petitioners