# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re                                                        :

Petition of Mr. Peter Walker and Mr. Gregory                 : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C.                  of the Bankruptcy Code
LEARNING CENTRES LIMITED,                                    :

Debtor in a Foreign Proceeding.                              : Case No. 10-B-_1/7 1 1_
------------------------------------------------------------ x

------------------------------------------------------------ x
In re                                                        :

Petition of Mr. Peter Walker and Mr. Gregory                 : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA              of the Bankruptcy Code
HOLDINGS PTY LTD,                                            :

Debtor in a Foreign Proceeding.                              : Case No. 10-B-_1/ 7/ 2_
------------------------------------------------------------ x

## DECLARATION OF PETER WALKER IN SUPPORT OF (I) ADMINISTRATORS' VERIFIED PETITION FOR ENTRY OF AN ORDER GRANTING RECOGNITION AND RELIEF IN AID OF FOREIGN MAIN PROCEEDINGS PURSUANT TO 11 U.S.C. §§ 1515, 1517 AND 1520; (II) ADMINISTRATORS' MOTION FOR JOINT ADMINISTRATION; AND (III) ADMINISTRATORS' MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(A), 1519, AND 1521

Peter Walker, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1. I, Peter Walker, as one of the administrators of A.B.C. Learning Centres Limited (Administrators appointed)(Receivers and Managers appointed) ("ABC Learning") and A.B.C. USA Holdings Pty Ltd (Administrators appointed)(Receivers and Managers appointed) ("ABC Holdings" and, together with ABC Learning, the "Debtors") and a foreign representative, as defined under section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), in the above-captioned cases under Chapter 15 of the Bankruptcy Code, hereby submits this

declaration in support of (i) *Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief*, (ii) *Motion Pursuant to Fed. Rule of Bankruptcy Proc. 1015(b) for an Order Directing the Joint Administration of the Cases Under Chapter 15 of the Bankruptcy Code*; and (iii) *Motion for Ex Parte Temporary Restraining Order And Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(a), 1519 and 1521*.

2. On November 6, 2008, Mr. Greg Moloney and I (the "Petitioners"), both of Ferrier Hodgson, were appointed as administrators (the "Administrators") of ABC Learning and 39 of its subsidiaries, including ABC Holdings, pursuant to section 436A of the Australian *Corporations Act 2001* (Cth) (the "Corporations Act"). I am an official liquidator under Australian law and a chartered accountant. I have had over 25 years experience acting as an administrator, receiver and liquidator (both jointly and individually) for companies that have had external administrators appointed under the Corporations Act. I am a partner at Ferrier Hodgson, a firm that specializes in dealing with corporate and personal insolvency administration.

3. I am duly authorized to make this declaration acting in my capacity as Administrator of the Debtors. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by the Receivers (as defined below) and are true to the best of my knowledge, information and belief.

## BACKGROUND

### A. The Debtors

4. ABC Learning is the ultimate parent of a group of affiliated companies (together, the "ABC Group") that operated childcare centers in Australia and elsewhere,

2

including the United Kingdom, the United States of America and New Zealand. ABC Learning is registered and incorporated in Australia and was listed on the Australian Stock Exchange at the time of my appointment. ABC Learning's registered office and principal place of business is located at 43 Metroplex Avenue, Murarrie, Queensland, 4172. ABC Learning also lists another principal place of business at Level 2, 99 Creek Street, Brisbane, Queensland, 4000. ABC Learning has no assets in the United States other than its direct ownership interests in ABC Delaware (as defined below) and a pending lawsuit.[1]

5. ABC Holdings is registered and incorporated in Australia. ABC Holdings' registered office and principal place of business is located at 43 Metroplex Avenue, Murarrie, Queensland, 4172. Other than its direct ownership interests in LCG US (as defined below), ABC Holdings has no assets in the United States. ABC Holdings is wholly owned by ABC Learning.

