## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x

In re : :

Petition of Mr. Peter Walker and Mr. Gregory : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. of the Bankruptcy Code
LEARNING CENTRES LIMITED, :

Debtor in a Foreign Proceeding. : Case No. 10-B- _11711_

------------------------------------------------------------- x


------------------------------------------------------------- x

In re : :

Petition of Mr. Peter Walker and Mr. Gregory : In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA of the Bankruptcy Code
HOLDINGS PTY LTD, :

Debtor in a Foreign Proceeding. : Case No. 10-B- _11712_

------------------------------------------------------------- x


### DECLARATION OF JOHN KENNETH MARTIN IN SUPPORT OF
### (I) ADMINISTRATORS' VERIFIED PETITION FOR ENTRY OF AN ORDER
### GRANTING RECOGNITION AND RELIEF IN AID OF FOREIGN MAIN
### PROCEEDINGS PURSUANT TO 11 U.S.C. §§ 1515, 1517 AND 1520;
### (II) ADMINISTRATORS' MOTION FOR JOINT ADMINISTRATION;
### AND (III) ADMINISTRATORS' MOTION FOR *EX PARTE* TEMPORARY
### RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT
### TO 11 U.S.C. §§ 105(A), 1519, AND 1521

John Kenneth Martin, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of

perjury as follows:

1.      I am a partner with the law firm of Henry Davis York, that has been retained

by Mr. Murray Campbell Smith, Mr. Christopher Honey and Mr. John Patrick Cronin of

McGrathNicol who, on November 6, 2008, were appointed as joint and several receivers and

managers    (the    "Receivers")    of    A.B.C.    Learning    Centres    Limited    (Administrators

appointed)(Receivers and Managers appointed) ("ABC Learning") and certain of its subsidiaries

(together, the "ABC Group"), including A.B.C. USA Holdings Pty Ltd (Administrators appointed)(Receivers and Managers appointed) ("ABC Holdings" and, together with ABC Learning, the "Debtors"). I am duly authorized to make this declaration on behalf of Mr. Peter Walker and Mr. Greg Moloney of Ferrier Hodgson who were appointed as administrators (the "Administrators") of the ABC Group on November 6, 2008.

2.      I submit this declaration in support of (i) *Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief*, (ii) *Motion Pursuant to Fed. Rule of Bankruptcy Proc. 1015(b) for an Order Directing the Joint Administration of the Cases Under Chapter 15 of the Bankruptcy Code*; and (iii) *Motion for Ex Parte Temporary Restraining Order And Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(a), 1519 and 1521*.

3.      This declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements represent my view of Australian law as a practicing lawyer.

4.      Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me by or on behalf of the Receivers and/or Administrators and are true to the best of my knowledge, information and belief.

**Professional Background**

5.      I am a legal practitioner practising in New South Wales, Australia. I was admitted as a solicitor of the Supreme Court of New South Wales in 1985. I am also admitted as a legal practitioner of the High Court of Australia which admission entitles me to appear in the Federal Court of Australia. I specialise in corporate restructuring and insolvency.

YCST01:9709149.1                                                                                      000025.1886

## Background

6. The ABC Group is an operator of childcare centres in Australia and throughout the world, including the UK, USA and New Zealand. The ultimate parent company ABC Learning is registered and incorporated in Australia and is listed on the Australian Stock Exchange. At its height, the ABC Group operated approximately 1,045 childcare centres in Australia.

## Current Forms of Corporate Insolvency Under Australian Law

7. Australian law has evolved from English law, and is very similar to English common law and rules of equity. In Australia, the formation, operation and dissolution of companies is primarily regulated by the Australian Corporations Act 2001 (the "Corporations Act"). In general, the Corporations Act applies to companies that are either registered or registrable. Locally formed companies, such as the Debtors, are registered on incorporation.

8. The Corporations Act provides for five principal formal procedures to address the insolvency of, or the restructuring of the business affairs if approaching insolvency, of a company:

    (a)    voluntary administration;

    (b)    deed of company arrangement;

    (c)    liquidation;

    (d)    receivership; and

    (e)    scheme of arrangement

9. In 1993 a new procedure for the administration of insolvent or near insolvent companies was introduced in Australia, known as "voluntary administrations". I am informed and verily believe that the procedure has similarities with the administration process available in the United Kingdom (although the administrator in Australia is appointed by the directors of a

company, not by the court) and the Chapter 11 procedure applicable in the United States of America (although the administration of the company in Australia is taken out of the control of the company's directors and placed under the control of an independent insolvency practitioner who is a registered liquidator).

10.     The object of the voluntary administration process is stated in section 435A of the Corporations Act as being to provide for the business, property and affairs of an insolvent company to be administered in a way that:

(a)     maximises the chances of the company, or as much as possible of its business, continuing in existence; or

(b)     if it is not possible for the company or its business to continue in existence, results in a better return for the company's creditors and members than would result from an immediate winding up of the company.

