# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
Petition of Mr. Peter Walker and Mr. Gregory                     :  In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C.                       of the Bankruptcy Code
LEARNING CENTRES LIMITED,                                        :
                                                                 :
Debtor in a Foreign Proceeding.                                  :  Case No. 10-B- 11711
---------------------------------------------------------------- x

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
Petition of Mr. Peter Walker and Mr. Gregory                     :  In a Case Under Chapter 15
Moloney, as foreign representatives of A.B.C. USA                   of the Bankruptcy Code
HOLDINGS PTY LTD,                                                :
                                                                 :
Debtor in a Foreign Proceeding.                                  :  Case No. 10-B- 11712
---------------------------------------------------------------- x

## MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(a), 1519 AND 1521

Mr. Peter Walker and Mr. Gregory Moloney, in their capacities as administrators (the "Petitioners") and foreign representatives of A.B.C. Learning Centres Ltd. (Administrators appointed)(Receivers and Managers appointed) ("ABC Learning") and A.B.C. USA Holdings Pty Ltd (Administrators appointed)(Receivers and Managers appointed) ("ABC Holdings" and, together with ABC Learning, the "Debtors"), who are parties in a proceeding under Australia's *Corporations Act 2001* (Cth) (the "Corporations Act"), file this motion (the "Motion") pursuant to sections 105(a), 1519 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of (i) a temporary restraining order ("TRO"), (ii) an order scheduling a hearing (the "Hearing") with respect to the Petitioners' request for a preliminary injunction, and (iii) after notice and a hearing, an order granting the requested preliminary injunction. In support hereof,

the Petitioners respectfully submit and rely on (i) the *Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief* (the "Verified Petition"); (ii) the *Declaration of Peter Walker dated May 26, 2010 in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; (II) Administrators' Motion for Joint Administration; and (III) Administrators' Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§105(a), 1519, and 1521* (the "Walker Declaration"); (iii) the *Declaration of John Kenneth Martin dated May 26, 2010 in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; (II) Administrators' Motion for Joint Administration; and (III) Administrators' Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§105(a), 1519, and 1521* (the "Martin Declaration"); and (iv) the *Memorandum of Law In Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; and (II) Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(a), 1519 and 1521* (the "Memorandum of Law").

## JURISDICTION AND VENUE

1. This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1410(1) and (3).

3. The statutory predicates for the relief requested herein are sections 105(a), 1519, 1520 and 1521 of the Bankruptcy Code, rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 65 of the Federal Rules of Civil Procedure (the

"Federal Rules").

## BACKGROUND

4. On May 26, 2010 (the "Petition Date"), the Petitioners commenced these chapter 15 cases (the "Chapter 15 Cases") and filed the Verified Petition[1] on behalf of the Debtors seeking the entry of an order recognizing the voluntary administration proceedings of the Debtors pending in Australia (together, the "Australian Proceedings") as "foreign main proceedings."

5. The Petitioners have filed these Chapter 15 cases in an effort to protect the Debtors' assets from potential seizure or attachment by third parties through legal, equitable or judicial action.

6. At least one United States creditor of ABC Learning -- RCS Capital Development LLC ("RCS") -- is taking immediate steps to try to prevent the Debtors from preserving their assets for the benefit of creditors in the Australian Proceedings.

7. ABC Learning and an affiliate, A.B.C. Development Learning Centres (USA) Inc. ("ABC Delaware"), are defendants in a lawsuit brought by RCS that was filed in the Superior Court of Arizona in Marciopa County (the "Arizona Lawsuit"). The claims asserted in the Arizona Lawsuit relate to a development contract between RCS and ABC Delaware for the development of childcare centers in Arizona, Colorado, Georgia and certain parts of Nevada. ABC Learning guaranteed ABC Delaware's obligations under the development contract in question. RCS sought damages against ABC Learning and ABC Delaware in excess of $107

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition.

million, based on a number of claims, including, without limitation, breach of the development contract. See Walker Declaration, ¶¶ 7.

8. Despite vigorously defending the Arizona Lawsuit, on May 14, 2010, a jury verdict was issued against ABC Learning and ABC Delaware in the amount of $47,031,574. ABC Learning and ABC Delaware are considering their respective rights of appeal. See Walker Declaration, ¶ 25.

