IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

In re                                           :

A.B.C. LEARNING CENTRES LIMITED, et al.[1]      : Chapter 15
                                                :
                                                : Case No. 10-11711 (KG)
                                                :
Debtors in Foreign Proceedings.                 : Jointly Administered
                                                :

---

## OBJECTION OF RCS CAPITAL DEVELOPMENT, LLC, TO PUTATIVE DEBTORS' PETITIONS FOR CHAPTER 15 RECOGNITION OF FOREIGN PROCEEDINGS

RCS Capital Development, LLC ("RCS"), a creditor and party in interest in the putative bankruptcy cases of the above-captioned putative debtors in foreign proceedings, A.B.C. Learning Centres, Ltd. ("ABC Learning"), and A.B.C. USA Holdings Pty, Ltd. ("ABC Holdings," and together with ABC Learning, "ABC"), hereby objects (the "Objection"), pursuant to 11 U.S.C. §§ 1501 et seq. and Rule 1011 of the Federal Rules of Bankruptcy Procedure, to the *Chapter 15 Petition for Recognition of Foreign Proceeding* filed by ABC Learning and the *Chapter 15 Petition for Recognition of Foreign Proceeding* filed by ABC Holdings (collectively, the "Petitions"). In support of the Objection, RCS respectfully represents as follows:

### PRELIMINARY STATEMENT

1. With ABC Learning facing a $47 million jury verdict against it in Arizona state court, ABC Learning and its subsidiary ABC Holdings,[2] both Australian companies,

---

[1] The debtors in these jointly administered cases are A.B.C. Learning Centres Limited and A.B.C. USA Holdings Pty Ltd.

[2] The $47 million jury verdict is against ABC Learning and its American subsidiary. ABC Holdings, a wholly owned subsidiary of ABC Learning, appears to have filed a Petition

petition for recognition of foreign proceedings under Chapter 15. However, the proceedings for which ABC Learning and ABC Holdings seek recognition – the winding up of their businesses – are not "foreign proceeding[s]" under chapter 15 of the Bankruptcy Code because they (a) are not supervised by a foreign court, (b) are not collective, and (c) violate United States public policy. Accordingly, the Court should deny the Petitions.

2. If the Court does grant the Petitions, the Court should, consistent with 11 U.S.C. § 1522, limit the scope of the injunction to (a) allow RCS to reduce to a judgment its $47 million jury verdict against ABC Learning and (b) preserve for later determination the issue of whether the $47 million judgment may be used in setoff.

## BACKGROUND

3. In June 2008, RCS, an Arizona limited liability company, entered into an agreement with ABC and its American subsidiary to develop childcare centers in the United States.

4. In October 2008, in response to ABC having missed a payment due under the contract, RCS sued ABC and its American subsidiary in Arizona state court for breach of contract.

5. A few weeks after RCS filed suit, ABC and 38 of its Australian subsidiaries (including ABC Holdings), were placed in voluntary administration under Australia's Corporations Act. A voluntary administration essentially allows an insolvent company to restructure under the management of external administrators. But in this case, the initiation of the voluntary administration triggered the right of ABC's secured creditors to appoint a receiver. (*See* Ex. A (Testimony of ABC's receiver, Jason Ireland (May 5, 2010)), at

---

because its only asset is a 40% share in an American company, which is perhaps the only asset in the United States on which RCS could execute.

2

6:21–24). Thus, on the same day ABC entered voluntary administration, eight banks that were owed money by ABC appointed receivers. (*Id.* at 52:23–53:6.) According to ABC's receiver, under Australian law, the appointment of receivers trumps the appointment of a voluntary administrator, so once appointed, the receivers, not the administrators, managed ABC (*Id.* at 7:11–15.) The receiver's job in an Australian receivership is to preserve and protect a company's assets to ensure that secured creditors are paid first. (*Id.* at 54:8–17.) And so, ABC's receivers, independent of the Australian courts, managed the company for the next two years, liquidating hundreds of millions of dollars of company assets. (*Id.* at 54:18–55:2.)

