IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x
In re:                                                              :
                                                                    :
A.B.C. LEARNING CENTRES LIMITED, *et al.*[1]    :  Chapter 15
                                                                    :
                                                                    :  Case No. 10-11711 (KG)
Debtors in Foreign Proceedings              :
                                                                    :  (Jointly Administered)
                                                                    :
------------------------------------------------------------------- x  Docket Ref. No. 7, 57

**PETITIONERS' REPLY TO THE OBJECTION OF RCS
CAPITAL DEVELOPMENT, LLC, TO DEBTORS' PETITIONS
FOR CHAPTER 15 RECOGNITION OF FOREIGN PROCEEDINGS**

Mr. Peter Walker and Mr. Gregory Moloney, as the former administrators and current

liquidators (the "Petitioners") and duly authorized foreign representatives, as defined by Section

101(24) of Title 11 the United States Code (the "Bankruptcy Code"), of A.B.C. Learning Centres

Limited (in liquidation)(Receivers and Managers appointed) ("ABC Learning") and A.B.C. USA

Holdings Pty Ltd (in liquidation)(Receivers and Managers appointed) ("ABC Holdings" and,

together with ABC Learning, the "Debtors"), who are parties in a foreign proceeding under

Australia's *Corporations Act 2001* (Cth) (the "Corporations Act"), by their undersigned counsel,

respectfully submit this reply (the "Reply") to the objection of RCS Capital Development, LLC

("RCS") to Debtors' petitions for Chapter 15 recognition of foreign proceedings (the

"Objection").

### PRELIMINARY STATEMENT

RCS is opposing recognition in order to take enforcement actions against the Debtors

and their assets in the United States and give itself an advantage over creditors located outside

---

[1]  The debtors in these jointly administered cases are A.B.C. Learning Centres Limited and A.B.C. USA
Holdings Pty Ltd.

the United States (in particular in Australia) that are subject to a moratorium and statutory priority scheme in place in the foreign proceedings. Chapter 15 is designed to aid in the administration of foreign proceedings and to stop these very actions, which would result in the piecemeal distribution of a foreign debtor's assets outside the jurisdiction of the foreign court.

As established in their first day pleadings, the Petitioners satisfy all of the requirements for recognition under Chapter 15 of the Bankruptcy Code, namely that the liquidations (originally administrations) qualify as "foreign proceedings" and the Petitioners qualify as "foreign representatives," both as defined in the Bankruptcy Code. RCS erroneously asserts that voluntarily liquidations do not qualify as foreign proceedings and violate U.S. public policy. To the contrary, and as fully explained below and previously set out in the material already filed by the Petitioners, the Australian Proceedings meet every element necessary to qualify as foreign proceedings, including substantial creditor involvement through the formation and operation of a creditors' committee and significant judicial oversight and direction by the Australian Court.[2]

Further, prohibiting RCS from pursuing collection efforts at the expense of ABC Group's other creditors is not only consistent with, but will further, the prime objectives of Chapter 15 and U.S. public policy. Despite RCS's assertions to the contrary, both the law and the facts establish that the Australian Proceedings constitute "foreign proceedings" entitled to recognition under Chapter 15 of the Bankruptcy Code.

## RESPONSE

1. On June 17, 2010, RCS filed the Objection. RCS asserts three basic arguments: (a) that the Australian Proceedings do not qualify as foreign proceedings because

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Verified Petition (as hereafter defined).

(i) they are not judicial proceedings under the control of a foreign court and (ii) they are not collective proceedings; (b) that granting recognition to the Australian Proceedings would be so contrary to U.S. public policy that recognition should be denied pursuant to Section 1506 of the Bankruptcy Code; and (c) that the relief sought by the Petitioners exceeds that available under Chapter 15. Each of these arguments fail.

## I.  The Australian Proceedings are "Foreign Proceedings"

2.     The Australian Proceedings qualify as foreign proceedings as they satisfy each of the seven elements set forth in Section 101(23) of the Bankruptcy Code, which defines a "foreign proceeding."[3] Each of the seven elements has been thoroughly addressed in the Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief (the "Verified Petition")[4] and the Supporting Documents.[5] In an attempt to convince the Court that

---

[3]   The seven criteria that must be met are: (i) that the Australian Proceedings qualify as "proceedings;" (ii) that the Australian Proceedings are "judicial" or "administrative" in nature; (iii) that the Australian Proceedings are "collective" proceedings; (iv) that the Australian Proceedings are located in a foreign country; (v) that the Australian Proceedings were initiated under a law related to insolvency or adjustment of debt; (vi) that the Australian Proceedings subject the Debtors' assets and affairs to a foreign court's control or supervision; and (vii) that the Australian Proceedings are for the purpose of reorganization or liquidation. 11 U.S.C. §101(23). See In re Betcorp, 400 B.R. 266, 277 (Bankr. D. Nev. 2009) (holding that the definition of foreign proceeding contains seven elements); In re Oversight and Control Commission of Avanzit, S.A., 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008) (noting that the definition of foreign proceeding "incorporates several requirements").

