# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 15 |
| ABC LEARNING CENTRES LIMITED n/k/a ZYX LEARNING CENTRES LIMITED, *et al.*[1] | : : | Case No. 10-11711 (KG) Jointly Administered |
| Debtors in Foreign Proceedings. | : : : : : | **Objections Due:** **July 30, 2010 at 4:00 p.m. (ET)** **Hearing Date:** **August 9, 2010 at 9:30 a.m. (ET)** |

## MOTION OF RCS CAPITAL DEVELOPMENT, LLC, FOR RELIEF FROM THE AUTOMATIC STAY AND THE TERMS OF ANY RECOGNITION ORDER TO (I) REDUCE ITS JURY VERDICT TO JUDGMENT AND (II) ALLOW FOR SETOFF

RCS Capital Development, LLC ("RCS") hereby moves (the "Motion"), pursuant to sections 362(d), 553 and 1522(c) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order granting it relief from the automatic stay and the terms of any Recognition Order (defined below) entered in respect of the petition (the "Petition"), pursuant to Chapter 15 of the Bankruptcy Code, filed by Mr. Peter Walker and Mr. Greg Maloney, as the purported former administrators and current liquidators (together, the "Petitioners") of ABC Learning Centres, Ltd. n/k/a ZYX Learning Centres Ltd. ("ABC Learning") and A.B.C. USA Holdings Pty, Ltd. ("ABC Holdings," and together with ABC Learning, "ABC"), seeking recognition of ABC's proceedings under Australia's *Corporations Act 2001* (Cth) (the "Australian Proceedings") as foreign main proceedings and related relief. Specifically, RCS requests that the automatic stay and any Recognition Order be modified to permit RCS to (i) reduce its Jury Verdict (defined below) into a final judgment and defend that judgment from any

---

[1] The debtors in these jointly administered cases are ABC Learning Centres Limited n/k/a ZYX Learning Centres Ltd. and A.B.C. USA Holdings Pty Ltd.

appeal or challenge thereto and (ii) setoff of the judgment in the Arizona Action (defined below) against any liability RCS is determined to have in the Nevada Action (defined below). In support of this Motion, RCS respectfully states as follows:

## PRELIMINARY STATEMENT

1. As described in more detail below, just prior to the commencement of these Chapter 15 proceedings, RCS won a Jury Verdict of no less than $47 million against ABC Learning and its non-debtor U.S. subsidiary. However, before RCS could reduce its Jury Verdict to a judgment, ABC Learning commenced these proceedings.

2. In March 2009, despite being in receivership and voluntary administration in Australia, ABC sued RCS in Nevada state court. Like the Arizona Action, the Nevada Action involves an agreement to develop childcare centers in the United States. But in this suit, the roles were reversed: ABC seeks $30 million on the grounds that RCS and one of its affiliates allegedly breached the development agreement. The Nevada Action is still pending.

3. RCS is entitled to a setoff under Nevada law. Accordingly, RCS moves herein for relief from the automatic stay and any Recognition Order to enable it to reduce its Jury Verdict to a final judgment, defend that judgment against any direct or indirect challenge and use the judgment amount as a setoff against any liability it has in the Nevada Action.

4. Without the relief requested herein, RCS will be deprived of its right of setoff—a right the Bankruptcy Code expressly recognizes and preserves—and a defense to the Nevada Action. Meanwhile, ABC would be free to pursue the Nevada Action, thereby using the automatic stay as a sword, instead of the shield it was intended to be.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. To the extent the Court enters a Recognition Order in these proceedings, this

2

Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief requested herein are sections 362(d), 553 and 1522(c) of the Bankruptcy Code.

## BACKGROUND

7. In June 2008, RCS, an Arizona limited liability company, entered into an agreement with ABC Learning and its American subsidiary to develop childcare centers in the United States.

8. RCS sued ABC in October 2008 because of ABC's defaults under the June 2008 contract (the "Arizona Action"). A copy of the complaint in the Arizona Action is attached hereto as **Exhibit A**.

9. A few weeks after RCS filed suit, ABC and 38 of its Australian subsidiaries (including ABC Holdings), were placed in voluntary administration under Australia's Corporations Act. In addition, the initiation of the voluntary administration triggered the right of ABC's secured creditors to appoint a receiver, and a receiver was appointed.