6. In November 2008, at the beginning of the administration proceedings, the ABC Group operated approximately 1,045 childcare centers in Australia alone, and processed approximately 100,000 childcare transactions per week. The ABC Group had approximately 15,000 full time employees in Australia, and also contracted with a significant number of part-time or staff employees.

7. I am informed by the Receivers that the ABC Group's operations in Australia and New Zealand were funded, in part, by a banking syndicate comprised mostly of Australian banks but which also included some foreign banks. The loans of the banks are secured by substantially all of the assets of the ABC Group. The outstanding principal amount of the bank loans as of the date hereof is approximately $1 billion.

---

[1] ABC Learning is a plaintiff in a lawsuit pending in Nevada in which it is seeking damages in excess of approximately AUS$41 million and the return of certain properties located in Nevada and Virginia. This lawsuit is discussed in more detail in paragraphs 28 to 30, *infra*.

3

000025.1886

## B. ABC Group's Activities in the United States

8. In addition to its Australian operations, I understand that ABC Learning transacted business in the United States primarily through two subsidiaries, A.B.C. Development Learning Centres (USA) Inc. ("ABC Delaware"), a Delaware company, and through its direct interest in the Learning Care Group (US) Inc. ("LCG US") which was acquired in 2006.

9. ABC Delaware has no principal place of business or employees in the United States. The management and business decisions relating to ABC Delaware are made by ABC Group's management in Australia. ABC Delaware, amongst other things, contracted with developers for the construction and development of childcare facilities located primarily in Florida, South Carolina, Nevada, Virginia, Arizona, Colorado and Georgia. Once developed, the contracts usually provided for ABC Delaware to purchase the childcare facilities. ABC Learning guaranteed the obligations of ABC Delaware under many of the development contracts (and related leases) to which ABC Delaware was, and may continue to be, a party.

10. LCG US managed and operated many childcare centers that were already in existence prior to it being acquired by the ABC Group in 2006.[2]

11. In June 2008, ABC Learning, through one of its wholly owned partnerships, sold approximately 60% of its interest in LCG US to LCG Investment Holdings LLC, an affiliate of Morgan Stanley. ABC Holdings holds the remaining 40% minority interest in LCG US.

---

[2] LCG US in turn is the 100% owner of Learning Care Group (US) No 2 Inc. which is the 100% owner of Learning Care Group Inc. ("LCGI") and La Petite Holding Inc. ("LPHI"). LCGI and LPHI own and operate further wholly owned subsidiaries which operate in the U.S. under the names of "Childtime," "Tudor Time," "Children's Courtyard," "Children's Garden," "La Petite" and "Montessori Unlimited."

4

000025.1886

C.  **The Australian Voluntary Administration**

12. On or about November 6, 2008, the Board of Directors of ABC Learning and each of the other 38 Australian companies in the ABC Group conducted meetings and entered resolutions (collectively, the "Board Resolutions") concluding that (i) each of the companies of the ABC Group in Australia was or was likely to become insolvent and (ii) that each of the companies of the ABC Group in Australia should appoint Administrators. Copies of the Board Resolutions for the Debtors are annexed hereto as Exhibit "A."

13. On November 6, 2008, in accordance with the Board Resolutions, each of the companies of the ABC Group commenced a voluntary administration proceeding (collectively, the "Australian Proceedings") by appointing the Administrators.

14. The commencement of the voluntary administrations resulted in an automatic moratorium on the rights of creditors of the ABC Group to, inter alia, commence or continue suits against these companies and their respective properties.

D.  **The Australian Receivership Proceeding**

15. As described above, the ABC Group's operations were funded in part by loans made by a syndicate of mainly Australian based banks (the "Secured Bank Loans"). The loans are secured by substantially all of the assets of the ABC Group. I am informed by the Receivers that the commencement of the administration proceedings triggered a default under the loan documents evidencing the Secured Bank Loans. Pursuant to the loan documents and provisions of Australian law, the commencement of the administration proceeding and resulting default gave the secured lenders the right to appoint a receiver.