11.     The administration process commences with the appointment of a voluntary administrator. An administrator may be appointed by:

(a)     A company if the board has resolved that the company is insolvent or is likely to become insolvent at some future time, provided that the company has not already been wound up (section 436A);

(b)     A liquidator or provisional liquidator of a company if he or she thinks the company is insolvent or is likely to become insolvent at some future time (section 436B);

(c)     A holder of a charge on the whole, or substantially the whole, of a company's property, provided the charge is enforceable and the company is not already being wound up (section 436C).

12.     While a company is under administration, subject to certain limitations on the administrator's rights based on the appointment of a receiver, section 437A provides that the administrator:

(a)     has control of the company's business, property and affairs;

(b)     may carry on that business and manage the company's property and affairs; and

(c)    may perform any function, and exercise any power, that the company or any of its officers could perform or exercise if the company were not under administration.

13.    The administrator acts as the company's agent with the full powers of its officers (sections 437A and 437B). The powers of the company officers are suspended (section 437C(1)). Subject to the rights of a receiver (section 441A(4)), only the administrator may deal with the company's property during the administration. Any dealing with the company's property by anyone else (other than a receiver) will be void (unless the administrator consented to it or it was pursuant to a Court order (section 437D)).

14.    The most significant duties of an administrator include the following:

(a)    Begin to investigate the company's business, property, affairs and financial circumstances as soon as is practicable after the administration begins (section 438A(a));

(b)    Form an opinion about:

    (i)    whether an arrangement with the company's creditors will be in the creditors' best interests;

    (ii)    whether it would be in the creditors' interests for the administration to end;

    (iii)    whether it would be in the creditors' interests for the company to be wound up; (Section 438A(b));

(c)    Convene a meeting of the company's creditors to "decide the company's future" (section 439A(1)) generally within 20 business days of the commencement of the administration. This time period may be extended by the Court (section 439A(6)).

15.    The administrator is liable for "debts" he or she incurs in the performance or exercise of any of his or her functions and powers as administrator, for services rendered or goods bought, or property leased, used or occupied. The administrator is entitled to be indemnified out of the company's property for such debts and for his or her remuneration. The administrator holds a lien to secure this indemnity (section 443D) and that lien is subordinated only to fixed charges.

YCST01:9709149.1
000025.1886

16.     The administrator is also an officer of the company and under the Corporations Act has statutory duties to act honestly and with reasonable diligence. Like all company officers, an administrator owes a fiduciary duty to the company. The Corporations Act provides a mechanism for an administrator to be removed from office. That mechanism is provided for by section 449B of the Corporations Act which provides as follows:

> On the application of the Commission or of a creditor of the company concerned, the Court may:
>
> (a)     remove from office the administrator of a company under administration or of a deed of company arrangement; and
>
> (b)     appoint someone else as administrator of the company or deed.

17.     Creditors also have the right to replace the administrator at the meeting of creditors that the administrator is obliged to hold within 8 business days after the administration begins. Section 436E(4) of the Corporations Act provides:

> At the meeting, the company's Creditors may also, by resolution:
>
> (a)     remove the administrator from office; and
>
> (b)     appoint someone else as administrator of the company.

18.     The voluntary administration procedure automatically imposes a general moratorium on the rights of most creditors during the period of the administration. The effect of this moratorium during this period is:

> (a)     to prevent the company from being wound up voluntarily (section 440A(1));
>
> (b)     subject to certain exceptions, to prevent securities over the company's assets from being enforced without the administrator's consent or leave of the Court (section 440B);
>
> (c)     to prevent an owner or leaseholder recovering property which is being used by the company without the administrator's written consent or leave of the Court (section 440C);
>
> (d)     to prevent, subject to certain exceptions (that are not material in relation to this application), commencement or continuation of Court proceedings against the company without the administrator's written consent or leave

000025.1886

of the Court (section 440D);

(e)    to prevent guarantees provided by the company's directors or their spouses from being enforced.

19.    In essence, the voluntary administration procedure provides the company with a statutory moratorium to allow an independent administrator to investigate the company's affairs and form an opinion, to be conveyed to creditors, about the alternatives for the future of the company. At the meeting of the company's creditors convened to decide the company's future, creditors will be presented with the administrator's report, which will set out the available options and will provide a recommendation in relation to those alternatives. At this meeting (which may be adjourned for a period up to 45 business days), creditors will choose among the following three alternatives:

(a)    that the company execute a deed of company arrangement (DOCA) (section 439C(A)); or

(b)    that the administration should end (*i.e.* that the company should be handed back to the control of the directors) (section 439C(b)); or

(c)    that the company be wound up (section 439C(c)).

20.    A resolution of creditors is only passed if a majority of creditors in both number and value vote in favour of it. If a majority of creditors in either value or number, but not both, vote in favour of a resolution then the resolution is decided by the casting vote of the chairman of the meeting. It is usual for the administrator to chair the meeting of creditors.

21.    If the creditors vote for the company to execute a DOCA, the effect of the deed upon the claims of creditors will be set out in the terms of the deed. Creditors have a right to apply to the court to set aside a deed if it is unfairly prejudicial or oppressive. (Section 445D(1)(f)).