9. While judgment has not yet been entered against ABC Learning and ABC Delaware, RCS has already sought to commence enforcement and collection efforts. On May 18, 2010, RCS sent a letter to Learning Care Group, an entity in which ABC Learning has an indirect interest through ABC Holdings (which has a 40% ownership interest in Learning Care Group (US) Inc.), making clear it intends to pursue that ownership interest. RCS also issued a press release on May 20, 2010, in which it stated "A.B.C.'s operations in the United States have assets subject to liquidation to satisfy RCS Capital's claim." Finally, on or about May 20, 2010, RCS filed an application by order to show cause with the Arizona court seeking a preliminary injunction restraining ABC Learning and ABC Delaware from transferring any of its assets outside the United States. The hearing date for the preliminary injunction is scheduled for tomorrow, May 27, 2010, at 9:00 a.m. (MST) (12:00 p.m. (EST)), thus necessitating the need for immediate relief. See Walker Declaration, ¶¶ 39-41.[2]

10. In addition, ABC Learning is party to development agreements and leases with other counterparties located in the United States. It is possible that these entities could also

---

[2] Additional background concerning the basis for these chapter 15 cases and the Australian Proceedings is set forth in the (a) Walker Declaration, (b) Martin Declaration and (c) the Memorandum of Law, each filed contemporaneously herewith.

000025.1886

commence actions against ABC Learning or its assets in order to obtain an advantage over similarly situated creditors that are complying with the stay and procedures in the Australian Proceedings.

**RELIEF REQUESTED**

11. By this Motion, the Petitioners seek entry of a TRO (substantially in the form attached hereto as Exhibit A) and, after notice and a hearing, a preliminary injunction (substantially in the form attached hereto as Exhibit B) prohibiting all persons and entities from:

   a) (i) commencing or continuing any action or legal proceeding (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, administrative action, proceeding or process whatsoever), including by way of counterclaim, against the Petitioners, the Debtors or the Debtors' property or assets in the United States, or any proceeds thereof, including seeking the entry of any judgment, and seeking discovery of any nature against the Petitioners or the Debtors, (ii) enforcing, against the Petitioners, the Debtors or the Debtors' property or assets in the United States, any judicial, quasi-judicial, administrative judgment, assessment or order, or arbitration award against the Debtors or the Debtors' property or assets in the United States, or any proceeds thereof, (iii) taking any action to obtain possession of the Debtors' property or assets in the United States or to exercise control over the Debtors' property or assets in the United States, except as otherwise expressly authorized by the Petitioners in writing, (iv) taking any action to create, perfect or enforce any lien against the Debtors' property or assets in the United States, (v) taking any action to collect, assess, enforce or recover a claim against the Debtors in the United States or in respect of the Debtors' property or assets in the United States (including, without limitation, any action in respect of or in furtherance of the Arizona Lawsuit), or (vi) seizing, repossessing, transferring, relinquishing, encumbering or otherwise disposing of the any property or assets of the Debtors in the United States, or the proceeds thereof;

   b) scheduling the Hearing to consider the Petitioners' request for a preliminary injunction granting the same and related relief as set forth in paragraph (a) above.

**BASIS FOR RELIEF**

12. The requested relief is authorized by sections 1519 and 1521 of the Bankruptcy Code. Section 1519 provides in relevant part:

> From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including... staying execution against the debtor's assets [and] any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

13. In turn, section 1521(a)(7) provides that the Court may grant "any additional relief that may be available to a trustee, expect for relief available under section 522, 544, 545, 547, 548, 550 and 724(a)."

14. The relief available under section 1519 is available pursuant to "the standards, procedures, and limitations applicable to an injunction." 11 U.S.C. § 1519(e). In the Third Circuit, the "standard for evaluating a motion for preliminary injunction is a four-part inquiry as to (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." U.S. v. Bell, 414 F.3d 474, 478 n. 4 (3d Cir. 2005) (citing ACLU of N.J. v. Black Horse Pike Reg'l Bd. Of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996) (en banc)).

15. With respect to a TRO, rule 65(b) of the Federal Rules, made applicable hereto by rule 7065 of the Bankruptcy Rules, provides that in order to obtain an *ex parte* TRO, the applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." See, e.g., TKR Cable v. City Corp., 267 F.3d 196, 198 (3d Cir. 2001).

A. **The Requirements for a TRO and Preliminary Injunction Have Been Met**

16. First, the Petitioners are likely to succeed on the merits of the Verified

6

Petition. In the Verified Petition, the Petitioners have applied for recognition of the Australian Proceedings as foreign proceedings on the primary basis that they are "foreign main proceedings." The arguments and evidence provided in the Verified Petition and the Memorandum of Law support this conclusion. Specifically, the Petitioners establish that (i) Petitioners are duly appointed to act as administrators and foreign representatives of the Debtors within the meaning of sections 101(24) and 1517(a)(2) of the Bankruptcy Code, (ii) the Australian Proceedings were properly commenced pursuant to sections 1504 and 1515 of the Bankruptcy Code, (iii) the Australian Proceedings are foreign proceedings within the meaning of section 101(23) of the Bankruptcy Code and are entitled to recognition as foreign proceedings by this Court pursuant to sections 1515 and 1517(a) of the Bankruptcy Code, and (iv) the Australian Proceedings are entitled to recognition as foreign main proceedings pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code because each of the Debtors has its center of main interests in Australia. Moreover, all the documentation required to be filed under section 1515 of the Bankruptcy Code were filed contemporaneously with the Petition. See 11 U.S.C. § 1515(c) and Fed. R. Bankr. Proc. 1007(a)(4). As such, the Petition is likely to succeed on its merits.