6. In March 2009, despite being in receivership and voluntary administration, ABC sued RCS in Nevada state court. Like the Arizona suit, the Nevada suit involves another agreement to develop childcare centers in the United States. But in this suit, the roles were reversed: ABC seeks $30 million on the grounds that RCS and one of its affiliates allegedly breached the development agreement. The Nevada case is still pending.

7. In May 2010, the Arizona suit went to trial. The jury found in favor of RCS, awarding it $47 million.

8. On May 26, 2010, ABC Learning and ABC Holding filed the Petitions seeking chapter 15 recognition of the voluntary administrations in Australia.

9. Days later, ABC's creditors voted to end the voluntary administration and wind up the company with a voluntary liquidation. (*See* Ex. B (Daniel Hurst, *Vote to Wind up ABC Learning*, Brisbane Times (June 3, 2010))). Only fifteen people attended the vote to turn the administration into a liquidation. *Id.* Indeed, RCS (one of ABC's biggest creditors) and several other creditors in the United States did not receive notice of the vote and had no say in

ABC's change from voluntary administration to liquidation. ABC Learning and ABC Holding supplemented the Petitions to inform the court of the Australian proceeding's change in status.

## OBJECTION

### A. The Voluntary Winding Up in Australia is Not a "Foreign Proceeding" Under the Bankruptcy Code

10. As part of the Bankruptcy Abuse Prevention Act of 2005, Congress added chapter 15 to the Bankruptcy Code, which governs cases ancillary to foreign insolvency proceedings. 11 U.S.C. §§ 1501–32. Chapter 15 is based on the United Nations Commission for International Trade Law's Model Law on Cross-Border Insolvency. Chapter 15 replaced § 304 of the Bankruptcy Code, which previously governed cases ancillary to foreign proceedings.

11. A petition under chapter 15 is a request for United States recognition of a foreign insolvency proceeding. If the court accepts the petition and recognizes the foreign proceeding, a foreign debtor is entitled to substantive relief under the Bankruptcy Code. 11 U.S.C. § 1521.

12. Recognition, however, is not a rubber-stamp exercise. *In re Gold & Honey*, 410 B.R. 357, 366 (Bankr. E.D.N.Y. 2009). The court may consider any and all facts relevant to recognition and proof on any element. *Id.* The burden of proof is on the foreign representative seeking recognition. *Id.*

13. The process of recognition incorporates definitions from chapters 1 and 15 of the Bankruptcy Code. *In re Bear Stearn's High-Grade Credit Strategies Master Fund*, 374 B.R. 122, 126 (Bankr. S.D.N.Y. 2007). As a threshold matter, a party seeking recognition must establish that the proceeding is "a foreign proceeding" under chapter 1 – specifically, 11 U.S.C. § 101(23). *In re Betcorp*, 400 B.R. 266, 275 (Bankr. D. Nev. 2009). If the proceeding does not

meet chapter 1's definition of a "foreign proceeding," then chapter 15, which only applies to "foreign proceedings," is not invoked. *Id.* Section 101(23) defines a "foreign proceeding" as

> a collective judicial or administrative proceeding in a foreign country including an interim proceeding under a law related to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of reorganization or liquidation.

14. This breaks down into the following elements: (1) a proceeding, (2) that is judicial or administrative, (3) collective, (4) in a foreign country, (5) conducted under law relating to insolvency, (6) under the supervision of a foreign court, and (7) for the purpose of reorganization. *In re British-Am. Ins. Co., Ltd.*, 425 B.R. 884, 901 (Bankr. S.D.Fla. 2010).

15. While ABC initially petitioned this court for recognition of its voluntary administration, the status of the proceeding has now changed to a voluntary winding up. Thus, the issue is whether a voluntary winding up is a foreign proceeding.[3] Relying on *Betcorp, supra*, ABC's representatives argue that ABC's voluntary winding up in Australia is a foreign proceeding. To be sure, *Betcorp* found that a voluntary winding up under Australian law is a foreign proceeding under the Code. Nevertheless, *Betcorp* is not controlling, and its reasoning is suspect. Specifically, it is not clear that a voluntary winding up satisfies the nebulous combination of elements one, two, and six of § 101(23)'s definition, because the winding up is not a judicial proceeding under the control of a foreign court.