[4]   Concurrent with the filing of the Verified Petition, the Petitioners filed the following documents in support of their application for recognition: (i) the *Declaration of Peter Walker in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; (II) Administrators' Motion for Joint Administration; and (III) Administrators' Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521* (the "Walker Declaration"); (ii) the *Declaration of John Kenneth Martin in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; (II) Administrators' Motion for Joint Administration; and (III) Administrators' Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521* (the "Martin Declaration"); (iii) the *Memorandum of Law in Support of (I) Administrators' Verified Petition Under Chapter 15 for Recognition of Foreign Proceedings and Related Relief; and (II) Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction Pursuant to 11 U.S.C. §§ 105(A), 1519 and 1521*; (iv) the lists required to be filed with the Chapter 15 petitions pursuant to Bankruptcy Rule 1007(a)(4); and (vi) the statements of

the Australian Proceedings do not qualify as "foreign proceedings" under the Bankruptcy Code, RCS alleges that (a) the voluntary windings up are not "judicial proceeding[s] under the control of a foreign court,"[6] see Objection, ¶ 15, and (b) the voluntary windings up are not collective proceedings. Both of RCS's allegations can be rebutted by a simple examination of the Bankruptcy Code, the Corporations Act and the events that have occurred in the Australian Proceedings.

A.      The Australian Proceedings are "Judicial" or "Administrative" Proceedings

3.      Despite RCS's primary focus on the "judicial" aspect of the "foreign proceeding" test, Section 101(23) provides that a proceeding can qualify if it is either judicial or administrative in nature. See 11 U.S.C. § 101(23). Here, the Australian Proceedings, which have evolved from the first stage of administrations to the stage of voluntary windings up, qualify as foreign proceedings under either characterization and are under the supervision of the Australian Court.

       *i.*   *Case Precedent Supports a Finding That the Australian Proceedings are Foreign Proceedings*

4.      As the Petitioners have already detailed in their previous filings, the court in In re Betcorp, 400 B.R. 266 (Bankr. D. Nev. 2009) held, after exhaustive analysis, that a

---

    foreign representatives of the Australian Proceedings required to be filed pursuant to Bankruptcy Code Section 1515 (collectively, the "Initial Supporting Documents").

[5]   The "Supporting Documents" consist of: the Initial Supporting Documents, together with (a) the *Notice Regarding (I) Change of Status of Foreign Proceedings Pursuant to 11 U.S.C. § 1518 and (II) Filing of Supplemental Section 1515 Statements of Foreign Representatives*; (b) the *Supplemental Memorandum of Law*; (c) the *Supplemental Declaration of Peter Walker* (the "Supplemental Walker Declaration"); (d) the *Declaration of Gregory Moloney*, executed June 16, 2010 and filed with the Court on June 16, 2010 (the "Moloney Declaration"); and (e) the *Declaration of Scott Hedge*, executed June 16, 2010 and filed with the Court on June 16, 2010 (the "Hedge Declaration").

[6]   In making this assertion, RCS combines two of the seven criteria of a "foreign proceeding," as identified in the Betcorp decision -- the requirement that the proceeding be "judicial or administrative" in nature and the requirement that such proceeding be "under the supervision of a foreign court." Accordingly, these two criteria are addressed together in Section I.A.ii. infra.

voluntary winding up under the Corporations Act constitutes a foreign proceeding within the definition of Section 101(23) of Bankruptcy Code and for the purpose of recognition under Chapter 15. Faced with a Chapter 15 case directly on point, RCS attempts to discredit Betcorp by relying on In re Tam, 170 B.R. 838 (Bankr. S.D.N.Y. 1994) -- a case that was decided before the enactment of Chapter 15 or the current Section 101(23). Tam was an outlier case even under the Section 304 regime and has been distinguished by numerous decisions, including one issued by Judge Garrity, the very judge who decided Tam.

5.        As a threshold matter, Tam was decided under Section 304 of the Bankruptcy Code and the prior definition of "foreign proceeding," which were repealed and rewritten respectively when Chapter 15 was enacted. Although the court in Tam considered the level of judicial involvement in the winding up at issue, it was not required to consider the precise issue posed by current Section 101(23) of the Bankruptcy Code because the prior definition of foreign proceeding, as RCS concedes, did not require that the foreign proceeding be "under the control or supervision of a foreign court." Using Tam to interpret statutory language that did not exist at the time the case was decided, in the absence of any evidence that Congress intended to incorporate the Tam court's reasoning when revising Section 101(23), is fundamentally unsound. Accordingly, the Tam decision should be accorded little weight when interpreting the control or supervision language of current Section 101(23) of the Bankruptcy Code.