10. In March 2009, despite being in receivership and voluntary administration, ABC Learning sued RCS and other parties in Nevada state court (the "Nevada Action"). The Nevada Action also involves an agreement to develop childcare centers in the United States but the roles were reversed: ABC wants a judgment against RCS for approximately $30 million. The Nevada Action is still pending; a copy of the complaint therein is attached hereto as **Exhibit B**.

11. On May 14, 2010, the Arizona Action went to trial, and the jury found in favor of RCS, awarding it $47,031,574 (the "Jury Verdict"). RCS then filed an application for attorneys fees, an application for recovery of costs, and an application for an award of pre-judgment interest. ABC filed objections and RCS filed replies to the foregoing. However, this

3

petition for recognition was filed before the court could rule on these applications and sign a final judgment. Arizona rules require the court to rule on attorneys fees before entry of judgment. *See* Ariz. R. Civ. P. 58(g).

12. ABC filed its Petition on May 26, 2010, before the Arizona trial court could rule on the fully-briefed, post-trial matters before it. By the Petition, ABC seeks the entry of an order (the "Recognition Order") granting it, among other things, the following relief: (a) recognition of the Australian Proceedings as "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code; (b) all relief afforded a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code; (c) additional discretionary relief under section 1521 of the Bankruptcy Code; and (d) other relief not specifically authorized by the Bankruptcy Code. RCS has opposed entry of the Recognition Order. The Court commenced a hearing on Petitioners' request for entry of the Recognition Order on June 24, 2010, which hearing has been continued until August 9, 2010.

## RELIEF REQUESTED

13. By this Motion, RCS respectfully requests, pursuant to sections 362(d), 553 and 1522(c) of the Bankruptcy Code, entry of an order granting it relief from the automatic stay and the terms of any Recognition Order to (i) reduce its Jury Verdict to a final judgment and defend that judgment from any direct or indirect challenge; and (ii) setoff of the judgment in the Arizona Action against any liability RCS is determined to have in the Nevada Action.

## BASIS FOR RELIEF REQUESTED

14. "Our system of law universally frowns on a party that would use the [automatic] stay as both a sword and a shield." *Oberg v. Aetna Cas. & Sur. Co. (In re A.H. Robins Co., Inc.),* 828 F.2d 1023, 1026 (4th Cir. 1987). *See also, e.g., In re Sternberg,* 595 F.3d

937, (9th Cir. 2010) ("The stay is a shield, not a sword."); *In re Braniff Int'l Airlines, Inc.*, 159 B.R. 117, 125 (E.D.N.Y. 1993) (citations omitted); *Bernstein v. IDT Corp.,* 76 B.R. 275, 281 (S.D.N.Y. 1987) (permitting creditor's assertion of setoff as counterclaim in trustee's action because to hold otherwise "would allow the Trustee to use the stay as a sword instead of a shield"). Yet, as discussed herein, Petitioners make no secret that a principal purpose of their seeking recognition of the Australian Proceedings is to disable RCS from using the judgment from the Arizona Action to defend itself in the Nevada Action. This is not a proper invocation of the automatic stay, this Court's section 105(a) powers or of this Court's authority under chapter 15 of the Bankruptcy Code. As one circuit court has warned, "[w]here a debtor institutes a lawsuit and then invokes the protection of [the automatic stay] on a counterclaim, the situation warrants a very thoughtful scrutiny." *Gruber v. Victor*, 1996 WL 492991, *5 (S.D.N.Y. 1996) (quoting *In Matter of Bohack*, 599 F.2d 1160, 1168 (2d Cir. 1979)). "The *Bohack* court allowed the creditor to assert a counterclaim for setoff against the debtor, noting that because the debtor was already suing the creditor, allowing the counterclaim did not run counter to two central purposes of the stay—sparing the debtor the expense of defending itself in litigation, and protecting against interference with the administration of the debtor's estate." *Id.* (citing *Bohack*, 599 F.2d at 1168). Here, too, allowing relief from stay to permit RCS to take the steps necessary to obtain entry of the judgment in the Arizona Action and effect a setoff does not offend the purpose of the stay.