YCST01:9708953.1

000025.1886

16. On November 6, 2008, following the commencement of the voluntary administration, CBA Corporate Services (NSW) Pty Limited ("CBA"),[3] acting on behalf of the secured banking syndicate, appointed Mr. Murray Campbell Smith, Mr. John Patrick Cronin and Mr. Christopher Honey of McGrathNicol[4] as joint receivers and managers (the "Receivers") of the ABC Group. As described in the Declaration of John Kenneth Martin, Australian counsel to the Receivers, dated May 26, 2010, (the "Martin Declaration"), the primary role of a receiver is to protect and recover property for the benefit of the secured creditors who appointed the receiver and return any surplus to the company.

17. As described in the Martin Declaration, under Australian law, upon the commencement of an administration proceeding, secured lenders have a right to appoint a receiver for the purpose of protecting their interests in their collateral. The appointment of a receiver, however, does not nullify the voluntary administration. Rather, the administration and receivership proceedings proceed in tandem, with the rights and responsibilities of the administrators and the receivers set by Australian law.

18. Here, the voluntary administration and receivership processes are occurring concurrently, with the Administrators carrying out their roles and responsibilities as administrators under Australian law and the Receivers carrying out their roles and responsibilities as receivers under Australian law. Paragraphs 73 to 78 of the Martin Declaration

---

[3] CBA is the Security Trustee of the A.B.C. Learning 2008 Security Trust (the "Bank Lenders") which is owed approximately AUS$1 billion from the ABC Group. The Bank Lenders have a fixed and floating charge (*i.e.*, a first priority security interest) in substantially all of the property of the ABC Group.

[4] McGrathNicol is an independent advisory firm specialising in corporate advisory, forensic, transaction services and corporate recovery. The firm has approximately 270 people with offices in all major Australian cities.

YCST01:9708953.1

000025.1886

provide a detailed description of the interplay between the roles and responsibilities of administrators and receivers.

E.  **Status of the Administration**

19. As described in the Martin Declaration, the Australian administration process requires the occurrence of two separate meetings of creditors. The purpose of the first meeting is to determine whether a committee of creditors is required (and if so, to compose such committee) and whether to remove the administrators and to appoint alternate administrators. On November 18, 2008, a first meeting of creditors was held and a committee of creditors was appointed to advise and assist the Administrators in the administration of the ABC Group.

20. As further described in the Martin Declaration, a second meeting of creditors must be held during which the creditors will determine the outcome of the administration. Under Australian law, creditors can vote for one of the following outcomes:

- that the company under administration execute a Deed of Company Arrangement;

- that the administration end with control of the company reverting back to the companies' directors; or

- that the company be wound up (and ultimately liquidated).

21. The Administrators, on three separate occasions, filed an application with the Federal Court of Australia (the "Australian Court") seeking an extension of time to convene the second meeting of creditors. The Australian Court granted each of the Administrators' requests, and eventually required that the second meeting be convened no later than March 31, 2010. The meeting was held on March 26, 2010. At the meeting, instead of voting on the options outlined above, the creditors passed a motion to adjourn the meeting for an additional 45 days. The meeting is currently scheduled to recommence on June 2, 2010. Accordingly, as of the date hereof, no formal decision has been made by the creditors regarding the path to be taken by the

Debtors (and the entire ABC Group), although it is expected that the creditors of the ABC Group will elect to proceed into a formal winding-up (liquidation) process.