22.    The voluntary administration procedure is therefore not an end unto itself - it is a means to an end. The statutory moratorium and other protections against creditors' claims

7

allow the administrator to take control of the company for what is usually a short period to investigate its affairs and to provide a recommendation to creditors as to the company's future. The administration will end with either the company being handed back to the control of its directors (which is a very rare outcome), the company being wound up, or a deed of company arrangement being entered into the terms of which will govern and regulate the rights and entitlements of pre-appointment creditors of the company.

**The Role Of The Court In The Voluntary Administration Process**

23.      The Courts in Australia do not have a necessary role in initiating a voluntary administration, the convening of meetings nor any approval of a deed of company arrangement. Nevertheless, the court does have a general supervisory jurisdiction and there is substantial judicial oversight which can be invoked by interested persons, including the company, a creditor, the administrator or the Australian Securities and Investments Commission. Division 13 of Part 5.3A of the Corporations Act sets out the powers conferred by the Corporations Act on the Federal Court of Australia and the Supreme Courts of each state of Australia in relation to voluntary administrations.  In this regard:

(a)      section 447A allows these Courts to "make such order as it thinks appropriate about how this Part is to operate in relation to a particular company";

(b)      section 447D enables the administrator to apply to the Court for directions about the exercise of any of his functions and powers; and

(c)      section 447E provides the Court with a supervisory role in relation to the administrator's conduct.

24.      Moreover, under Section 445 of the Corporations Act, courts are permitted to terminate a deed of company arrangement if it is, was, or would be:

(a)      oppressive or unfairly prejudicial to, or unfairly discriminates against, one or more such creditors; or

000025.1886

(b)     contrary to the interests of the creditors of the company as a whole

25.     Effectively, the court may make orders it considers appropriate for the operation of the voluntary administration regime in relation to the company which is the subject of the administration.

26.     As to the ambit of the Court's power under section 447A, I respectfully draw the Court's attention to the majority decision of the High Court of Australia in *Australasian Memory Pty Ltd v Brien* (2000) 200 CLR 270 (at 280 - 281), which noted the following:

- Next, the other provisions of Div 13 of Part 5.3A give a court wide powers to protect creditors during the administration, to declare whether an administrator was validly appointed, to give directions to an administrator and to supervise an administrator of a company or a deed of company arrangement. And while full effect must be given to the provisions of s 447F (that "[n]othing in this Division *limits* the generality of anything else in it") it is clear, from the other provisions of Div 13 that we have mentioned, that s 447A was intended to permit a much wider class of orders than those which declare what is the effect of the Part or which protect the interests that creditors no doubt have in the administration of a company being carried out in accordance with law.

- The considerations we have mentioned suggest that the powers under s 447A are wide but they do not compel the conclusion that they are entirely without limit. Some particular limitations, suggested in the course of argument, must be examined: first, that s 447A does not permit a court to make an order altering the times fixed by those provisions of Part 5.3A which contain express provision for variation of the time so fixed; second, that it permits only orders having prospective effect; third, that it does not permit the making of orders affecting vested rights; and, fourth, that it does not apply unless there is a continuing administration (or, presumably, an extant deed of company arrangement).

27.     In order to illustrate the manner in which a Court's jurisdiction might be invoked in relation to a voluntary administration, I highlight numerous applications that the Administrators of the ABC Group have made since their appointment on 6 November 2008. The Administrators have applied to the Federal Court of Australia for the purposes of convening the first meeting of creditors seeking approval to send the notice of meeting to creditors in electronic form. The Administrators have also sought orders pursuant to Section 447A of the Corporations

YCST01:9709149.1                                                    000025.1886

Act for the extension of the convening period on three separate occasions. The Administrators have also applied to the Federal Court of Australia seeking to streamline the meeting process to enable meetings of creditors to be held concurrently and for an order for a joint committee of creditors to all companies rather than individual committees of creditors for each group company.

**Deed of Company Arrangement - DOCA**

28.     As mentioned in paragraph 19 above, an administration may result in a DOCA. A DOCA (similar to a scheme of arrangement) governs the relationship between a company and its creditors, including the scheduling of payments and the release, if any, of the debts of the company during the life of the deed. Subject to the Corporations Act, a DOCA prescribes how a company is to be managed and how its creditors' claims are to be satisfied.

29.     If during the administration process it is resolved by the company's creditors at the second meeting of creditors that a DOCA be executed by the company, then the administrator of the company will become the administrator of the deed, unless the creditors resolve to appoint another person. The administrator of the deed must prepare an instrument that sets out the terms of the DOCA, and the instrument must then be executed by the company and the deed administrator.

30.     A DOCA will terminate in accordance with its terms, by a resolution of the creditors or by order of the Court. Where appropriate, on termination of a DOCA, the Corporations Act provides for the conversion of the DOCA into a creditor's voluntary winding-up.

31.     Division 13 of Part 5.3A of the Corporations Act equally applies to a company the subject of a DOCA. In other words, the court has a general supervisory jurisdiction and there

is substantial judicial oversight that may be invoked by interested persons.

## Liquidation

32.     As set out in paragraph 20 above, one of the possible outcomes of a voluntary administration is a liquidation. Although not currently applicable to ABC Learning or the ABC Group, it is still necessary to consider this section because the administration process is not an end unto itself; rather it is a means to an end. Although by no means will it occur on every occasion however it is often the case that a company that is in administration will proceed into liquidation.