17. Second, the Debtors' creditors will face irreparable harm absent the interim injunctive relief sought. As noted by one court, "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." See In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). Harm to an estate also exists where the orderly determination of claims and the fair distribution of assets are disrupted or when there is a potential loss or damage to the value of the assets. See In re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) (finding that the guiding principle of bankruptcy is equality of distribution and that irreparable harm exist whenever local creditors of the foreign debtor seek to collect on claims or obtain

preferred positions to the detriment of other creditors).

18. As stated above, without an immediate stay of proceedings and actions against the Debtors' assets, there is a real risk that the Debtors' assets will become subject to attack by RCS in connection with the Arizona Lawsuit during the time that the Court's decision on the Verified Petition is pending. Moreover, any efforts on the part of the Petitioners to retrieve the assets from RCS or vacate any injunction granted in the Arizona Lawsuit will require the expenditure of additional costs which will only serve to deplete the value available to the Debtors' creditors. It will also distract the Petitioners from their efforts to conduct their duties in the Australian Proceedings in an orderly fashion.

19. Based on the above, absent the requested provisional relief, the Debtors' creditors will be irreparably harmed if the TRO and the Preliminary Injunction are not entered.

20. Third, no harm will result to any party that is greater than the harm to the Debtors in the absence of the requested relief. With respect to the TRO, the relief requested therein is intended to be temporary, extending only through the conclusion of the Hearing (to be held if any unresolved objections exist) on the Preliminary Injunction. And with respect to the Preliminary Injunction, any party in interest that objects to the requested relief will have had an opportunity to be heard. Moreover, as discussed above, if the Preliminary Injunction is not entered, the Debtors could suffer significant and irreparable injury. Accordingly, any harm to any enjoined party is outweighed by the potential harm to the Debtors and their creditors.

21. Finally, granting the relief is in the public interest. The purpose of chapter 15 is:

> [T]o incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of--

(1) cooperation between--

    (A)    courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and

    (B)    the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2) greater legal certainty for trade and investment;

(3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4) protection and maximization of the value of the debtor's assets; and

(5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a). Entry of the requested TRO and Preliminary Injunction will ensure that no United States creditor is able to take enforcement actions in contravention of the moratorium (i.e., stay) in effect in the Australian Proceedings and advantage itself at the expense of the Debtors' other creditors.

    22.    Under section 1525(a), "consistent with section 1501, this court shall cooperate to the maximum extent possible with a foreign court or a foreign representative." The Petitioners submit that entry of the TRO and the Preliminary Injunction is necessary to give the Debtors the benefit of the relief provided to them as part of the Australian Proceedings because the Debtors have assets located beyond the territorial reach of the Australian Proceedings. Thus, in addition to the reasons set forth above, this Court should enter these orders pursuant to section 1501 and 1525 of the Bankruptcy Code, and under well-established principles of international comity.

## NOTICE

    23.    The Petitioners request entry of the TRO on an *ex parte* basis. The Petitioners

will serve the signed order approving the TRO on (a) all persons or bodies authorized to administer foreign proceedings of the Debtors; (b) all entities (or their counsel) against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) all parties to litigation pending in the United States in which any of the Debtors are parties at the time of the filing of Debtors' Chapter 15 Petitions; (d) the United States Trustee; (e) the Debtors; (f) all parties who have requested notice, and (g) any interested party ("Other Interested Party") that becomes known to the Debtors, by overnight courier. In light of the nature of the relief sought, the Petitioners respectfully submit that the foregoing provides due and adequate notice to all interested parties, and that no further notice is required.

## CONCLUSION

**WHEREFORE**, the Petitioners respectfully request that the Court grant this Motion and (i) enter the TRO on an *ex parte* basis, (ii) schedule the Hearing on the Preliminary Injunction to be held if unresolved objections exist, (iii) enter the Preliminary Injunction after notice and the Hearing (to the extent unresolved objections exist) and (iv) grant any such other relief as this Court determines is fair and just under the circumstances.

Dated: May 26, 2010
Wilmington, Delaware

                    **YOUNG CONAWAY STARTGATT & TAYLOR, LLP**

                    */s/ Joel A. Waite*
                  Joel A. Waite (No. 2925)
                  The Brandywine Building
                  1000 West Street, 17th Floor
                  P.O. Box 391
                  Wilmington, Delaware 19899-0391
                  Telephone: (302) 571-6600
                  Facsimile: (302) 571-1253

                  - and -

                  **CHADBOURNE & PARKE LLP**
                  Howard Seife, Esq.
                  Andrew Rosenblatt, Esq.
                  Members of the Firm
                  30 Rockefeller Plaza
                  New York, New York 10112
                  Telephone: (212) 408-5100
                  Facsimile: (212) 541-5369
                  Attorneys for the Petitioners