16. In Australia, a voluntary winding up occurs outside of court. Rather than winding up the company in a judicial proceeding, creditors of an Australian company appoint a liquidator who independently winds up the company and makes disbursements to creditors.

---

[3] Chapter 15 requires a foreign representative to update the court on a foreign proceeding's change in status, 11 U.S.C. § 1518, which indicates that a proceeding's current status determines its status as a foreign proceeding.

5

While *Betcorp* noted that a voluntary winding up may never be placed in front of an Australian judge, the court still found it qualified as a proceeding under § 101(23). The court reasoned that provisions of Australia's Corporations Act "allow but do not require court involvement" in a voluntary winding up. 400 B.R. at 279. For example, a corporation can choose a court-supervised winding up or the court can step in and terminate a voluntary wind up if it thinks the company is solvent. *Id.* Moreover, the *Betcorp* court found that a voluntary winding up is supervised by a foreign court. It broadly interpreted "foreign court", as including an administrative agency. And, the *Betcorp* court reasoned, because liquidators in a voluntary winding up report to an agency – namely, the Australian Securities and Investment Commission ("ASIC") – the proceeding is supervised by a court. *Id.* at 284. The court said that the winding up process could be subject to supervision by an Australian court because a creditor or liquidator can request the court to determine any question arising in the winding up. *Id.* According to the *Betcorp* court, the fact that ASIC is to receive a written request before books and records are destroyed or that ASIC can remove a liquidator is a sufficient to qualify the voluntary liquidation as a court-supervised proceeding, even if, as in this case, neither of those is happening.

17. This strained reasoning is not persuasive. Although decided under former § 304,[4] *In re Tam*, 170 B.R. 838 (Bankr. S.D.N.Y. 1994), found that a similar winding up under a

---

[4] Cases decided under former § 304 are still relevant to chapter 15 interpretation. *See Bear Stearns*, 374 B.R. at 132 (noting that jurisprudence developed under § 304 is preserved in the context of additional assistance under new § 1507, but is not determinative in issues relating to presumptions for recognition). But even if cases decided under section 304 do not apply to chapter 15, they are still useful in determining whether a proceeding is a "foreign proceeding" under § 101(23). Again, the foreign proceeding issue is a threshold question decided under chapter 1. The court must make this determination before it even considers chapter 15.

Cayman Islands law was not a foreign proceeding under § 101(23).[5] There, the liquidator of a Cayman corporation petitioned for relief ancillary to foreign proceedings. Like an Australian winding up, a Cayman wind-up involves shareholders or creditors appointing a liquidator to conduct the winding up. The liquidator acts independent of the court, so the Cayman winding up is not a traditional judicial proceeding. Nevertheless, the liquidator in *Tam* argued that the Cayman winding up was a foreign proceeding under § 101(23) because (1) the liquidation was conducted under the aegis of the Cayman Registrar of Companies who reviews and approves the liquidator's acts, (2) creditors may petition the Cayman court to review the liquidator's actions, and (3) the winding up was statutorily sanctioned by the Cayman Companies Law. The court was not persuaded.

18. As an initial matter, the *Tam* court noted that while the liquidation is ostensibly supervised by the Registrar of Companies, "the Registrar plays virtually no role in a voluntary winding up. Rather, it is conducted without any regulatory oversight and no creditor participation." *Id.* at 843. Creditors have little right to be heard and are not entitled to discovery with respect to the liquidator's actions. *Id.* The liquidator has no duty to report to the creditors unless the proceeding continues for more than a year. *Id.* The liquidator has almost no duty of

---

[5] *Tam* was decided under a previous version of §101(23). Nevertheless, that version was not substantially different than the current iteration. The previous version of §101(23) defined a foreign proceeding as

> a proceeding, whether judicial or administrative, and whether or not, under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding for the purposes of liquidating and estate adjusting debts by composition, extension or discharge or effecting a reorganization.