6.        Nevertheless, even under a Section 304 analysis, reliance on Tam would be badly misplaced under these circumstances. Courts have consistently held that voluntary windings up qualify as foreign proceedings. See In re Ward, 201 B.R. 357 (Bankr. S.D.N.Y. 1993) (Garrity, J.) (holding that a voluntary winding up under Zambian law qualified as a foreign proceeding and distinguishing Tam on the grounds that in Tam there was no judicial involvement

whatsoever and no ready access to the courts); In re Netia Holdings S.A., 277 B.R. 571 (Bankr. S.D.N.Y 2002) (holding that a voluntary arrangement under Polish law qualified as a foreign proceeding and distinguishing Tam on the grounds that some judicial oversight and opportunity for creditor participation existed); In re Kingscroft Ins. Co, Ltd., 138 B.R. 121 (Bankr. S.D. Fla. 1992) (holding that voluntary windings up under British and Bermuda law constituted foreign proceedings); Rodgers v. Seaward, Case No. 99-10043, 1999 US DIST LEXIS 18899 (S.D.N.Y. December 8, 1999) (holding that a voluntary winding up of a solvent company under Isle of Man law was a foreign proceeding); Hoffman v. Bullmore (In re National Warranty Ins. Risk Retention Group), 384 F.3d 959 (8th. Cir. 2004) (affirming an injunction granted to Debtors in provisional liquidation under Cayman Islands law on the grounds that the provisional liquidation was a foreign proceeding). In short, the Tam decision was an outlier even within the Section 304 context and turned on facts not present here (i.e. the absence of any judicial control or oversight). Because of these critical distinctions, Tam can be distinguished, as Judge Garrity, who decided Tam, did in the Ward decision.

7.      In Ward, the court held that a voluntary winding up under Zambian law was a foreign proceeding -- despite the fact that there was no direct court involvement -- because, unlike in Tam, aggrieved creditors had ready access to the court. See Ward, 201 B.R. at 361. And in Netia, the court held that the number of opportunities for judicial intervention in a proceeding is the touchstone of judicial oversight. See Netia, 277 B.R. at 581 (citing In re Board of Directors of Hopewell Int'l Ins., Ltd., 238 B.R. 25 (Bankr. S.D.N.Y. 1999) aff'd 275 B.R. 699 (S.D.N.Y. 2002). In Hopewell, the court found that two appearances before a court were sufficient to qualify a proceeding as being subject to judicial supervision. See Hopewell, 238 B.R. at 52. After analyzing Hopewell, the court in Netia held that "[a]ctive court supervision of

the voluntary winding up; ready access to the High Court and appellate courts by creditors and contributories; the right of creditors and contributories to be heard in proceedings, and rules and procedures consistent with U.S. notions of due process" are sufficient indicators of judicial oversight. Netia, 277 B.R. at 583-584. Here, all such protections are present, as described at length in the Martin Declaration.[7] Indeed, interested parties have ample access to the Australian Court's judicial oversight, which has been invoked on multiple occasions.[8] See Moloney Declaration, ¶ 29.

8.      As described in the Moloney Declaration, since the beginning of the Australian Proceedings, ten different motions have been presented to the Australian Court, and the Australian Court has issued ten rulings that conclusively demonstrate the requisite judicial supervision. See id., ¶ 29. In one of those motions, the Petitioners requested that the second meeting of creditors of the Debtors be adjourned to a later date. Two creditors opposed this motion, and it was left to the Australian Court, not the Petitioners, to determine the meeting date. The court issued a lengthy decision, attached as Exhibit D to the Supplemental Moloney Declaration, that weighed the law and the countervailing interests, and ultimately concluded that the motion of the Petitioners should be granted. The extensive involvement of the Australian Court in the Australian Proceedings, provides ample support for a finding that such proceedings are in fact judicial in nature and have been subject to judicial oversight.

9.      Finally, contrary to the assertions of RCS and unlike the situation in Tam,

---

[7]  The legal analysis and conclusions contained in the Martin Declaration were adopted by Scott Hedge in the Hedge Declaration ¶ 5.

[8]  The Corporations Act provides equal judicial access to creditors of administrations and liquidations. See Corporations Act, Section 1321 (stating, among other things, that "a person aggrieved by any act, omission, or decision of ...(c) an administrator of a company...(d) a liquidator...may appeal to the Court...and the Court may confirm, reverse or modify the act or decision, or remedy the omission, as the case may be, and make such orders and give such decisions as it thinks fit.").

where there was no creditor involvement in the winding up, here creditors have a distinct role in the windings up. In addition to the creditors having appeared in court proceedings, a creditors' committee was formed at the beginning of the administrations and pursuant to Section 548 of the Corporations Act a committee of inspection for ABC Learning is in place for the liquidation (there is no committee of inspection for ABC Holdings). In essence, on matters of both law and fact, the <u>Tam</u> decision is inapposite, and RCS's reliance on it is misplaced.