15. The debtor, ABC, does not need protection from the expense of defending itself in litigation as the litigation against it has already concluded. And, the administration of the estate is wholly unaffected by the relief requested herein. ABC has separate litigation counsel in Arizona and Nevada, and is a liquidating entity with no ongoing business operations

5

to interfere with and, on information and belief, virtually no assets to marshal or liquidate. In addition, as shown below, all of the requirements for relief from stay as requested herein.

### A. Relief From Stay to Reduce a Jury Verdict to Judgment is Appropriate.

16. Courts generally agree that the ministerial act of entering a judgment is not the commencement or continuation of a judicial action or proceeding so as to be subject to the terms of the automatic stay. *See* 11 U.S.C. § 362(a)(1) (staying the commencement or continuation of judicial actions and proceedings); *In re Rexnord Holdings, Inc.*, 21 F.3d 522, 527 (7th Cir. 1994) ("[W]e do not believe that the simple and 'ministerial' act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceeding under section 362(a)(1).") (citations omitted). Nonetheless, RCS applies to this Court for relief from the automatic stay out of an abundance of caution and because under Arizona procedural law, reducing the Jury Verdict to judgment involves steps that may be construed as more than simple, "ministerial" acts. These steps include the court ruling on the matters pending before it: (1) the application for award of attorney's fees; (2) the application for costs; (3) the application for award of pre-judgment interest; and (4) the form of judgment. Each of these matters is fully briefed and ready for ruling; these matters can be decided without any evidentiary hearing or further briefing.

17. Section 362(d) of the Bankruptcy Code governs requests for relief from the automatic stay and provides that a bankruptcy court may grant such relief "for cause." 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. Rather, courts treat "cause" as a flexible concept that requires a case-by-case balancing test examining the totality of the circumstances to determine whether relief from stay should be granted. *See, e.g.*, *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (KG) (citations omitted); *Izzarelli v.*

*Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Courts also look to the legislative history of section 362(d)(1), which provides that "cause may be established by a single factor such as 'desire to permit an action to proceed . . . in another tribunal,' or 'lack of any connection or interference with the bankruptcy case.'" *Rexene Prods.*, 141 B.R. at 576 (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977), U.S.C.C.A.N. pp. 5787, 6300). This Court, in particular, has noted that the legislative history "emphasizes [section 362(d)(1)'s] applicability to proceedings in another tribunal." *SCO Group*, 395 B.R. at 856 (citing H.R. Rep. No. 95-595 at 341, U.S.C.C.A.N. at 6297 ("It will often be more appropriate to permit proceedings to continue in their place of origin . . . .")).

18. This Court has developed a three-prong balancing test to determine if relief from the automatic stay is appropriate:

> a. whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> b. whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> c. the probability of the creditor prevailing on the merits.

*Id.* at 857. This Court has also considered general policies underlying the automatic stay and has examined the general circumstances surrounding the bankruptcy case and the action for which stay relief is sought. *See id.* at 857-58. In particular, this Court has granted stay relief "'when necessary to permit litigation to be concluded in another forum.'" *Id.* at 857 (quoting Lawrence P. King, *Collier on Bankruptcy* 362.07[3][a] (15th ed. 2006)).

### (i) Relief From Stay to Reduce the Jury Verdict to Judgment Will Not Prejudice ABC.

19. ABC will not be prejudiced if the stay is lifted to permit RCS to reduce its Jury Verdict to judgment. The Arizona Action has been fully litigated. All substantive

proceedings in the case have concluded, and the jury has reached its decision, awarding RCS a $47 million verdict. The sole remaining task in the Arizona Action is to reduce the Jury Verdict to judgment. The only thing left for either RCS or ABC to do before the verdict is reduced to a judgment is to appear at an oral argument if the court sets one before ruling. Because ABC has separate counsel in the Arizona Action and the matter is fully briefed, ABC will suffer no prejudice if the stay is lifted to allow RCS to reduce the Jury Verdict to judgment.[2]

20. Further, in *SCO Group*, this Court found that even where a full trial remained to be conducted, the debtor was not be unduly prejudiced by lifting the stay to permit the action to proceed. 395 B.R. at 858. There, as here, the debtor had separate litigation counsel. *Id.* In addition, the debtor's litigation counsel had already completed extensive trial preparation prior to the bankruptcy. *Id.* Therefore, this Court found that trial preparation was not a concern and would not be burdensome to the debtor. *See id.* Similarly, trial preparation is a non-issue here, as trial as concluded and a verdict has been rendered; all that remains to be done is reducing the Jury Verdict to judgment.