22. During the course of the past year and a half, I am informed by the Receivers that the following steps have been taken to sell the bulk of ABC Group's assets in Australia:

- In December 2008, the Receivers were able to identify which of the 1,045 childcare centers could be operated beyond December 31, 2008 on a profitable basis (the "Profitable Centers") and those that could not continue to operate profitably as a going concern without financial support (the "Non-Profitable Centers");

- On or about December 10, 2008, the Receivers announced that on December 31, 2008, 55 Non-Profitable Centers would close and their customer base would merge with other centers, the remaining 262 Non-Profitable Centers would not continue to be operated or supported by the Receivers, and that the Receivers would continue to operate the remaining 720 Profitable Centers;

- The Australian Federal Government agreed to provide financial support for the continuing operation of the 262 Non-Profitable Centers with a view to the centers being sold as soon as practicable. In order to facilitate the sale process, the Non-Profitable Centers were transferred to a dormant subsidiary of the ABC Group to which neither Administrators or Receivers had been appointed, and the Australian Federal Government sought the appointment of a court-appointed receiver (the "Government Receiver") for that entity;

- By June 30, 2009, the Government Receiver (with the consent of the Receivers) had sold most of the Non-Profitable Centers to a large number of separate purchasers. As of the date hereof, all of the Non-Profitable Centers have been sold;

- In late August 2009, the Receivers commenced a sale process for the remaining 720 Profitable Centers. That process involved the production of a data-room for due-diligence by entities interested in the purchase of all or substantially all of the Profitable Centers;

- On December 23, 2009, the Receivers agreed to the sale of approximately 678 of the Profitable Centers, along with the ABC Group Australian head office functions, to GoodStart Childcare Limited ("GoodStart"). The Receivers have subsequently sought separate purchasers for those of the Profitable Centers not sold to GoodStart;

- The sale to GoodStart involves a staged completion process which is dependent on achieving an assignment of various threshold numbers of the leases of the properties from which the centers are operated to GoodStart. Since December 2009, negotiations with lessors has been on-going so as to achieve the assignment of the leases.

### F. The Arizona Lawsuit Against ABC Learning and ABC Delaware

23. The information set out below in paragraphs 24-29 regarding the Arizona and Nevada lawsuits, is based on information provided to me by the Receivers which I believe to be true.

24. ABC Learning and ABC Delaware are defendants in a lawsuit brought by RCS Capital Development LLC ("RCS") that was filed in the Superior Court of Arizona in Marciopa County (the "Arizona Lawsuit"). The claims asserted in the Arizona Lawsuit relate to a development contract between RCS and ABC Delaware for the development of childcare centers in Arizona, Colorado, Georgia and certain parts of Nevada. I am informed by the Receivers that ABC Learning guaranteed ABC Delaware's obligations under the development contract in question. RCS sought damages against ABC Learning and ABC Delaware in excess of $107 million, based on a number of claims, including, without limitation, breach of the development contract.

25. Despite vigorously defending the Arizona Lawsuit, on May 14, 2010, a jury verdict was issued against ABC Learning and ABC Delaware in the amount of $47,031,574. ABC Learning and ABC Delaware are considering their respective rights of appeal.

26. While judgment has not yet been entered against ABC Learning and ABC Delaware, RCS has already sought to commence enforcement and collection efforts. First, on May 18, 2010, RCS sent a letter to "Learning Care Group" (generically) laying claim to ABC Learning's interest in Learning Care Group and making threats if ABC Learning's interest in Learning Care Group is transferred. RCS sent this letter despite the fact that (i) ABC Learning, the party to the Arizona Lawsuit, has no direct interest in Learning Care Group (as noted above, ABC Learning's wholly owned subsidiary, ABC Holdings, owns 40% of the shares of LCG US),

9

and (ii) neither ABC Holdings or LCG US were parties to the Arizona Lawsuit. A copy of the letter is attached hereto as Exhibit "B."

27. Second, on or about May 20, 2010, RCS filed an application by order to show cause with the Arizona court seeking a preliminary injunction restraining ABC Learning and ABC Delaware from transferring any of its assets outside the U.S. The hearing date for the preliminary injunction is scheduled for May 27, 2010. A copy of the injunction papers is attached hereto as Exhibit "C."