33.     Liquidation (or a "winding-up") is the process of collecting and realising the assets of a company, discharging its debts and liabilities and distributing the balance, if any, among the stakeholders according to their entitlements or as the constitution of the company directs. The liquidator ascertains the liabilities of the company, converts its assets into money, terminates its contracts, disposes of its business, distributes the net assets to creditors and any surplus to the shareholders, and extinguishes the company as a legal entity by formal dissolution (*i.e.*, deregistration). Liquidation may be voluntary or imposed by court order.

34.     A winding-up is classified according to the way it is commenced. A winding-up by the court (called "compulsory winding-up") is generally commenced in the Federal Court, or in a Supreme Court of a state or territory. A voluntary winding-up may be a member's voluntary winding-up or a creditor's voluntary winding-up.

35.     Putting to one side the relevance of a secured creditor and any receivers appointed by it, the main effects of a company going into a compulsory or creditors' voluntary winding-up are as follows:

(a)     the directors may not perform or exercise their functions or powers except in specific circumstances;

11

000025.1886

(b)    the company is to cease carrying on its business except so far as is, in the opinion of the liquidator, required for the beneficial winding-up of the company;

(c)    no court proceedings against the company may be commenced or continued, nor may enforcement process be validly taken against its property (except, in the case of a compulsory winding up, with leave of the Court);

(d)    the liquidator takes custody of all property of the company;

(e)    transfers of shares after the commencement of the winding-up are affected by provisions of the Corporations Act; and

(f)    every invoice, order for goods or business letter must bear the words 'in liquidation' after the company's name.

## Compulsory Winding-Up

36.    The aim of a winding-up is to ensure an orderly and rateable distribution of the property (if any) of a company among creditors. Under section 459A of the Corporations Act, a court may, on application, make an order that an insolvent company be wound up. The court order does not itself wind up the company; it directs that the process of liquidating the company's assets and winding-up of its affairs should begin.

37.    Pursuant to section 459P of the Corporations Act, an order to wind up a company may be sought by the company, a creditor, contributories, a director, a liquidator, ASIC, and certain government agencies. Contingent or prospective creditors, contributories, directors and ASIC can only apply to wind up a company in insolvency with the Court's leave.

## Voluntary Winding-Up

38.    A voluntary winding-up differs from a compulsory winding-up in that it is initiated by (i) a company's members rather than the court, or (ii) a resolution of creditors at the conclusion of a voluntary administration process.  As the ABC group is currently in voluntary administration, entry into liquidation will be classified as a "voluntary winding up".

39.    Being a voluntary winding up, it is not a winding up by the Court. That having

YCST01:9709149.1                                                                                   000025.1886

been said, there are numerous provisions in the Corporations Act that confer jurisdiction on both the Federal Court and the Supreme Court of each of the states and territories of Australia to in effect exercise a general supervisory jurisdiction in relation to the voluntary winding up. There is substantial judicial oversight which can be invoked by interested persons, including a creditor, the Australian Securities and Investments Commission and, indeed, any "person aggrieved by any act, omission or decision of' the liquidator. In this regard, I draw the Court's attention to the following provisions of the Corporations Act that enable the stated Australian superior Courts to exercise a general supervisory jurisdiction in relation to the liquidation in general, and the conduct of the liquidator in particular:

### Section 1231

1231(1) A person aggrieved by any act, omission, or decision of:

(d)     a liquidator or provisional liquidator of a company;

   may appeal to the Court in respect of the act, omission or decision and the Court may confirm, reverse or modify the act or decision, or remedy the omission, as the case may be, and make such orders and give such decisions as it thinks fit.

### Section 503

503 The Court may, on cause show, remove a liquidator and appoint another liquidator.

### Section 511(1)

*511(1)* The liquidator or any contributory or creditor, may apply to the Court:

(a)     to determine any question arising in the winding up of a company; or

(b)     to exercise all or any of the powers that the Court might exercise if the company were being wound up by the Court.

### Section 511(2)

511(2) The Court, if satisfied that the determination of the question or exercise of power will be just and beneficial, may accede wholly or partially to any such application on such terms and conditions as it thinks fit or may make such other order on the application as it thinks just.

YCST01:9709149.1

000025.1886

***Section 536***

(1) Where;

(a) it appears to the Court or to ASIC that a liquidator has not faithfully performed or is not faithfully performing his or her duties or has not observed or is not observing:

    (i) a requirement of the Court; or

    (ii) a requirement of this Act, of the regulations or the rules; or

(b) a complaint is made to the Court or to ASIC by any person with respect to the conduct of a liquidator in connection with the performance of his or her duties; the Court or ASIC, as the case may be, may enquire into the matter and, where the Court or ASIC so enquires, the Court may take such action as it thinks fit.

…

(3) The Court may at any time require a liquidator to answer any enquiry in relation to the winding up and may examine the liquidator or any other person on oath concerning the winding up and may direct an investigation to be made of the books of the liquidator.