Indeed, the most striking difference between the former and current § 101(23) is the addition of the "control or supervision of a foreign court" language.

disclosure in a liquidation until they complete their task. *Id.* While liquidations must make a return to the registrar as their final act in winding up, the court found this was merely a ministerial task. *Id.* The court concluded the "liquidators [were] conducting a voluntary wind up without oversight from the Registrar." *Id.* The court also found little court supervision. The Cayman Companies Law allows creditors to petition the court to supervise the winding up. Short of that petition, however, the Cayman court's jurisdiction is not invoked, and it does not sanction the liquidator's actions. *Id.* at 844. The court concluded that the Cayman winding up was not a foreign proceeding. *Id.* at 846.

19. An Australian winding up is similarly lacking in control. While liquidators are registered with the ASIC, that agency has no direct control over a liquidator's actions. Instead, like a Cayman liquidator, an Australian liquidator has enormous discretion in winding up the company. Creditors have little right to be heard and a liquidator has no obligation to report to creditors unless the winding up takes more than a year. Corporations Act 2001 (Cth.) s 508.[6] Indeed, the statute that sets forth the "Powers and Duties of Liquidators" lists almost exclusively the liquidator's powers and hardly any duties, save the general and rather glib prescription that "the liquidator must pay the debt of the company and adjust the rights of the contributors [shareholders] among themselves." Corporations Act 2001 (Cth.) s 506(3). For most wind-ups, the liquidator does not have to make account until the affairs of the company are fully wound up. Corporations Act 2001 (Cth.) s 509. And it is only at that point the ASIC steps in to perform its ministerial task of deregistering the company.

---

[6] *See* Melbourne U. L. Rev. Assn., *Australian Guide to Legal Citation*, http://mulr.law.unimelb.edu.au (3rd ed. 2010), for a guide to citing Australian authorities.

20. Still, *Betcorp* supported its determination that a voluntary winding up is supervised by the ASIC by citing *In re TradEx Swiss, AG*, 384 B.R. 34 (Bankr. D. Mass. 2008), which held that a proceeding initiated by the Swiss Foreign Banking Commission was a foreign proceeding under § 101(23). *Betcorp* reasoned that if the Swiss banking commission was a "foreign court" supervising a proceeding, then the ASIC is too. But there is a crucial difference between the proceeding in *TradEx* and an Australian voluntary winding up. In *TradEx*, the Swiss commission initiated the proceeding. Essentially, the commission was a party to the proceeding and played a direct role in it. In Australia, however, the ASIC does not initiate a voluntary winding up, nor is it in any sense a party to the winding up. Rather, it sits on the periphery while the liquidator handles the process.

21. Also, contrary to verbiage in *Betcorp*, the Australian court plays no role in a voluntary winding up. To be sure, creditors may "apply to the court to determine any questions arising in the winding up of a company." Corporations Act 2001 (Cth.) s 511. But this is different than the creditors' right to petition the court in *Tam*. And anyway, until a party actually applies to an Australian court, the court has no role in the winding up or the supervision of liquidators.

22. Ultimately, *Betcorp*'s premise is that the proceeding satisfies § 101(23) because the ASIC or an Australian court could conceivably step into a voluntary winding up. But the agency's and court's roles as essentially night watchmen are not enough to confer "foreign proceeding" status. Where does one draw the line? After all, parties always have a right to petition an agency or court when they feel wronged. For instance, shareholders in an American corporation can always go to court to wind up affairs. They could, but this does not mean that every winding up of an American corporation is a judicial proceeding. Likewise,

lodging a complaint with the FCC about a cable company does not make some irate customer's dispute with the cable company a judicial proceeding. Taking *Betcorp*'s reasoning to its logical end would mean that any private activity that a court or agency could conceivably regulate is a judicial proceeding. *Betcorp* goes too far.

23. An Australian voluntary winding up is not a proceeding that is supervised in any meaningful way by a court or an administrative agency. Accordingly, it is not a "foreign proceeding" under § 101(23) and should not be recognized.

### B. The Australian Proceeding is not Collective

24. A proceeding is not a "foreign proceeding" under § 101(23) unless it is collective. "A collective proceeding is one that considers the rights and obligations of all creditors." *Betcorp*, 400 B.R. at 281; *see also Gold & Honey*, 410 B.R. at 370, n. 16 (proceeding must be for the general benefit of all creditors). In determining whether a proceeding is collective under § 101(23), it is appropriate to consider the law governing the foreign action and the parameters of the particular proceeding. *British Am. Ins. Co.*, 425 at 902.