> *ii. The Australian Proceedings are "Judicial" Proceedings Under the Supervision of the Australian Court*

10.     To determine if a proceeding is "judicial" for purposes of recognition under Chapter 15, courts have examined whether there is some judicial oversight. See, e.g., <u>In re British Am. Ins. Co., Ltd</u>. 425 B.R. 884, 904-905 (Bankr. S.D. Fla. 2010) (noting the factual issues present and holding that the foreign proceeding was a judicial proceeding); <u>In re Betcorp</u>, 400 B.R at 280. Here, although the Australian Proceedings were not commenced by court order, they should be considered judicial in nature because of (a) the significant involvement by the Australian Court in supervising and directing the voluntary administration and (b) the court's general supervisory jurisdiction in the current liquidations.

11.     In addition, prior to the conversion of the administrations to liquidations, the Australian Court was heavily involved in ABC Group's insolvency proceedings. On three separate occasions the Petitioners sought the permission of the Australian Court to extend the time to convene the second meeting of creditors required under the Corporations Act. <u>See</u> Moloney Declaration, ¶ 21. Additionally, the Australian Court has ruled on a variety of other applications submitted by the petitioners, including matters concerning, *inter alia*, the creation of a committee of creditors for the ABC Group Companies and the provision of a mechanism to permit terminated employees of ABC Group to access government entitlements. <u>See</u> <u>id</u>., ¶ 29.

12.     Moreover, the Australian Court has held various public examinations of directors, management staff and third party representatives that had dealings with the ABC Group Companies. See id., ¶¶ 34-36. All of these judicial actions are in keeping with Australian law, which confers a general supervisory jurisdiction upon the Australian Court. See Martin Declaration, ¶ 38.

13.     With respect to the liquidations specifically, the Corporations Act provides for substantial judicial review and oversight in the winding up process. Chapter 5 of the Corporations Act contains a plethora of provisions detailing the role of the Australian Court in the voluntary winding up progress. By virtue and through Section 511(1)(b) of the Corporations Act, the Australian Court can exercise all or any powers that it might exercise if the company were being wound up by the Australian Court. For example, Section 482 through Section 489 sets forth the general powers of the court with respect to the winding up of a company, which powers include the power to: (a) terminate the winding up; (b) require property to be delivered to the liquidator; (c) appoint a special manager upon application by a liquidator; (d) fix a claims bar date; (e) issue warrants for persons to be arrested. See Corporations Act, Sections 511(1)(b) and 482-489. The court may also remove a liquidator and appoint another liquidator for cause. See id., Section 503. The court also has powers to review and determine remuneration of a liquidator and to order the liquidator to lodge reports with the court. See id., Sections 504 and 533. Given this ample statutory authority granted to the Australian Court, to argue, as RCS does, that the Australian Court lacks control over the Australian Proceedings is both uninformed and incorrect.

14.     Contrary to RCS's assertion that "creditors have little right to be heard" under an Australian liquidation, see Objection, ¶ 19, the Australian Court is accessible to all creditors of the ABC Group Companies. Under a voluntary winding up and liquidation, like under an

administration, "[t]here is substantial judicial oversight which can be invoked by interested persons, including a creditor, the Australian Securities and Investments Commission and, indeed, any 'person aggrieved by any act, omission or decision of' the liquidator." <u>See</u> Corporations Act, Section 1321; Martin Declaration, ¶ 39. This right is set out at Section 1321(i) of the Corporations Act, which provides, in pertinent part, as follows:

> <u>Appeals from decisions of receivers, liquidators etc</u>.
> (i) A person aggrieved by any act, omission or decision of:
>> (a) a person administering a compromise, arrangement or scheme referred to in Part 5.1; or
>> (b) a receiver, or a receiver and manager, of property of a corporation; or
>> (c) an administrator of a company; or . . .
>> (d) a liquidator or provisional liquidator of a company;
>
> may appeal to the Court in respect of the act, omission or decision and the Court may confirm, reverse or modify the act or decision, or remedy the omission, as the case may be, and make such orders and give such directions as it thinks fit.

As noted above, certain creditors of the ABC Group have already availed themselves of their rights in challenging the Petitioners' request for an extension of time to hold the second creditors' meeting. <u>See</u> Supplemental Moloney Declaration at Exhibit D. Clearly, the judicial nature of these proceedings as well as the consistent judicial oversight present are such that the requirements under Section 101(23) are easily met.