21. In *SCO Group*, this Court further reasoned that the longer the trial was delayed, the more burdensome it would be on both parties to ready themselves again. *Id.* The same applies here, where the longer the delay between the Jury Verdict and judgment, the more removed the Arizona court's memory the proceedings become, potentially burdening the parties to make efforts to refresh the Arizona court's memory.

---

[2] Notably, as RCS informed the Court at the June 24, 2010 hearing, after ABC filed its Petition in this Court and despite the fact that RCS was then temporarily enjoined from continuing the Arizona Action, ABC's trial counsel in the Arizona Action (which counsel is jointly representing ABC Learning and its non-debtor U.S. subsidiary) filed papers on behalf of the non-debtor co-defendant in opposition to RCS's applications for recovery of costs and pre-judgment interest.

8

22. For these reasons, ABC Learning will not be prejudiced by lifting the stay to permit RCS to reduce its Jury Verdict to judgment.

    **(ii) The Hardship to RCS of Maintaining the Stay Outweighs Any Hardship to ABC.**

23. As described above, ABC will suffer minimal or no prejudice if the stay is lifted. By contrast, RCS will be greatly prejudiced if it is unable to obtain its judgment. RCS has already expended great efforts and incurred significant costs to obtain its Jury Verdict in the Arizona Action. The Jury Verdict, once reduced to judgment, is a defense to the Nevada Action that will stop that action. If RCS cannot reduce its Jury Verdict to judgment, ABC will no doubt assert that the defense of setoff is unavailable to RCS in the Nevada Action. Clearly, this would greatly prejudice RCS and force RCS to incur unnecessary expenses to defend a case where it is not allowed to assert one of the defenses it also pled: setoff.

24. It is beyond dispute that ABC is actually using the Chapter 15 filing to defeat RCS's defenses to the Nevada Action. A report filed by the administrators after they filed the Chapter 15 petition says:

> The Receivers continue to pursue action in the US for recovery of monies paid to a US developer of child care centres, American Childcare Properties (ACCP). As part of this action, the Receivers and Managers have been defending a separate claim by another US developer (RCS who bought ACCP after the date of the Administration. The case was heard in front of a jury trial in Arizona in early May 2010 and the jury awarded US$47 million in favour of RCS. This claim is considered to be an unsecured claim against A.B.C. Learning Centres LTD and therefore would rank equally with all other unsecured creditors. **Furthermore, RCS is unable to set this debt off against the Receivers and Managers' claim for $US 40 million against ACCP, which is being pursued in Nevada**. In order to prevent any attempt by RCS to access A.B.C.'s shares in Learning Care Group, the Administrators at the request of the Receivers and Managers, have sought Chapter 15 US Bankruptcy Act recognition of the A.B.C. Groups'

>Administration in the US. This will help prevent any creditor in the
>US from attempting to seize any of A.B.C. Group's US assets.

See attached **Exhibit C**, Report by Administrators (May 31, 2010) (emphasis added).[3] Thus, it is clear that ABC is using these proceedings and the stay as a sword—not a shield—to strip RCS of defenses in the Nevada action. Courts have held repeatedly that this is impermissible, prejudicial and inequitable use of the automatic stay and the stay should be lifted in such circumstances. *See, e.g., Bohack*, 599 F.2d at 1168; *Gruber*, 1996 WL 492991, *5; *IDT Corp.*, 76 B.R. at 281 ("To deny GD the assertion of properly pleaded counterclaims would allow the Trustee to use the stay as a sword instead of a shield."); *In re Countryside Manor, Inc.*, 188 B.R. 489, 491 (Bankr. D. Conn. 1995) ("The Defendants cannot be forced to file a claim in the bankruptcy court, and the counterclaim, as described, clearly qualifies as an offset of a mutual debt. Refusal to lift the stay prejudices the Defendants and is inequitable because they will be unable to assert their claim in state court."); *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984) ("In light of the litigation initiated by Saxon, it would clearly be inequitable to allow Saxon to use § 362 to prevent Fox from pressing counterclaims."); *In re Ideal Roofing & Sheet Metal Works, Inc.*, 9 B.R. 2, 3 (Bankr. S.D. Fla. 1980) (modifying automatic stay to permit defendant to assert counterclaim against debtor plaintiff in state court proceeding). In these circumstances, the prejudice to RCS is extreme—RCS is deprived of a defense to the Nevada Action—and the stay must be lifted.