### G. The Nevada Lawsuit

28. ABC Learning and ABC Delaware are plaintiffs in a lawsuit pending in the District Court, Clark County, Nevada (the "Nevada Lawsuit") against RCS, American Childcare Properties Inc. ("ACCP") and Mr. Kenneth Krynski (a former principal of ACCP).

29. The Nevada Lawsuit arises out of a dispute concerning a development arrangement between the parties in which ABC Learning advanced certain funds to ACCP for the development and eventual purchase of 11 properties located in Nevada and Virginia. In the Nevada Lawsuit, ABC Learning has sued to recover in excess of AUS$41 million (based on the monies advanced by ABC Learning) and, alternatively, for specific performance to recover the subject properties, based on multiple legal causes of action, including, without limitation, breach of constructive trust, fraudulent transfer, unjust enrichment and breach of contract. I am informed by the Receivers that ABC Learning and ABC Delaware have also filed *lis pendens* against certain of the properties that are the subject of the Nevada Lawsuit. The Nevada Lawsuit is in the discovery stage, with a trial date scheduled for February 7, 2011.

000025.1886

# CHAPTER 15 CASES

30. To the best of my information and belief, the Australian Proceedings are collective judicial proceedings in Australia under Australian law relating to insolvency or the adjustment of debt in which the assets and affairs of the Debtors are subject to the control and supervision of the Australian Court for the purpose of reorganization or liquidation. Accordingly, I believe the Australian Proceedings are "foreign proceedings" within the meaning of 11 U.S.C. § 101(23).

31. To the best of my information and belief, other than these Chapter 15 cases, the Australian Proceedings are the only insolvency proceeding of any kind pending with respect to Debtors and are the only "foreign proceedings" with respect to the Debtors within the meaning of 11 U.S.C. § 101(23).

32. To the best of my information and belief, the Australian Proceedings are "foreign main proceedings" within the meaning of 11 U.S.C. §§ 1502(4) and 1517(b)(1) of the Bankruptcy Code, because the Debtors each have their center of main interest in Australia. All of the Debtors' principal corporate, management, banking, and strategic functions are undertaken in Australia. Specifically:

- ABC Learning, the ultimate parent company and equity holder of the ABC Group, including ABC Holdings, is incorporated under Australian laws, has its headquarters located in Australia, maintains additional offices in Australia, and is a publicly held company that was listed on the Australian Stock Exchange.

- All of the directors of both ABC Learning and ABC Holdings are Australian and reside in Australia. Moreover, all business decisions and all major budgeting, financial, marketing, sales, and overall strategy decisions are made in Australia. Similarly, treasury, cash management, human resources, and banking arrangements are coordinated from Australia.

- The principal records and books of the Debtors are located and maintained in Australia.

- Upon information and belief, funding for the ABC Group was derived from loans made by a banking syndicate consisting mostly of Australian banks. Therefore, the vast

majority of the principal amount owing under the Secured Bank Loans is held by Australian lenders.

33. To the best of my knowledge and belief, the Administrators are foreign representatives within the meaning of 11 U.S.C. §§ 101(24) and 1517.

34. Accordingly, the Petitioners filed Chapter 15 petitions in this Court, which sits in the jurisdiction where ABC Learning's primary asset -- its 100% equity interest in ABC Delaware -- is located.

35. As described in detail below, the Petitioners seek recognition of the Australian Proceedings as "foreign main proceedings," and seek to extend the stay in effect in Australia, to stay the Arizona Lawsuit and halt enforcement actions being brought and threatened by RCS in the U.S. which could undermine the administration and subsequent liquidation process in Australia.

36. Recognition of the Australian Proceedings will best assure an economical, expeditious, and equitable administration of the Debtors' assets.

## NEED FOR PROVISIONAL RELIEF

37. Preliminary relief under section 1519 of the Bankruptcy Code, pending this Court's determination with respect to recognition of the Australian Proceedings as "foreign main proceedings," is necessary to protect and preserve the Debtors' property and prevent irreparable harm to the Debtors' creditors.