## Provisions Applicable Generally To Liquidations (Both Voluntary And Compulsory Windings Up)

40.    Upon appointment, a liquidator will assume control of the company and its property. While the directors do not lose their office, they can act only with the written approval of the liquidator or the approval of the court. However, the liquidator does not automatically gain all of the powers lost by the directors. A liquidator's functions include (a) winding-up the affairs of the company; (b) distributing equitably the company's assets among its creditors; and (c) examining the circumstances which precipitated the liquidation and which may reveal improper dispositions of property and criminal offences.

41.    After collecting the assets and after the time fixed for the adjudication of claims, a liquidator can make distributions to creditors. With respect to an insolvent company, there is a prescribed order of payment of debts. In general, and subject to the exceptions outlined below (including receivership and the existence of a secured creditor), the starting point is that,

000025.1886

unless otherwise provided, all debts proved in a winding-up rank equally and, if the property of the company is insufficient to meet them in full, they are to be paid rateably.

42.     A statutory order of priorities is set forth in section 556 of the Corporations Act, and is summarised as follows:

(a)     expenses (except for remuneration and fees) properly incurred by the liquidator or any voluntary administrator or deed administrator in preserving, realising or getting in property of the company, or in carrying on the company's business;

(b)     if the court ordered the winding-up, the costs in respect of the application for the order, certain prescribed debts incurred by an administrator of the company;

(c)     certain other expenses incurred in the insolvent administration of the company;

(d)     remuneration and fees of the liquidator and of any voluntary administrator or deed administrator;

(e)     wages and superannuation payments to employees;

(f)     amounts due in respect of injury compensation;

(g)     amounts due in respect of leave entitlements; and

(h)     retrenchment payments.

43.     If there is not enough property of a company to meet all the priority debts and a category of priority debts cannot be paid in full, debts in that category are to be paid proportionately.

44.     If all priority debts have been paid, the liquidator may then pay the remaining unsecured debts which have been proved. Subject to the exceptions outlined below (and several other, either less material exceptions or exceptions not relevant to the ABC Group such as special priorities applicable to banks and insurance companies), if there is a deficiency of property, the debts are to be paid proportionately.

45.     Any surplus remaining after payment of all debts will normally be distributable among the equity holders.

000025.1886

## Effect Of Liquidation On The Administration Process

46.     As set out at paragraph 22 above, the administration process is not an end unto itself, rather it is a means to an end.  In that regard, liquidation is one of the outcomes and consequences of the administration process.

## Receivership

47.     As set out at paragraph 1 above, the Receivers were appointed to the ABC Group on November 6, 2008.  In Australia, the concept of "receivership" generally refers to the process in which a receiver (or receiver and manager) is appointed to a company by a secured creditor to collect or protect property for the benefit of that secured creditor.

48.     For the purposes of this declaration, I will use the term "receiver".  It should be noted that pursuant to the Corporations Act, the term "receiver" as used in that Act  also includes a "receiver and manager" in relation to the property of a company.  Where I use the term "receiver" I also intend it to mean both "receiver" and "receiver and manager" unless I state otherwise.[1]

49.     The Corporations Act when dealing with "receivership" also uses the term "controller".  This term is defined in section 9 of the Corporations Act to include a receiver, a receiver and manager of property or anyone else who is in possession or control of that property for the purpose of enforcing a charge on the property of the company.  Although a "controller" who is not a "receiver" is sometimes appointed to enforce a charge, this is an uncommon

---

[1]   Traditionally and prior to the implementation of the Corporations Act this distinction was important because under general law a distinction is made between the term "receiver" and "receiver and manager".  As Lord Jessel MR in *Re Manchester & Milford Ply Co: Ex parte Cambrian Rly Co (1880) 14 Ch D 645 said at 653*: "A 'receiver' is a term which was well known in the Court of Chancery, as meaning a person who receives rents or other income paying ascertained outgoings, but who does not, if I may say so, manage the property in the sense of buying or selling or anything of that kind."

000025.1886

occurrence, and is not relevant to the circumstances of the ABC Group (it is relevant to note that as a "receiver" is comprised within the definition of "controller", references in the Corporations Act to a controller are applicable to a receiver).

50.     The appointment of a receiver is usually made in one of two ways.  A receiver may be appointed by a Court or a receiver may be appointed out of Court.  In terms of a receiver appointed by the Court, most if not all Australian jurisdictions have an inherent jurisdiction to appoint a receiver where it appears to the court to be just or convenient to do so.  The Court will use its discretionary power to appoint a receiver taking into account all of the factual matters before it.

51.     Although appointments by the Court are not rare occurances, it is more common for an appointment of a receiver to be made out of court.  As the Receivers have been appointed out of court, this declaration will focus on receivers that have been appointed in such a way.

52.     Appointments out of court can be made:

(a)     by way of power contained in a statute of the Commonwealth of Australia or each of the Australian states; or

(b)     by an express power in a debenture.

53.     By far the most common form of appointment out of court is by an express power set out in a debenture.  I will use the word "debenture" in this statement to mean charge, mortgage or other security instrument.  Usually this would involve a lender pursuant to a debenture appointing a receiver in accordance with the terms and conditions of the debenture upon the happening of an event of default as described in the debenture.  This is also what has happened in relation to the appointment of the Receivers to the ABC Group.  Accordingly, this statement will focus upon an appointment made in such a way, that is, an appointment of

000025.1886

receivers out of court pursuant to an express power in a debenture.