25. This particular proceeding has never been collective. As noted, this proceeding began as a voluntary proceeding under Australian law. But at the same time ABC entered voluntary administration, eight banks, which were secured creditors of ABC, exercised their rights to appoint a receiver. As the ABC receiver testified, a receivership trumps a voluntary administration under Australian law. Thus, while ABC may have had administrators, the receiver called the shots. Indeed, for two years the ABC receiver managed the company and liquidated hundreds of millions of dollars of assets to ensure the secured creditors were paid. As *Betcorp* acknowledged, a receivership under Australian law is not collective because it is instigated at the request and for the benefit of a few secured creditors. 400 B.R. at 281; *see also* Douglas E. Deutch & Francisco Vasquez, *Introduction to Recognition Under Chapter 15*, 29-4,

*Am. Bankr. Inst. Jrnl.*, 46, 47 (May 2010) (a receivership does not qualify as a foreign proceeding because it is not collective). So when ABC initially petitioned this court for chapter 15 recognition, the proceeding it wanted recognized – a voluntary administration dominated by a receivership – was not collective and thus not a "foreign proceeding" under the Bankruptcy Code.

      26.    But the status of the Australian proceeding has now changed from a voluntary administration to a voluntary liquidation. Nevertheless, this change has not made the proceeding any more collective. Only fifteen people out of ABC's hundreds of creditors voted on the liquidation. And out of those, it is likely that half were the banks that had appointed the receivers. RCS and ABC's other American creditors had no notice of the vote and no say in the conversion to a voluntary administration. Needless to say, proceedings that exclude major creditors are hardly collective. Furthermore, it appears ABC's receivers, and through them the eight Australian banks, are still in control. In fact, a Brisbane Times article that described the vote to wind up ABC noted that several creditors had asked the liquidators for details of several recent liquidation sales but could not get any information. Instead, they were told those matters were in the hands of the receivers. (*See* Exhibit B.) So the receivers and the banks they represent are still in charge, and the liquidators cannot give the creditors any information about the liquidation. Despite the change in status, this is not a collective proceeding. The court should not recognize it.

### C.    Recognition Would Violate Public Policy

      27.    Even if a proceeding qualifies as a foreign proceeding under § 101(23), a court should not recognize it under chapter 15 if doing so would violate public policy: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

United States courts have long had a policy prohibiting foreign countries from interfering in American judicial proceedings arising from acts committed in the United States. For example, in *Laker Airways, Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909 (D.C. Cir. 1984), a British defendant in an American antitrust suit had instituted UK proceedings and obtained an order compelling the plaintiff in the American suit to dismiss its claims against British defendants. The district court in the American antitrust action enjoined the other foreign, non-British defendants from participating in the UK injunction proceedings. The D.C. Circuit affirmed the injunction prohibiting other foreign, non-British defendants from joining in the UK proceedings, holding that the district court had a right to protect its jurisdiction, and that the foreign defendants could not avoid liability under United States laws to which their business operations had subjected them.

28. Here, ABC is trying to use the Australian proceedings and chapter 15 to thwart the U.S. proceedings involving RCS and to avoid paying RCS's judgment. As noted, RCS obtained a $47 million verdict against ABC in Arizona. That verdict has not been formalized in a judgment. Unfortunately, now that ABC has petitioned for Chapter 15 recognition, the judgment will not be entered any time soon, and RCS will not be able to take any action to recover it. Additionally, in the Nevada case, where ABC has sued RCS, RCS could use the Arizona judgment as an offset. But again, ABC's petition has prohibited RCS from exercising its rights in the Nevada proceeding. But again, ABC's restraining order prohibited RCS from exercising its rights in the Nevada proceeding; it is left without even a shield to defend or offset against ABC's $30 million claim in Nevada. The administrators/liquidators' website even says that RCS cannot offset its US$50 million verdict against its US$40 million [sic] claim against RCS.