### *iii. Additionally, the Australian Proceedings are "Administrative" Proceedings*

15. Although the Australian Proceedings should qualify as "judicial proceedings," there is also sufficient evidence to support a finding that the proceedings are administrative in nature. In its Objection, RCS completely ignores this point, which has been amply addressed in the Verified Petition and the Supplemental Documents. In order to determine if a proceeding is "administrative" for purposes of recognition under Chapter 15, courts have consistently looked to

whether it makes provision for submitting proofs of debt and ultimate payment of creditors outside of a judicial context. In re Betcorp, 400 B.R at 280. Furthermore, actions "such as sending a notice of liquidation and requesting proofs of debt, have an administrative character." Id.

16.     The Corporations Act itself provides evidence that a voluntary winding up has administrative qualities. Section 497 requires liquidators to provide notice of and convene a meeting of the company's creditors. The requisite notice to creditors must include a summary of the affairs of the company in the prescribed form and a list detailing the creditors and their claims. Such notice must be lodged with the Court and published in a daily newspaper in each state, territory or external territory in which the company operates. See Corporations Act, Section 497. The Liquidators are also required to file statutory accounts with the Australian Securities and Investments Commission ("ASIC") on a timely basis, see Corporations Act, Section 539, and are required to report to ASIC any wrongdoing by officers or employees. See id., Section 497. Furthermore, a company in liquidation must set out in every public document and negotiable instrument that it is in liquidation. See id., Section 541. With respect to the submission of proofs of debt, Sections 553 of the Corporations Act specifies the requirements for the submission and proof of claims. See id., Section 553. Finally, the ultimate payment of creditors outside of the judicial context is statutorily provided for in Section 554-563, a series of extensive guidelines for the valuation of claims and priority of distributions. See id., Section 554-563.

17.     The actions of the Petitioners, in their capacity as administrators, provide further support for the proposition that the Australian Proceedings are administrative. The Petitioners, as administrators, notified the ABC Group's creditors of the administration,

organized meetings of creditors and handled the claims of creditors. The Petitioners, in their capacity as liquidators, have notified the ABC Group's creditors of the voluntary windings up and will continue to deal with the claims of creditors and investigate potential avoidance actions. See Moloney Declaration, ¶¶ 29, 30; Martin Declaration, ¶ 77. Furthermore, upon the completion of the winding up process and liquidation the Petitioners, in their capacity as liquidators, will make distributions to creditors in accordance with the Corporations Act. See Martin Declaration, ¶¶ 41-45. In short, the facts amply support the proposition that the Australian Proceedings are administrative in nature and that the requirements of Section 101(23) are met.

      B.    The Australian Proceedings are "Collective" Proceedings

      18.    Finally, RCS argues that the Australian Proceedings do not qualify as foreign proceedings because they are not "collective" in nature. Significantly, RCS does not, because it cannot, allege that a voluntary winding up by itself is not a collective action for the benefit of all creditors. Rather, RCS contends that the liquidations have been effectively nullified by the receivership, asserting that, despite the presence of the Petitioners, the Receivers call the shots. See Objection, ¶ 25. RCS likewise asserts that "major creditors" have been excluded from the Australian Proceedings. See id., ¶ 26. Accordingly, RCS ignores the liquidations and instead focuses solely on the receivership. RCS's failure to distinguish between the liquidations and the receivership, and incorrect assertions about the relationship between the two distinct proceedings, completely undermines its position.

      *i.    The Petitioners are seeking Recognition of the Liquidation, not the Receivership*

      19.    The Petitioners do not dispute that, under Australian law, upon the commencement of a receivership, control of the debtors' property over which the charges have

been granted is transferred to the receivers. Indeed, this is what has occurred in the Australian Proceedings. Nor do the Petitioners dispute that a receivership itself is not a collective action for the benefit of all creditors. However, the Petitioners only seek recognition of the liquidations. It is completely wrong from both a legal and factual standpoint to suggest that the liquidations (and the preceding administrations) are not legitimate or do not serve an independent purpose wholly separate and apart from the receivership.

20.      Under the Corporations Act, a voluntary winding up and liquidation can, and often will, operate concurrently with a receivership as the record demonstrates is the case here. See Martin Declaration, ¶ 65. Receivers and liquidators are granted separate but concurrent rights and responsibilities. See Moloney Declaration, ¶ 18; Martin Declaration, ¶ 54.

21.      While the Receivers have been complying with their obligations under Australian law, the Petitioners have been concurrently fulfilling their statutory responsibilities and duties to creditors, first as administrators and now as liquidators.