### (iii) RCS Has Already Won on the Merits.

25. The final factor that the Court must consider is RCS's likelihood of success on the merits. *See SCO Group*, 395 B.R. at 859. Even a small probability of the

---

[3] This and other documents published by Ferrier Hodgson, the administrators, can be viewed at http://www.ferrierhodgson.com/Current%20Matters/Corporate%20Recovery%20Matters/ABC%20Learning%20Centres%20Limited.aspx

movant's success on the merits in the litigation is sufficient to warrant relief from stay. *See id.* (citations omitted). Here, though, RCS's success on the merits is not merely probable, it is has already occurred. All that remains in the Arizona Action is calculation of attorneys' fees and costs and prejudgment interest, and the entry of the actual judgment. Accordingly, this factor strongly weighs in favor of granting RCS relief from the automatic stay.

26. Moreover, in the same and similar circumstances—reducing a verdict to judgment or confirming an arbitration award—courts almost universally find the relief from stay is appropriate. *See, e.g.*, *In C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.*, 369 B.R. 87 (D.P.R. 2007) (lifting the stay to allow nondebtor party to continue proceedings to confirm an arbitration award in state court); *In re Beguelin v. Volcano Vision, Inc.*, 220 B.R. 94, 97-98 (B.A.P. 9th Cir. 1998) (affirming bankruptcy court's grant of relief from stay to permit jury verdict to be reduced to judgment, including to permit determination of punitive damages and attorneys' fees and costs); *In re Nugent*, 254 B.R. 14, 40 (Bankr. D.N.J. 1998) (citing to *Beguelin* and discussing appropriateness of lifting the stay to allow judgment, including attorneys' fees and costs, to be entered); *In re Montague Pipeline Techs. Corp.*, 209 B.R. 295 (Bankr. E.D.N.Y. 1997) (lifting the stay to allow nondebtor party to continue proceedings to confirm an arbitration award in state court, and to permit any appeals therefrom to proceed); *In re Dorris Mktg. Group, Inc.*, 2005 WL 6267050 (Bankr. E.D. Va. Jan. 27, 2005) (lifting the stay to permit pending action in U.S. district court to confirm an arbitration award to go forward). For these reasons, granting RCS relief from the automatic stay to permit it to reduce its Jury Verdict to judgment is appropriate.

### B.   RCS is also Entitled to Relief from the Automatic Stay to Effect a Setoff.

27. Section 553 of the Bankruptcy Code and section 362(a)(7) of the Bankruptcy Code operate in tandem to strike a balance between ensuring that the right of setoff is recognized and preserved under the Bankruptcy Code and affording the debtor a breathing spell "pending an orderly examination of the debtors' and creditors' rights." H.R. Rep. No. 595, 95th Cong., 1st Sess. 340-42 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 49-51 (1978). According to the Supreme Court, preserving the right of setoff in bankruptcy serves the following important function:

> The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the "absurdity of making A pay B when B owes A." Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of set-off otherwise exists is preserved in bankruptcy.

*Citizens Bank v. Strumpf,* 516 U.S. 16, 18 (1995) (citation omitted). *See also* A. Resnick & H. Sommer, eds., 5 COLLIER ON BANKRUPTCY ¶ 553.02[1] at 553-10 (15th ed. rev.) ("The Bankruptcy Code recognizes the significance of the right and continues the practice of preserving it, in part as a matter of essential fairness, but more importantly in recognition of the right as part of the bundle of substantive rights that may comprise a creditor's claim.") (citations omitted).