38. As described in the Martin Declaration, upon the commencement of the Australian Proceedings, a stay came into effect essentially enjoining all persons and entities from taking any action against the Debtors or their assets in Australia, absent leave from the Australian Court.

39. I am informed by the Receivers that RCS pursued its lawsuit against ABC

12

000025.1886

Learning in the Arizona Lawsuit and obtained a jury verdict in the amount of approximately $47 million. RCS is now aggressively pursuing enforcement actions against ABC Learning. Specifically, RCS has filed an application seeking to enjoin ABC Learning from transferring any of its assets out of the U.S., and a hearing on this application is scheduled for tomorrow, May 27, 2010.

40. There is little doubt that, absent relief from this Court, RCS will commence attachment and other enforcement proceedings as soon as its jury verdict is converted into a final judgment. Indeed, RCS's counsel has issued a press release dated May 20, 2010, in which it stated "A.B.C.'s operations in the United States have assets subject to liquidation to satisfy RCS Capital's claim." A copy of the press release is attached hereto as Exhibit "D."

41. Moreover, RCS has also threatened legal action against Learning Care Group, an entity in which ABC Learning has an indirect interest through ABC Holdings (which has a 40% ownership interest in LCG US). Although ABC Holdings is not a party to the Arizona Lawsuit and the Petitioners do not believe that RCS has a valid basis to pursue ABC Holding's interest in LCG US or any asset of the LCG entities, RCS has unequivocally stated that it intends to pursue those assets. Therefore, in order to fully protect ABC Holdings' ownership interest in LCG US, the Petitioners felt it was necessary and prudent to file a Chapter 15 case for ABC Holdings.

42. If RCS, which is not located in Australia and, thus, may not be subject to the control and contempt power of the Australian courts, can pursue enforcement actions in violation of the stay in Australia, then the administration proceeding will be undermined and creditors will suffer irreparable harm. In addition, although RCS poses the most immediate risk, there are other creditors in the United States that could also pose a threat to ABC Learning. ABC

Learning is a party to development agreements and leases with other counterparties located in the United States. It is possible that these entities could also commence actions against ABC Learning or its assets. It would be unfair and contrary to the policies underlying Chapter 15 for any creditors in the United States, including RCS, to unilaterally pursue remedies in the United States that advantage them over similarly situated creditors in Australia that are complying with the stay and procedures in the Australian Proceedings.

43. Moreover, the Debtors' creditors will further suffer if ABC Learning is enjoined from transferring assets from the U.S. to Australia. If ABC Learning is ultimately successful and recovers damages against RCS, ACCP and/or Krynksi in the Nevada Lawsuit, it would be consistent with the purposes of Chapter 15 to permit ABC Learning to transfer any recoveries to Australia to be administered in the context of the Australian Proceedings.

44. In short, the failure to secure the Debtors' assets will irreparably harm the Debtors and deplete their resources, thereby limiting their ability to maximize the assets available, on an equitable basis, for all creditors of the Debtors' estates. The proposed relief will ease these concerns and allow for the orderly voluntary administration and receivership of the Debtors' affairs and equitable resolution of the Debtors' liabilities with supervision by the Australian Court. Given the Arizona Lawsuit and the potential for other actions by RCS or other entities in the U.S., relief from this Court is necessary to extend the moratorium in place in the voluntary administration proceeding. A stay of actions against the Debtors will not only preserve the Debtors' assets for the benefit of its creditors, but also allow the Petitioners to devote their full attention to effectively and efficiently administering the Australian Proceedings. Accordingly, the Petitioners have concluded that relief under Chapter 15 is appropriate and therefore filed the Petition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of May 2010

_/s/ PeterWalker_
Peter Walker

as Administrator of A.B.C. Learning Centres Limited
(Administrators appointed)(Receivers and Managers appointed)
and A.B.C. USA Holdings Pty Limited
(Administrators appointed)(Receivers and Managers appointed)