54. In general terms, the primary goal of a receiver who has been appointed out of Court is to recover and realise the assets the subject to his appointment, repay the debenture holder who appointed him/her, and return any surplus to the company. Section 433 of the Corporations Act identifies a small number of exceptions to this general principle. Those exceptions primarily relate to particular groups of creditors (such as creditors with particular insurance claims and certain entitlements of employees of the company).

55. The effects of the appointment of a receiver out of Court on a company are numerous. Amongst other things, an appointment has the following effect:

(a) The receiver who is appointed will act as the agent of the company. Although this position sometimes causes confusion to those dealing with the company in "receivership", the position is well settled - upon appointment the receiver's primary duty will be owed to the debenture holder but the receiver acts as the agent of the company. This agency relationship will continue between the receiver and the company up until the receivership is terminated or the company goes into liquidation. Upon liquidation, the receiver's agency is curtailed.

(b) The appointment of a receiver has a significant effect on the management of the company. As Street J said in *Hawkesbury Development Co Limited v Landmark Finance Pty Ltd* (1970) 92 WN (NSW) 199 at 209:

> "Receivership and management may well dominate exclusively a company's affairs in its dealings and relations with the outside world. But it does not permeate the company's internal domestic structure. The structure continues to exist notwithstanding that the directors no longer have authority to exercise their ordinary business-management functions. A valid receivership and management will ordinarily supersede, but not destroy, the company's own organs through which it conducts if affairs. The capacity of those organs to function bears a direct inverse relationship to the validity and scope of the receivership and management".

As a result, directors will have no power over the assets in the possession and control of a receiver during a receivership.

(c) The appointment of receiver crystallises a floating charge held by a debenture holder. Although an appointment crystallises a floating charge, it does not mean that the property of the company vests in the receiver or entitles him/her to transfer the property into their own names. Rather, they can recover any property

18

000025.1886

of the company by bringing proceedings in the name of the company and once possession of any property has been taken by the receiver then the receiver is not obliged to surrender it until the appointment has been determined.

(d)     Generally speaking a creditor who has obtained a judgment against the company will not take priority over the rights of the secured creditor appointing the receiver.

(e)     Unlike the administration or liquidation process, the appointment of a receiver does not result in an automatic stay on the initiation or continuation of legal proceedings. Although this is the general position, it should be noted that in terms of the ABC Group, administrators have already been appointed to the group of companies and a stay operates by virtue of that appointment. I refer to the effect of administration process on the initiation or continuation of legal proceedings at paragraph 18 above. Consequently, unsecured creditors may commence litigation or other proceedings, including winding up proceedings against a company. However, for practical purposes, there may be little utility in any enforcement action being taken against the company by other creditors as the assets will be under the control of the receivers, assuming they have been appointed to all assets of the company.

(f)     Finally, pursuant to ss9, 441A and 441D of the Corporations Act the holder of a charge (debenture holder) that covers all or substantially all of the assets of the company has within 13 business days from the date of the appointment of an administrator of a corporation, to enforce a debenture if the debenture holder decides to do so. It should be noted that sometimes debenture holders decide not to exercise this option and allow an administrator to deal with the assets and property of a company subject to the rights of the debenture holder. On other occasions the debenture holder will proceed to enforce its security by the appointment of a receiver within the 13 business day period. Should a receiver be appointed pursuant such a debenture, then the appointment of the receiver overrides the power of the administrator to take the control and possession of the property of the company in administration.

56.     The receiver is also liable for certain "debts" that he or she incurs in the course of the receivership when they enter into possession of or assume control of the property of the corporation for the purposes of enforcing a debenture. This will be the case notwithstanding any agreement to the contrary (section 419(1)). Most receivers will be entitled to an indemnity from the company, secured by a lien over the assets of the company for all debts legitimately incurred during the course of the receivership by virtue of the terms and conditions of the debenture itself.

57.     A receiver who has been appointed out of court will derive their powers from

YCST01:9709149.1                                                                 000025.1886

two sources. The first is from the terms of the debenture under which the receiver has been appointed, and the second source of power is section 420 of the Corporations Act. Without limiting any powers that may be contained in the particular debenture, the powers set out in the Corporations Act are wide reaching. The powers are as follows:

(a) to enter into possession and take control of property of the corporation in accordance with the terms of that order or instrument; and

(b) to lease, let on hire or dispose of property of the corporation; and

(c) to grant options over property of the corporation on such conditions as the receiver thinks fit; and

(d) to borrow money on the security of property of the corporation; and

(e) to insure property of the corporation; and

(f) to repair, renew or enlarge property of the corporation; and

(g) to convert property of the corporation into money; and

(h) to carry on any business of the corporation; and

(j) to take on lease or on hire, or to acquire, any property necessary or convenient in connection with the carrying on of a business of the corporation; and

(k) to execute any document, bring or defend any proceedings or do any other act or thing in the name of and on behalf of the corporation; and