> The Receivers continue to pursue action in the US for fair recovery of monies paid to a US developer of child care centres, American Childcare Properties (ACCP). As part of this action, the Receivers and Managers have been defending a separate claim by another US developer (RCS) who bought ACCP after the date of the Administration. The case was heard in front of a jury trial in Arizona in early May 2010 and the jury awarded US$47 million in favour of RCS. This claim is considered to be an unsecured claim against A.B.C. Learning Centres Ltd. and therefore would rank equally with all other unsecured creditors. Furthermore, RCS is unable to set this debt off against the Receivers and Managers' claim for $US 40 million against ACCP, which is being pursued in Nevada.

Ex. C.

29. It is evident ABC is using the Australian proceedings as a means of obtaining immunity from any defenses in the U.S. proceedings, while proceeding to enforce its claim. First, the Australian proceeding was pending for two years. Why did ABC not bother to seek Chapter 15 recognition until now? The answer is simple: it wanted to see how the U.S. proceedings turned out. If it prevailed, then it could collect money. If it lost, then ABC could simply seek chapter 15 recognition while it supposed to proceed with its claims. This makes a mockery of the U.S. judicial system. The court should not allow a foreign company to do business in the United States, to breach contracts in the Untied States, to lose a lawsuit in the United States, but then flaunt United States law by seeking refuge in foreign insolvency proceedings that prevent a United States company from defending.

30. The point of chapter 15 is to facilitate cross-border insolvencies. It is not meant to be used as a shield to avoid legal responsibility or a sword with which to batter an opposing party in an American lawsuit. ABC is using its Australian proceedings to disrupt and essentially terminate proceedings against it. Using foreign proceedings to interfere in United States proceedings violates public policy. The court should not recognize ABC's Australian proceedings.

### D. The Relief ABC Seeks Exceeds that Available Under Chapter 15

31. In support of its petition, ABC has submitted a form of order granting recognition. Even if the court recognizes ABC's Australian winding up, it should not sign this order because it seeks relief beyond that available under Chapter 15. Generally, upon recognition, § 362's automatic stay and § 363's restraints on use apply to the debtor and its property. 11 U.S.C. § 1520. The court may also grant additional relief, including (1) a stay of any action or execution not covered by the automatic stay, (2) a suspension of the rights of transfer not covered by § 363, (3) a right to examine witnesses concerning the debtor's assets, (4) an order entrusting the debtor's assets to the foreign representative, (5) an extension of any pre-recognition relief, and (6) with some exceptions, any additional relief that would be available to a trustee. 11 U.S.C. §1521. But this relief is circumscribed. The court may modify or terminate any relief granted under § 1521 if the rights of creditors are not protected and may subject relief to the giving of security or the posting of a bond. 11 U.S.C. §1522(a)–(b).

32. ABC's proposed order runs afoul of the statutes. First, paragraph 4(b)(i) and (ii) permanently enjoin anyone from commencing or continuing a legal proceeding against ABC, including counterclaims, and from enforcing any order against ABC. These provisions hamstring RCS by permanently enjoining it from not only executing on its judgment against ABC, but also precluding the Arizona court from even formalizing the verdict as a judgment. Additionally, these paragraphs prevent RCS from obtaining a setoff in the Nevada case, which is its right. Needless to say, by essentially extinguishing its rights as a creditor, paragraphs 4(b)(i) and (ii) do not adequately protect RCS, and thus violate § 1522. Any order recognizing the Australian proceedings should still allow RCS to obtain a formal judgment and a setoff.