22.      The Petitioners and their team have devoted over 6,600 hours to the ABC Group and have undertaken a multitude of tasks in furtherance of the duties of the Petitioners, all of which have been separate and apart from the efforts of the Receivers. Such tasks have included: (a) holding the two requisite meetings of creditors, (b) petitioning the court on several occasions for orders governing a wide variety of subjects, including the creation of a creditors' committee and the provision of a mechanism for entitlements for terminated employees and (c) undertaking an extensive investigation of the ABC Group's business, property, affairs and financial circumstances, which investigation continues now that the proceedings have been converted to liquidations. See Moloney Declaration, ¶ 30. This investigation is focused on the solvency of the ABC Group and any possible causes of action that may be available to the

Petitioners to seek to recover or realize funds for the creditors. Id.

23.     Any suggestion by RCS that the liquidations are being controlled or unduly influenced by the receivership is undermined by the extensive steps taken by the Petitioners to investigate the validity of the charges of the secured lenders. The Petitioners have applied for and obtained orders from the Australian Court permitting them to obtain financing to conduct public examinations (the "Public Examinations"). See Moloney Declaration, ¶ 31. The purpose of the Public Examinations was to investigate, inter alia, possible claims of insolvent trading, breaches of duties by ABC Group Companies' directors and preference claims concerning ABC Group's secured banking syndicate (the "Secured Lenders"). Id. at ¶ 33. As the Australian Court has noted, if the investigations of the Liquidators lead to the successful pursuit of any of these potential claims, it is possible that the Secured Lenders' charges could be avoided to the benefit of ABC Group's unsecured creditors. Id.; see also Exhibit D to the Supplemental Moloney Declaration. The Petitioners' investigation regarding the avoidance actions will continue although the administration has been converted to a liquidation. See Moloney Declaration, ¶ 33.

24.     With the voluntary windings up of the Debtors in their early stages, the amount of work left for the Petitioners shows no sign of diminishing. Pursuant to the Corporations Act, the Petitioners, in their capacity as liquidators, are tasked with, inter alia, the following continuing duties: (a) to investigate the affairs of the company, including the promotion, formation and conduct of the business of the company, in order to enable recovery of assets and determine the necessity to prosecute any delinquent officers; (b) to collect all assets; (c) to preserve and realize assets; (d) to discharge liabilities pursuant to Section 478, 501 and 506 of the Corporations Act; (e) to distribute the surplus property of the company after the satisfaction of its liabilities, among its members according to their rights and interests in the

company; and (f) to dissolve the company. <u>See</u> Moloney Declaration, ¶ 38. Again, an examination of the facts easily deflects any argument that the Australian Proceedings are somehow superseded by the concurrent Receivership or that the Receivers control the Liquidators or control the voluntary windings up.

> *ii. The Australian Proceedings Are Collective Proceedings Under Section 101(23)*

25.     Turning to the true matter at hand, whether the voluntary windings up of the ABC Group are considered "collective" proceedings, the test is whether a proceeding "considers the rights and obligations of all creditors." <u>In re Betcorp</u>, 400 B.R at 281. There is little question that a voluntary liquidation is collective in nature.

26.     The Corporations Act dictates that a voluntary winding up of a company must include the equitable distribution of a company's assets among its creditors. <u>See</u> Martin Declaration, ¶ 40. Indeed, Section 556 provides for distributions to be made in accordance with the prescribed order of payment of debts. <u>See</u> Corporations Act, Section 556; Moloney Declaration, ¶ 26, Martin Declaration, ¶¶ 41-45. Furthermore, all creditors and aggrieved persons have the opportunity to be heard by the Australian Court with respect to the Australian Proceedings. <u>See</u> Corporations Act, Section 1321; Martin Declaration, ¶ 39.

27.     In addition, creditors have played and will continue to play a key role in the Australian Proceedings. On November 18, 2008, a committee of creditors was appointed to advise and assist the Petitioners in the administration of the ABC Group. <u>See</u> Moloney Declaration, ¶ 19. As set forth in paragraph 10 above, following the conversion of ABC Group's insolvency proceedings from administrations to liquidations, a committee of inspection for ABC Learning was formed for its liquidation. A committee of inspection has a number of administrative duties and often consults with the liquidator regarding the winding up.

28.     Ignoring the fact that the Australian Proceedings fully comply with the definition of "collective" pursuant to Section 101(23) of the Bankruptcy Code, RCS instead argues that the voluntary windings up cannot be collective because it and the Debtors' other U.S. creditors had no notice of the vote and no say in the conversion to a voluntary administration. See Objection, ¶ 26.  Not only is this complaint irrelevant to a determination of whether the Australian Proceedings are collective, it is also demonstrably false and disingenuous.  RCS has failed to disclose that it has Australian counsel that has been in contact with representatives of the Petitioners and the Receivers on multiple occasions.  Significantly, RCS's Australian counsel contacted the Petitioners directly on May 19, 2010, requesting that it receive information related to the Australian Proceedings.  See Moloney Declaration, ¶ 8.  Further, it was disclosed in the Verified Petition, filed in these cases on May 26, 2010 and a copy of which was sent to RCS's counsel, that the second meeting of creditors would be held on Wednesday, June 2, 2010.  In any event, on May 31, 2010, the Petitioners sent notice to RCS's Australian counsel notifying it of the June 2, 2010 meeting of creditors.  See id., ¶ 9; see also Exhibit B to the Supplemental Moloney Declaration.  In short, RCS had actual notice of the June 2, 2010 meeting of creditors and so its assertion that it lacked sufficient notice of the proceedings is simply incorrect.  Despite the aforementioned notice, neither RCS or its Australian counsel attended the second meeting of creditors held on Wednesday, June 2, 2010.