28. The automatic stay, in turn, temporarily enjoins "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). As one leading treatise explains, "[t]he imposition of the automatic stay does not defeat the creditor's setoff right, but merely enjoins the enforcement of the creditor's right pending the orderly examination and administration of the

estate." 5 COLLIER ON BANKRUPTCY ¶ 553.06[1][a] at 553-67. A creditor retains the right to setoff notwithstanding the commencement of a proceeding under the Bankruptcy Code, but must first obtain relief from the automatic stay or obtain an order allowing setoff. *See In re NTG Industries, Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989). *See also Matter of Corland Corp.*, 967 F.2d 1069, 1076 (5th Cir. 1992).

29. Similar to the analysis above with regard to relief from the automatic stay to reduce the Jury Verdict to judgment, the Court must evaluate whether "cause" exists to modify the stay to permit setoff rights to be exercised. *See* 11 U.S.C. § 362(d). In the context of setoff, it is well established that "cause" exists to modify the automatic stay if the three requirements for setoff under section 553 are met. *See, e.g.*, *In re Gregg,* 371 B.R. 817 (Bankr. E.D. Tenn. 2007) (granting relief from stay to allow creditor setoff prepetition judgment for breach of lease as defense in debtor's prepetition tort action against landlord upon determination that landlord had established right to setoff); *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724 (Bankr. E.D.Pa. 2000) (existence of mutual obligations subject to setoff constitutes sufficient "cause" to meet creditor's initial evidentiary burden in seeking relief from automatic stay); *In re Firestone*, 179 B.R. 148, 148 (D. Neb. 1995) (a right to setoff establishes a prima facie case of cause to lift the automatic stay); *In re Whitaker*, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994) (same); *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991) (same); *Row Steel, Inc. v. Asphalt & Sealers Equip. Mfg. (In re Row Steel, Inc.)*, 33 B.R. 20, 23 (Bankr. E.D.N.C. 1983) (once creditor has moved to lift the stay and established the mutuality of debt necessary for setoff, it becomes the debtor's burden to show that cause to lift the stay does not exist); *In re Coleman*, 52 B.R. 1, 2 (Bankr. W.D. Ohio 1985) (if a right of setoff exists, "cause" exists to lift the automatic stay).

30. This is especially true when, as here, the debtor or its purported representative is attempting to pursue litigation against a creditor in another forum, but is invoking the automatic stay to gain tactical advantage by preventing the creditor exercising a setoff to defend itself. Granting relief from the automatic stay in such circumstances is necessary to avoid the inequity that would result:

> Just as a court has the discretion to deny a creditor's request to lift a stay where it would be inequitable to allow the creditor's claim to proceed, so too a court has the discretion to grant a set-off "when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum."

*IDT Corp.,* 76 B.R. at 280 (quoting *Bohack,* 599 F.2d at 1168).[4]

31. Pursuant to section 553 of the Bankruptcy Code, a valid right to setoff exists and may be exercised when: (i) the debt and the claim both arose prepetition; (ii) the debt and the claim are mutual obligations; and (iii) a right to setoff exists under nonbankruptcy law. *In re Luongo*, 2001 WL 811766, at *3 (5th Cir. July 18, 2001), *In re S. Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987); *In re Glenn*, 207 B.R. 418, 420 (E.D. Pa. 1997). "[D]ebts are considered 'mutual' only when 'they are due to and from the same persons in the same capacity.'" *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009) *aff'd*, 2010 WL 1737103 (D. Del. Apr. 30, 2010) (citing *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002)).

---

[4] Moreover, given the questions that have been raised about the nature and conduct of the Australian Proceedings, it is warranted for this Court to be skeptical about the Petitioners' attempt to block RCS from exercising its setoff rights. *See In re Treco,* 240 F.3d 148, 162 (2d Cir. 2001) (holding that, where serious questions had been raised concerning the priority scheme in the foreign proceeding and the manner in which the foreign proceeding was being administered, "the bankruptcy court – not the [foreign] court – has an obligation to determine whether [creditor's] claim is secured, which in turn may depend on whether [creditor] has a right of setoff").

32. In this case, all three requirements are met. RCS has a valid, prepetition claim against ABC Learning, resulting from the Jury Verdict against ABC Learning. To the extent that ABC Learning has a valid claim against RCS in the Nevada Action, that claim would be prepetition as well because the contract and alleged breach thereof arose prepetition. These debts are mutual in that they are owed to and from the same persons in the same capacity. Finally, Nevada law recognizes and endorses the equitable right and defense of setoff. Therefore, RCS has a right to setoff and cause exists to lift the automatic stay to permit RCS to exercise such right of setoff.