(m) to draw, accept, make and endorse a bill of exchange or promissory note; and

(n) to use a seal of the corporation; and

(o) to engage or discharge employees on behalf of the corporation; and

(p) to appoint a solicitor, accountant or other professionally qualified person to assist the receiver; and

(q) to appoint an agent to do any business that the receiver is unable to do, or that it is unreasonable to expect the receiver to do, in person; and

(r) where a debt or liability is owed to the corporation — to prove the debt or liability in a bankruptcy, insolvency or winding up and, in connection therewith, to receive dividends and to assent to a proposal for a composition or a scheme of arrangement; and

(s) if the receiver was appointed under an instrument that created a charge on uncalled share capital of the corporation:

(i) to make a call in the name of the corporation for the payment of money unpaid on the corporation's shares; or

(ii) on giving a proper indemnity to a liquidator of the corporation—to make a call in the liquidator s name for the payment of money unpaid on the corporation's shares; and

(t) to enforce payment of any call that is due and unpaid, whether the calls were made by the receiver or otherwise; and

(u) to make or defend an application for the winding up of the corporation; and

(w) to refer to arbitration any question affecting the corporation.

58. In addition to the primary duty of a receiver to gather in, manage and realize the assets the subject of the debenture with a view to repaying the secured creditor's debt, a receiver who has been appointed to the company has many other duties and liabilities. These duties and liabilities arise under general law and under statute. These duties and liabilities are also wide ranging. Some of the duties are administrative in nature (such as duties of reporting and filing documents with ASIC along with duties concerning compliance with notifications to the Australian Taxation Office), while other duties and liabilities deal with the general conduct of the receiver (such as the receiver's duty of care in exercising their power of sale).

59. Upon the conclusion of a receivership, the company will continue to exist, and the control of all of the property of the company will be returned to the company's board of directors. This is unless another receiver or a voluntary administrator, deed administrator or liquidator has taken office in relation to the company.

60. Finally, pursuant to the Cross-Border Insolvency Act 2008 (the act that implements the UNCITRAL Model Law in Australia), the Corporations Act provisions contained in Part 5.2 (*Receivers, and other controllers, of property of corporations*) are not laws of Australia relating to insolvency or proceedings to which that act applies. As set out above, the Debtors first went into and remain in voluntary administration. The provisions of the Corporations Act contained in Part 5.3A (*Administration of a company's affairs with a view to*

YCST01:9709149.1

000025.1886

*executing a deed of company arrangement)* are laws of Australia relating to insolvency or proceedings to which that act applies. This is also the case with a liquidation of the Debtors, should creditors decide to place the Debtors in liquidation.

**Role Of The Court In Receiverships**

61. By definition, the courts in Australia do not have a role in initiating an out of court receivership. Nevertheless, the court does have a general supervisory jurisdiction which may be invoked by interested persons, including creditors, the receiver or ASIC.

62. Pursuant to sections 424(1) and (2) of the Corporations Act, a receiver may apply to the Court for directions in relation to any matter arising in connection with the performance or exercise of any of the receiver's functions and powers. This is a procedure stipulated by statute that is intended to give a receiver direct access to the Court. This process however cannot be used in order for the Court to provide directions on the commercial and business judgments of the receiver and it is doubtful whether an application pursuant to section 424 of the Corporations Act empower the Court to make any order that will bind a third parties (other than the receiver).

63. Further, the Court may act in the following ways concerning the conduct and action of a receiver:

    (a)    if it appears to the Court or to ASIC that a receiver has not faithfully performed its functions then the Court may inquire into the matter and the Court may take such action as it thinks fit (section 423(1)). Any person has the power to complain to the Court under this provision about any "act or omission" of the receivers;

    (b)    the Court may require or examine a receiver to answer questions about the performance or exercise of any of its functions or powers (section 423(3)(a) and (b)). The Court may also direct an investigation to be made into the books of a receiver (section 423(3)(c));

    (c)    upon the request of a liquidator, administrator, the administrator of a deed of company arrangement or ASIC, the Court may fix the amount to be

paid by way of remuneration to any person who has been appointed as receiver (section 425);

(d)    upon the application of the company, the Court may remove the receiver where it is satisfied that the receiver has been guilty of misconduct (section 434A);

(e)    where upon the application of a liquidator, the Court may order that the receiver cease to act or that the receiver act only for a specified period (section 434B); and

(f)    any person "aggrieved" by any act, omission or decision of a receiver may appeal to the Court in relation to the matter, and the Court may confirm, reverse or remedy the decision and make such orders as it thinks necessary (section 1321)

## Effect Of Receivership On Voluntary Administration

64.    Apart from those factors already set out above, a receivership and voluntary administration can, and will, often operate concurrently. I will explain the effect of the appointment of the Receivers on the voluntary administration of the ABC Group below.

## Effect Of Receivership On Liquidation

65.    A receivership and a liquidation can also operate in relation to the one company at the same time. In general terms, the appointment of a provisional liquidator or a liquidator will not affect a receiver possessing and controlling the assets of a company and realising them for the benefit of the debenture holder who appointed the receiver.

66.    It should be noted however that the appointment of a liquidator where a company is already in receivership does not relieve the liquidator from carrying out their statutory functions and duties. A liquidator may therefore investigate matters such as unfair preferences and any potential challenges to the validity of the debenture (and in turn the appointment of any receiver pursuant to any such debenture).