33. Paragraph 4(b)(iii) of the proposed order, which nullifies any statute that requires ABC to post a bond as a condition of prosecuting or defending a legal action, is also

problematic. As an initial matter, this paragraph is obviated by § 1522(b), which allows the bankruptcy court to condition any relief on the posting of a bond. Also, it is evident ABC has included this provision in its order to avoid posting a supersedeas bond in the event it appeals the Arizona judgment. Attempting to use the automatic stay as a substitute for posting a bond in other litigation is evidence of a bad faith bankruptcy petition. *See In re Erkins*, 253 B.R. 470, 475 (Bankr. D.Idaho 2000) (dismissing petition for bad faith where debtors sought bankruptcy relief as litigation tactic to stay collection efforts while they appealed without posting bond); *In re Muskogee Envtl. Conserv. Co.*, 236 B.R. 57, 66 (Bankr. N.D.Okla. 1999) (dismissing petition where debtor filed for bankruptcy to avoid posting supersedeas bond in state appeal); *In re Wally Finally Galleries, Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) ("This court should not, and will not, act as a substitute for a supersedeas bond in state court proceedings"). Here, the circumstances of ABC's Chapter 15 petition are suspicious. While it was in a voluntary administration for two years in Australia, it only petitioned for Chapter 15 recognition after RCS's verdict in the Arizona suit. It would certainly appear ABC wants to use the automatic stay as a substitute for posting a supersedeas bond in Arizona. This court should not lightly allow this. Rather than simply voiding any statute that requires ABC to post a bond, it should make ABC apply first to the court to determine its good faith in avoiding the supersedeas bond.

34. Paragraph 4(d) of the proposed order requires anyone in possession of ABC's property to turn it over to ABC's foreign representative. This is completely improper. It is essentially an *ex parte* turnover order applicable to all creditors with or without notice. Nothing in chapter 15 authorizes such an all-encompassing turnover. This entire paragraph should be stricken from the order.

35. Next, paragraph 4(e) states that nothing in the recognition order should prevent legal proceedings against anyone besides ABC, but that those proceedings shall not be binding on or enforceable against ABC. This is too broad in that it essentially immunizes ABC for the acts of its subsidiaries or affiliated companies. For instance, this provision would still allow ABC to act through its American subsidiary without consequences. Again, nothing in Chapter 15 allows the debtor this kind of immunity. At the very least, upon the application of a party of interest, the bankruptcy court should be able to make a judgment against an ABC affiliate binding on ABC.

36. Paragraph 4(g) states that except as provided in this recognition order or the Australian proceedings, all persons are permanently enjoined from making a claim against ABC, its foreign representatives, directors, officers or agents that may arise out of the Australian proceedings. Conditioning this paragraph on occurrences in the Australian proceedings is inappropriate. No U.S. creditor knows what is going on in the Australian proceedings and cannot readily appear in them. This creates too many due process problems. The Australian proceeding language should be stricken. Also, it is not clear that Chapter 15 allows the court to issue an injunction in favor of non-debtor third parties, like the representatives, officers, and agents.

37. Finally, paragraph 4(h) of the proposed order is particularly noxious. That paragraphs allows the foreign representatives to transfer any proceeds ABC receives in the U.S. to Australia. But nothing in § 1521 allows a debtor to upstream money to a foreign proceeding. If this relief were granted, then ABC could upstream anything received in the Nevada case to Australia. RCS would be forced to go to Australia to assert any setoff right. It is not clear it

would even have a setoff right under Australian law. Regardless, this paragraph effectively terminates RCS's setoff in derogation of § 1522.

38. Given these problems, in the event the court recognizes ABC's Chapter 15 petition, it should not sign ABC's proposed order. Rather, in support of this objection, RCS submits its own form of order to address these problems, attached hereto as Exhibit D.

WHEREFORE, for the foregoing reasons, RCS respectfully requests that the Court enter an order denying the Petitions or, in the alternative, limiting the injunctive relief sought in the Petitions to (a) allow RCS to reduce its $47 million jury award to a judgment and (b) preserving for later determination the issues of whether any recovery in the Nevada suit may be upstreamed and whether the $47 million judgment may be used by RCS as setoff in the Nevada suit.

Dated: June 17, 2010
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Matthew B. Harvey
Gregory W. Werkheiser (No. 3553)
Matthew B. Harvey (No. 5186)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: 302-658-9200
Facsimile: 302-425-4663

-and-

Daryl M. Williams, Esq.
Michael C. Blair, Esq.
Baird, Williams & Greer, LLP
6225 North 24th Street, Suite 125
Phoenix, Arizona 85016
Telephone: (602) 256-9400
Facsimile: (602) 271-9308

*Counsel for RCS Capital Development, LLC*