29.     As the court in Betcorp observed, "[t]he voluntary winding up provisions, combined with the case law from Australian courts, provide substantial evidence that this type of external administration is properly understood as collective."  In re Betcorp, 400 B.R. at 281. Again, a look at the Corporations Act and facts present in this case reveals that the Australian Proceedings, which consider the rights and obligations of all creditors, are collective in nature

and thus meet the definition of foreign proceedings under Section 101(23).

## II.   Recognition is Consistent with U.S. Public Policy

30.     RCS argues that recognition would be unfair and would be against public policy because it would prevent them from converting their jury verdict to a judgment and potentially preclude them from asserting setoff claims. RCS alleges that this stay would violate Section 1506 of the Bankruptcy Code, which provides that a court may refuse to recognize a petition if doing so "would be manifestly contrary to the public policy of the United States." 11 U.S.C. §1506. Like RCS's other challenges to the Verified Petition, this argument simply has no foundation in either the law or the facts at hand.

31.     In adopting Chapter 15, Congress instructed courts that the "public policy" exception, which permits courts to refuse to take actions "manifestly contrary to the public policy of the United States," should be "narrowly interpreted," as "[t]he word 'manifestly' in international usage restricts the public policy exception to the *most fundamental* policies of the United States." H.R. Rep. No. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172 (emphasis added). Legislative history of Section 1506 and case law interpreting it dictate that this exception is to be applied narrowly. See, e.g., id.; In re Ernst & Young, Inc., 383 B.R. 773 (Bankr. D. Colo. 2008); In re Iida, 377 B.R. 243 (9th Cir. BAP 2007); In re Tri-Continental Ltd., 349 B.R. 627 (Bankr. E.D. Ca. 2006). In fact, this exception is so narrowly applied that at least one court has held that even the lack of a right to a jury trial is not manifestly contrary to U.S. public policy. In re Ephedra Prods. Liab. Litig., 349 B.R. 333 (S.D.N.Y. 2006).

32.     RCS is not subject to any unfairness here and cannot allege any prejudice of the magnitude of being so manifestly contrary to U.S. public policy as to invoke the exception under Section 1506. To the contrary, granting recognition here would achieve exactly what

Chapter 15 was enacted to accomplish, namely to promote the fair and efficient administration of cross-border insolvencies and to prevent the piecemeal distribution of a foreign debtor's estate. See 11 U.S.C. 1501. If RCS were permitted to continue its enforcement action against the Debtors, it would directly disadvantage all of the other creditors subject to the Australian Proceedings. The action RCS wants to take is contrary to the most basic objectives underlying U.S. bankruptcy law, which requires the assets of a Debtor to be collected and distributed equitably. H.R. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977), S.R. No. 95-989, 95th Cong., 2d Sess. 49-51 (1978) ("Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.").

33. Moreover, RCS ignores the fact that the imposition of the stay under Chapter 15 that prohibits the continuation of lawsuits and collection actions is no different than what occurs upon the commencement of a Chapter 11 case. See 11 U.S.C. § 362; H.R. No. 95-595, 95th Cong., 1st Sess. 340-2 (1977), S.R. No. 95-989, 95th Cong., 2d Sess. 49-51 (1978) ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws .... The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors."). Indeed, upon the filing of a Chapter 11 case, all lawsuits, specifically including setoff actions, are stayed. 11 U.S.C. § 362(a)(7). Further, it is not at all uncommon for a U.S. debtor to commence Chapter 11 proceedings in response to an adverse judgment against it. It makes little sense that what is common practice under Chapter 11 would be manifestly contrary to the public policy of the United States under Chapter 15.

34. Finally, RCS's complaints of unfairness should fall on deaf ears. RCS chose

to pursue the Arizona lawsuit against ABC Learning with full knowledge that ABC Learning was the subject of the Australian Proceedings and that creditors of ABC Learning were subject to a moratorium in place in Australia that has a world-wide effect. Like other creditors of ABC Learning, RCS could have (and still can) file a proof of debt in Australia and pursue its claims in that forum.[9] Instead, RCS opted to circumvent those procedures in an attempt to extract an unfair advantage at the expense of all other creditors of ABC Learning. It is telling that the "unfairness" that RCS complains of is that it would be placed in the same position as every other creditor of ABC Learning.