### (i) RCS Has a State-Law Right to Setoff.

33. The Nevada Supreme Court has held that the only requirement for setoff under Nevada law is that "each party must have a valid and enforceable debt against the other party." *Aviation Ventures, Inc. v. Joan Morris, Inc.*, 110 P.3d 59, 63 (Nev. 2005) (overruling prior decision that there was an additional requirement of one party being insolvent). "Setoff is a doctrine used to extinguish the mutual indebtedness of parties who each owe a debt to one another." *Id.* (citations omitted). Further, "the claims that give rise to a setoff need not arise out of the same transaction; they may be entirely unrelated." *Id.* (citations omitted). "Setoff is a form of counterclaim which a defendant may urge by way of defense or to obtain a judgment for whatever balance is due." *Id.* (quoting *Trueheart v. Braselton*, 875 S.W.2d 412, 415 (Tex. App. 1994)). Thus, Nevada law recognizes the right of setoff of mutual debts.

### (iii) The Debts are Mutual.

34. Debts are mutual if "they are due to and from the same persons in the same capacity." *SemCrude,* 399 B.R. at 393. "Put another way, mutuality requires that 'each party must own his claim in his own right severally, with the right to collect in his own name

against the debtor in his own right and severally.'" *Id.* (quoting *In re Garden Ridge Corp.*, 338 B.R. 627, 633-34 (Bankr. D. Del. 2006), and *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987)). The requirement of mutuality is met here.

35. In the Arizona Action, ABC Learning is one of two named, co-liable defendants against which RCS obtained its Jury Verdict (the other defendants is ABC Learning's wholly-owned, nondebtor U.S. subsidiary). Thus, RCS has its own, several right to the Jury Verdict against ABC Learning.[5] In the Nevada Action, ABC Learning is the lead plaintiff and RCS is the lead defendant, along with RCS's predecessor entity and that entity's principal. If ABC Learning is successful in that action, it would hold a several right to collect in its own name against RCS. Because each party owns its own claim severally and has the right to collect in its own name against the other, the debts are mutual. Thus, the mutuality requirement for setoff is satisfied.

### (iv) The Debts are Prepetition.

36. The final requirement for valid setoff under section 553 of the Bankruptcy Code is that both debts arose prepetition. RCS's claims and Jury Verdict against ABC Learning arise out of breaches of a contract entered into in June 2008, which breaches occurred shortly thereafter. RCS's claim is unquestionably a prepetition claim. Similarly, ABC Learning's claims arise out of alleged breaches of a separate June 2008 contract occurring during 2008 and 2009. Thus, ABC Learning's claims also unquestionably arose prepetition.

---

[5] A judgment becomes effective when it has been entered or filed by the clerk of the court. Thereafter, the judgment remains in full force and effect even during an appeal. The appealing party can stay execution of the judgment by posing a supercedeas bond pursuant to Rule 7, Ariz.R.Civ.Appellate Proc. 17B ARS; *Ring v. State Farm Mutual Automobile Ins. Co*, 147 Ariz. 32, 708 P.2d 457 (App. 1985).

37. For these reasons, the requirements of setoff are met and "cause" exists to lift the stay to permit RCS to exercise its setoff rights under Nevada law.

WHEREFORE, RCS respectfully requests that the Court enter an order granting it relief from the automatic stay and the terms of any Recognition Order to (i) reduce its Jury Verdict to a final judgment and defend that judgment from any direct or indirect challenge and (ii) setoff of the judgment in the Arizona Action against any liability RCS is determined to have in the Nevada Action.

Dated: July 16, 2010
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

    */s/ Gregory W. Werkheiser*
Gregory W. Werkheiser (No. 3553)
Matthew B. Harvey (No. 5186)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 425-4663

-and-

Daryl M. Williams, Esq.
Michael C. Blair, Esq.
Baird, Williams & Greer, LLP
6225 North 24th Street, Suite 125
Phoenix, Arizona 85016
Telephone: (602) 256-9400
Facsimile: (602) 271-9308

*Counsel for RCS Capital Development, LLC*

3643032.7