67.    In circumstances where the receiver has been operating or managing the

000025.1886

company as a going concern, the appointment of a liquidator or provisional liquidator will require the receiver to obtain the liquidator's written approval to continue to carry on the company's business (section 420C). This, of course, does not prevent the receiver from continuing to realise the assets for the benefit of the debenture holder.

68.     The appointment of a liquidator or provisional liquidator does not require the receiver to return the books and records of the company to the liquidator or provisional liquidator. However the liquidator is entitled to inspect and make copies of any such documents.

69.     Finally, if receivers have been appointed prior to any liquidation then they are obliged to pay certain preferential debts out of the assets subject to the charge in priority to any claim for principal and interest under the debenture (section 433).

## Scheme Of Arrangement

70.     I will briefly deal with the concept of "Scheme of Arrangement" although it is not currently applicable to ABC Learning or the ABC Group.

71.     A scheme of arrangement is similar to a DOCA in that it is a flexible mechanism by which a company can be reorganised and its creditors satisfied. A scheme of arrangement differs from a DOCA in that it (a) need not be preceded by a voluntary administration; (b) is not limited to circumstances in which the company is or is likely to become insolvent; (c) requires a 75% majority in value and 50% majority in number of creditors; and (d) is only binding if approved by an Australian court.

72.     Under Australian law, a scheme of arrangement, which is a compromise or arrangement between a debtor and its creditors pursuant to Part 5.1 of the Corporations Act, may be proposed to address a company's affairs. To be approved, favourable votes must be cast by creditors constituting at least 50% in number and at least 75% in value of each class of creditors

YCST01:9709149.1

000025.1886

present and voting at meetings of creditors convened to consider the scheme of arrangement. Assuming the requisite approval of creditors is obtained, the scheme of arrangement then must be approved by the Supreme Court of a state or territory. Once a copy of the order approving the scheme of arrangement is lodged with the ASIC, the scheme of arrangement becomes legally binding on all creditors that are parties to the scheme, wherever located and regardless of their vote. A scheme of arrangement may be entered into whether or not the company is in liquidation.

### Application To The Circumstances Of ABC Group

73.     Although the ABC Group was placed into voluntary administration, pursuant to sections 441A and 441D of the Corporations Act (forming part of the Voluntary Administration regime), CBA Corporate Services (NSW) Pty Ltd, in its capacity as the Security Trustee of A.B.C. Learning 2008 Security Trust exercised its rights pursuant to the terms and conditions of various charges and appointed the Receivers to the ABC Group also on November 6, 2008.

74.     Ordinarily where an administrator has been appointed to a company, only the administrator may deal with a company's property during administration. To the extent that anyone else may deal with the company's property then such actions will be void. However, this restriction does not apply to the receivers appointed within 13 business days of the appointment of an administrator. Accordingly, it will not apply to the Receivers of the ABC Group. It is the Receivers who are dealing, and will continue to deal, with the assets of the ABC Group.

75.     As mentioned above, the appointment of a receiver would not usually result in an automatic stay on the initiation or continuation of legal proceedings. However, since the company is already in administration a stay on the initiation or continuation of legal proceedings is already and will continue to be in force.

YCST01:9709149.1                                                                          000025.1886

76.    The Courts in Australia have not had a necessary role in initiating either the administration or receivership of the ABC Group. However, this does not mean that either of the processes are not subject to the supervision of the Courts. To the contrary, the Court does have a general supervisory jurisdiction to the extent identified above in both an administration and a receivership, and a range of parties can and do invoke the Court's jurisdiction to review particular matters.

77.    To that end, both the administration and the receivership of the ABC Group will continue to operate concurrently. This means that a number of matters relating to the ABC Group will be conducted by either the Administrators or the Receivers. In particular:

(a)    the Receivers will primarily deal with and determine all issues relating to the assets and property of the ABC Group. The Receivers will also be responsible for and deal with the on-going trading operations (if any) of the ABC Group; and

(b)    the Administrators will deal with the claims of creditors of the ABC group. The Administrators will also deal with and be responsible for the administration process to be carried out in accordance with the Corporations Act (including the operation of any DOCA should such a deed be proposed and executed by the ABC Group).

78.    As both the administration and the receivership of the ABC Group will continue on concurrently, the Receivers will remain in place until such time as CBA Corporate Services (NSW) Pty Ltd, in its capacity as the Security Trustee of A.B.C. Learning 2008 Security Trust has been paid in full or the Receivers' appointment has been terminated. As the ABC Group is also in administration, it is very unlikely (although theoretically possible) that upon the conclusion of the receivership that the control of the property of the ABC Group will be returned to the company's board of directors. Rather, depending upon the outcome of the voluntary administration process, it is likely that the ABC Group will either proceed into a DOCA or be placed into voluntary liquidation. If the ABC Group were to go into liquidation

after the voluntary administration process, then both the receivership and liquidation would continue to operate concurrently.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of May 2010.

_/s/ John Kenneth Martin_
John Kenneth Martin

YCST01:9709149.1

000025.1886