## III. The Requested Relief is Permissible Under Chapter 15

35. Finally, RCS raises several objections to the proposed order granting recognition originally submitted by the Petitioners. Prior to the filing of the Objection, counsel to the Petitioners engaged in discussions with the U.S. Trustee regarding the form of order and agreed, at the U.S. Trustee's request, to revise certain of the provisions referenced by RCS. As such, most of the objections raised by RCS have been mooted by the revised proposed order granting recognition, attached hereto as Exhibit A (the "Proposed Order").[10]

36. With respect to paragraph 4(b)(iii) of the Proposed Order, the Petitioners have agreed to remove this provision after discussions with the U.S. Trustee. Accordingly, RCS's concerns raised in paragraph 33 of the Objection have been resolved.

37. Likewise, with respect to paragraph 4(d) of the Proposed Order, the Petitioners have agreed to revise this provision after discussions with the U.S. Trustee, so that the

---

[9] Setoff as a matter of Australian law would still be available to RCS in the Australian Proceedings should it be determined that setoff is available to RCS in the applicable circumstances.

[10] A blackline of the Proposed Order against the form of order originally annexed to the Verified Petition is attached hereto as Exhibit B.

proposed order will not require turnover of property without notice to the relevant parties. Instead, the proposed order simply provides that the Petitioners have the right to seek, pursuant to Bankruptcy Code Sections 542 or 543, as applicable, turnover from parties holding property of the Debtors. This revision resolves RCS's concern raised in paragraph 34 of the Objection.

38.     The U.S. Trustee has also proposed a minor change to paragraph 4(e) which addresses RCS's request that a party be permitted to apply to this Court for further relief with respect to the scope of the injunction granted in the Proposed Order and the impact on the Debtors of any judgment that may be obtained against any person or entity other than the Debtors. While this provides RCS with its requested relief, the Petitioners feel compelled to address RCS's mistaken assertion that paragraph 4(e) immunizes the Debtors for the acts of their affiliates or subsidiaries. This is not the case. Paragraph 4(e) makes clear that the injunction granted in the proposed order is solely for the benefit of the Debtors, so that creditors may commence or continue actions against the Debtors' affiliates. Of course any result in those actions should not automatically be binding on the Debtors, given their lack of involvement in those suits and the fact the Debtors are separate legal entities. RCS's assertions that companies should as a matter of course be held liable for the acts of their affiliates is without foundation.

39.     RCS also objects to the relief requested in paragraph 4(g). As reflected in the attached revised order, that paragraph has been removed. The goal of these Chapter 15 cases is to make sure that U.S. creditors are subject to the same restrictions and limitations that the Australian creditors are subject to. The relief set out in paragraph 4(g) is not being granted in the Australian windings up and is accordingly not sought in this proceeding.

40.     RCS objects to paragraph 4(h) of the proposed order, taking issue with the Petitioners' request to transfer any U.S. assets to Australia for distribution as part of the voluntary

windings up. Yet, this relief is absolutely necessary to satisfy the goals of Chapter 15, including the fair and efficient administration of the estates and is relief that is typically granted in Chapter 15 cases. Indeed, there is nothing that would prevent the Petitioners from making such transfers even absent a specific grant of relief. RCS then complains that it would be forced to go to Australia to enforce its rights against the Debtors. However, RCS (again) fails to mention it already has Australian counsel and thus misleads the Court regarding the hardship this would cause. Section 1522 requires that creditors' rights be sufficiently protected. They are. Nothing in the proposed recognition order prevents RCS from continuing to seek relief from the Debtors through the Australian process. It simply must do so like all other creditors in the Debtors' voluntary windings up.

41.    RCS has asserted that paragraph 4(b)(i) and (ii) extinguish its rights as a creditor by enjoining it from obtaining a right of setoff. As noted above, staying a creditor from obtaining or asserting a right of setoff is completely appropriate and permissible under the Bankruptcy Code. RCS's assertion that this stay violates Section 1522 is incorrect given that such relief is granted in Chapter 11 cases and that RCS may seek relief in the Australian process (which allows for setoff in appropriate cases).

## CONCLUSION

For the foregoing reasons and those set forth in the Supporting Documents, the Petitioners respectfully request that this Court (a) deny the Objection, (b) grant the relief requested in the Verified Petition and (c) grant other relief as is just and necessary.

Dated: Wilmington, Delaware
June 21, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____/s/ Ryan M. Bartley_____
Joel A. Waite (No. 2925)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

CHADBOURNE & PARKE LLP
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Members of the Firm
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

Attorneys for the Petitioners