# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
A.B.C. LEARNING CENTRES LIMITED n/k/a                            : Chapter 15
ZYX LEARNING CENTRES LIMITED, et al.[1]                          :
                                                                 : Case No. 10- 11711 (KG)
                                                                 : Jointly Administered
Debtors in Foreign Proceedings                                   :
                                                                 :
---------------------------------------------------------------- x  **Docket Ref. No. 85**

## PETITIONERS' OBJECTION TO MOTION OF RCS CAPITAL DEVELOPMENT, LLC FOR RELIEF FROM THE AUTOMATIC STAY AND THE TERMS OF ANY RECOGNITION ORDER TO (I) REDUCE ITS JURY VERDICT TO JUDGMENT AND (II) ALLOW FOR SETOFF

Mr. Peter Walker and Mr. Gregory Moloney, as former administrators and now in their capacities as liquidators (the "Petitioners") and foreign representatives of A.B.C. Learning Centres Limited n/k/a/ ZYX Learning Centres Limited (in liquidation)(Receivers and Managers appointed) ("ABC Learning") and A.B.C. USA Holdings Pty Ltd (in liquidation)(Receivers and Managers appointed) ("ABC Holdings" and, together with ABC Learning, the "Debtors"), who are parties in a foreign proceeding under Australia's *Corporations Act 2001* (Cth) (the "Corporations Act"), file this objection (the "Objection") to the motion (the "Stay Motion")[2] of RCS Capital Development, LLC ("RCS"), pursuant to sections 362(d), 553 and 1522(c) of title 11 of the United States Code (the "Bankruptcy Code"), for an order granting it relief from the automatic stay and the terms of any Recognition Order to permit RCS to (i) reduce its Jury Verdict into a final judgment and defend that judgment from any appeal or challenge thereto and

---

[1] The debtors in these jointly administered cases are A.B.C. Learning Centres Limited n/k/a ZYX Learning Centers Limited and A.B.C. USA Holdings Pty Ltd.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stay Motion.

(ii) setoff of the judgment in the Arizona Action against any liability RCS is determined to have in the Nevada Action; and in support thereof, respectfully state as follows:

## PRELIMINARY STATEMENT

Knowing that recognition of the Australian Proceedings is appropriate, RCS has filed the Stay Motion seeking relief from the automatic stay to effectuate its alleged setoff rights in the Nevada Action and to convert its Jury Verdict to a final judgment in Arizona. RCS asserts throughout the Stay Motion that the Petitioners are seeking to use Chapter 15 as a "sword" and a litigation tactic to prevent RCS from being able to defend itself in the Nevada Action. RCS's position is incorrect. The Chapter 15 cases were filed to stop RCS from proceeding against the Debtors' U.S. assets, as it overtly threatened to do, to the detriment of the Debtors' other creditors.

RCS has already asserted setoff as a defense in the Nevada Action and the Petitioners do not seek to preclude RCS from having its setoff defense adjudicated in that forum. However, the Petitioners do oppose RCS's request that this Court rule on the validity of the setoff defense that RCS asserted in the Nevada Action. RCS's entitlement to setoff and the validity of that defense must be determined by the District Court in Nevada, which is overseeing the Nevada Action, and not by this Court.

Moreover, the Petitioners oppose RCS's request to convert the Jury Verdict into a final judgment **at this time**. Converting the Jury Verdict to a final judgment at this time would force the Debtors to choose between expending considerable funds pursuing an appeal (and possibly having to post a bond) or conceding the merits of the Jury Verdict, which the Debtors believe was wrongly decided. The validity of RCS's claim in Arizona for purposes of setoff in the Nevada Action is an issue that can be put on hold for another day. Before that issue is

addressed, there are several threshold issues in the Nevada Action that need to be resolved that will likely moot the issue of whether RCS possesses a valid claim against ABC Learning.

Assuming, for the sake of argument, that RCS holds a valid claim against ABC Learning, RCS cannot satisfy the other requirements for setoff against ABC Learning in the Nevada Action because (i) the claims asserted by ABC Learning against RCS are not the kind of claims that are subject to a setoff defense, and (ii) "mutuality" is lacking between RCS and ABC Learning regarding their respective claims. The primary claims made by ABC Learning against RCS (as opposed to ACCP) in Nevada are based on fraudulent conveyance and constructive trust theories. In particular, RCS entered into an arrangement with ACCP (RCS's current subsidiary) that resulted in RCS receiving several properties located in Nevada and Virginia -- properties that should have been conveyed to ABC Learning (or its subsidiary) -- for no consideration.

In the unlikely event that RCS can satisfy all of the requirements for setoff and the only remaining issue is the validity of RCS's claim in Arizona, then, and only then, would relief from the stay be appropriate to permit conversion of the Jury Verdict to a final judgment and to permit the Debtors to decide whether or not to pursue an appeal.

In short, RCS's request for relief from the stay is premature and granting such relief at this time would greatly prejudice the Debtors. Maintaining the stay with respect to the Arizona Action while the Nevada Action is being adjudicated is in the best interest of the Debtors and their creditors, and would further the interests of judicial economy and the bankruptcy objective of preserving and maximizing the Debtors' estates.

### RESPONSE

1. RCS seeks relief from the automatic stay to (a) effectuate setoff in the Nevada action and (b) convert the Jury Verdict to a final judgment in furtherance of its potential setoff defense. As the movant, RCS bears the burden of showing that cause exists for relief from the

automatic stay. See In re the Score Board, Inc., 238 B.R. 585, 593 (D. N.J. 1999) (noting that the party seeking to lift the stay "has the initial burden of showing a legally sufficient basis, or cause, for lifting the automatic stay."). Such relief is available only in extraordinary circumstances. See In re Mu'min, 374 B.R. 149, 164 (Bankr. E.D. Pa. 2007), citing In re Brown, 311 B.R. 409, 412-13 (E.D. Pa. 2004). Here, RCS has not shown that relief from the stay is appropriate.

I. **Conversion of the Jury Verdict to a Final Judgment Requires Relief from the Automatic Stay**

2. As a preliminary matter, RCS is incorrect in asserting that it need not obtain relief from the automatic stay before converting the Jury Verdict into a final judgment. Although bankruptcy courts have developed a "ministerial exception" to the automatic stay, conversion in Arizona of the Jury Verdict into a final judgment is not a "purely ministerial" action. An action is "ministerial" only if it is essentially clerical in nature, and requires no deliberation, discretion or judicial involvement. See Bonilla v. Trebol Motors Corp., 150 F.3d 77, 86 (1st Cir. 1998) (noting the existence of the "automatic stay's narrow exception for 'ministerial' actions"); In re Best Payphones, 279 B.R. 92, 98 (Bankr. S.D.N.Y. 2002) (holding that actions are ministerial only if they are essentially clerical in nature); In re Pettit, 217 F.3d 1072, 1080 (9th Cir. 2000) (noting that "ministerial acts or automatic occurrences that entail no deliberation, discretion or judicial involvement do not constitute continuations" of judicial proceedings that would violate the automatic stay). In contrast, any action that requires any amount of judicial discretion is not ministerial in nature. See Trebol, 150 F.3d at 86.

3. The Third Circuit Court of Appeals has already considered and duly rejected the argument advanced by RCS that conversion of a jury verdict to a final judgment is ministerial in nature. In Constitution Bank v. Tubbs, 68 F.3d 685 (3rd Cir. 1995), the court dismissed an

4
YCST01:9981256.1                                                                069516.1001

appeal for lack of entry of a valid judgment order where the lower court converted a prepetition jury verdict against a debtor into a judgment postpetition, without the plaintiff first obtaining relief from the automatic stay. Accordingly, RCS is without question required to seek and obtain relief from the automatic stay before it may seek to convert the Jury Verdict into a final judgment.

4. Additionally, there are several outstanding issues that must be resolved before the Jury Verdict may be converted to a final judgment, including rendering decisions on applications for attorneys' fees, costs, prejudgment interest and the form of judgment. See Stay Motion ¶¶ 11, 16. Arizona law requires that the court rule on the application for attorneys' fees before it may enter a final judgment. See Stay Motion ¶ 11; Ariz. R. Civ. P. 58(g). As RCS has also noted, these applications are currently being contested. See Stay Motion ¶ 19 n. 2. These open issues require the application of judicial discretion and therefore preclude a finding that converting the Jury Verdict to a final judgment is a merely ministerial act.

## II. The Motion Should Otherwise be Denied at this Time

### A. This Court Should Not Grant Relief from the Stay for RCS to Effectuate Setoff

#### i. Setoff Should be Determined by the Nevada Court

5. RCS is requesting that this Court modify the automatic stay to permit it to **exercise**, rather than merely assert, its alleged setoff rights in the Nevada Action. See Stay Motion ¶¶ 3, 13, 37. This request necessarily requires that this Court make a determination as to the validity and merits of RCS's setoff defense. Such a request must be rejected.

6. Section 553(a) of the Bankruptcy Code does not create an independent federal right of setoff, but merely preserves whatever setoff rights may exist under applicable state law. Citizens Bank v. Strumpf, 516 U.S. 16, 18 (1995). Here, Nevada law applies in the Nevada

Action and the merits and validity of any setoff defense that RCS may have must be considered and determined by the District Court in Nevada overseeing the Nevada Action.

7. RCS has not, because it cannot, cited a single case in which a bankruptcy court has ruled on the merits of a setoff defense in connection with a lawsuit pending in another jurisdiction.[3] Instead, a defendant's entitlement to setoff must be determined by the court that enters judgment against that party, which here, with respect to RCS, would be the Nevada District Court. See Tootle-Weakley Millinery Co. v. Billingsley, 74 Neb. 531, 105 N.W. 85 (Neb. 1905) ("The rule is that the party desiring the setoff must move in the court where the judgment against him was recovered, because that is the court that controls the judgment."); Kristeller v. First Nat. Bank, 119 N.J.L. 570, 197 A. 17 (N.J. 1938).

8. The farthest that bankruptcy courts have gone is to permit a third-party defendant relief from the automatic stay to assert a setoff defense in a lawsuit brought by a debtor in another jurisdiction. This standard is born out by the very cases cited by RCS. See e.g. Bernstein v. IDT Corp., 76 B.R. 275, 281 (dismissing certain of a creditors setoff and counterclaims while allowing others to be asserted in a separate plenary proceeding and making no decision as to the enforceability of those claims); Gruber v. Victor, 1996 WL 492991, *5 (S.D.N.Y. 1996) (finding that the automatic stay does not prevent the filing of counterclaims, but making no decision whatsoever regarding the assertion or viability of setoff rights); Bohack Corp. v. Burden (In re Bohack Corp.), 599 F.2d 1160, 1168 (2d Cir. 1979) (affording a party relief from stay to pursue a counterclaim potentially leading to setoff, but not deciding the merits of that setoff defense); In re Gregg, 371 B.R. 817 (Bankr. E.D. Tenn. 2007) (granting a creditor

---

[3] Serious jurisdictional questions exist as to whether this Court has the authority to rule on the merits of RCS's alleged setoff defense in the Nevada Action. For example, it is unclear whether the Nevada Action would be considered a "core proceeding" under 28 U.S.C. § 157.

YCST01:9981256.1     069516.1001

relief from stay to effect setoff against a proof of claim filed in the bankruptcy case, and not as a defense in a separate proceeding). In short, the cases cited by RCS provide no basis for a finding that this court should make a decision on the viability of RCS's potential setoff defense in the Nevada Action.

9. Here, relief with respect to the Nevada Action is not necessary because RCS has already asserted its setoff defense and that defense is preserved. Despite RCS's erroneous assertions to the contrary, the Petitioners do not seek to preclude RCS from having its setoff defense adjudicated in the Nevada Action. Indeed, the Petitioners have added language to the proposed recognition order clarifying that recognition of the Australian Proceedings will not enjoin or otherwise prevent the Debtors from commencing or continuing any action or legal proceeding against any third party or enjoin or otherwise prevent any such third party from asserting defenses and taking discovery of the Debtors in connection with any such action or legal proceeding. A cumulative blackline of the proposed recognition order, including, in paragraph 4(b), the language regarding RCS's ability to assert setoff as a defense in the Nevada proceeding, is attached hereto as Exhibit "A".

10. To be clear, what the Petitioners oppose **at this time** is the entry of a final judgment in the Arizona Action because it will require the Debtors to either: (i) concede the merits of RCS's claim arising from the Arizona Action, which they are not prepared to do; or (ii) expend considerable funds from the estate to pursue an appeal (and possibly post a bond) to challenge the merits of that claim. Such an appeal will require a considerable expenditure of the Debtors' resources -- which would otherwise be used to pay creditors -- in order to resolve a dispute that will likely be mooted by the outcome of the Nevada Action. The Petitioners' reasons

7

for opposing the entry of a final judgment in the Arizona Action are set out further at paragraphs 24-34 below.

11.     Even if this Court was the appropriate forum to adjudicate the parties' setoff rights, it would be inappropriate for this Court to decide such rights at this juncture. From a procedural standpoint, the merits of a setoff claim should not be decided in the context of a motion for relief from stay, even where it is undisputed that the court would otherwise have the authority to hear and decide such claims. See Luz Intern., Ltd. v. Biggs (In re Luz Intern., Ltd.), 219 B.R. 837, 843 (9th Cir. B.A.P. 1998) (reversing and remanding a bankruptcy court's decision authorizing enforcement of setoff rights on the grounds that the bankruptcy court "committed procedural error in determining parties' setoff rights in the context of a motion for relief from stay."). Motions for relief from stay are expedited procedures that are not intended to "involve an adjudication of the merits of claims, defenses or counterclaims, but simply determine whether the creditor has a colorable claim to property of the estate." Id. at 842 (citing Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740 (9th Cir. 1985), cert. denied, 474 U.S. 828, 88 L. Ed. 2d 72, 106 S. Ct. 88 (1985)).

12.     The Nevada Court is the appropriate court to determine the validity of any setoff claim that RCS may have and this Court should not lift or modify the automatic stay to permit RCS to effectuate setoff.

### ii.     RCS Cannot Satisfy the Requirements for Setoff

13.     Although RCS's request that this court adjudicate its setoff rights in the context of a motion for relief from stay is clearly inappropriate, the requested relief would be unavailable even if this Court were the proper forum. RCS cannot satisfy the requirements for setoff under the laws of Nevada or any other state because there is no mutuality of obligation between ABC Learning and RCS.

14. In Nevada, setoff is an equitable remedy that should only be granted when justice so requires to prevent inequity. Aviation Ventures, Inc. v. Joan Morris, Inc., 121 Nev. 113, 119, 110 P.3d 59, 63 (2005). Generally speaking, the decision to permit setoff of one judgment against another is left to the discretion of the court. See, e.g., Great Am. Ins. Co. v. Fred J. Gallagher Const. Co., 16 Ariz. App. 479, 494 P.2d 379 (Ariz. Ct. App. 1972) (holding that setoff of mutual judgments rests within the sound judicial discretion of court); Helstein v. Schmidt, 229 Mo. App. 275, 78 S.W. 2d 132 (1935) ("The mere existence of the cross judgments is not sufficient ground" for setoff); Widick v. Phillips Petroleum Co., 180 Okla. 432, 70 P. 2d 474 (1937) ("The right to set off judgments is based upon strictly equitable principles, and the mere existence of mutual judgments does not entitle a party, as a matter of right, to an order directing a setoff, but such setoff is allowed only when it will promote substantial justice, and the right will not be exercised in cases wherein it would be inequitable to do so.").

15. Under Nevada law, debts may only be set off if they are "mutual." See Aviation Ventures, 121 Nev. at 120, 110 P.3d at 63. Debts are mutual if "they are due to and from the same person in the same capacity." In re SemCrude, L.P., 399 B.R. 388, 393 (Bankr. D. Del. 2009) aff'd, 2010 WL 1737103 (D. Del. Apr. 30, 2010) (citing Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002)).

16. RCS alleges that its claims in the Arizona Action and the potential claims of ABC Learning in the Nevada Action satisfy the mutuality requirement because there is an identity of interest between the parties. However, RCS's analysis is at best incomplete -- and consequently is fatally flawed -- in that it utterly ignores the requirement that parties' obligations to each other must exist "in the same capacity" to be subject to setoff. In re SemCrude, 399 at 393.

17.  Where parties to otherwise mutual debts are identical, but stand in different relationships in various transactions, mutuality does not exist and setoff is impermissible. See In re Bay State York Co., Inc., 140 B.R. 608, 614 (Bankr. D. Mass. 1992); see also In re Mastroeni, 57 Bankr. 191 (S.D.N.Y. 1986) (holding that a bank cannot set off monies deposited by a debtor in individual retirement accounts against a debt owed by the debtor to the bank, because the bank holds the debtor's deposits in the capacity of a trustee, and not as a creditor of the debtor/depositor); In re McDaniel, 41 Bankr. 132 (Bankr. W.D. Tex. 1984) (same); In re Brendern Enters., Inc., 12 Bankr. 458 (Bankr. E.D. Pa. 1981) (holding that where a debtor sent particular equipment to a creditor for repair, the equipment represented a bailment, thereby precluding the creditor from applying the value of the equipment against the debt that the debtor owed the creditor).

18.  RCS stands in different capacities with respect to the obligations at issue in the Arizona and the Nevada Actions, and consequently such obligations are not subject to setoff. In the Arizona Action, RCS's claim against ABC Learning arises from a breach of contract under which ABC Learning is a guarantor. Thus, there is direct privity between RCS and ABC Learning. This is very different than the claims that ABC Learning has asserted against RCS in the Nevada Action. In the Nevada Action, ABC Learning has asserted a breach of contract claim, but that claim is against ACCP (RCS's current subsidiary), not RCS. The sum and substance of that claim is that ABC Learning advanced approximately AUD$41 million to ACCP as a down payment for the purchase of certain properties that ACCP was to convey pursuant to a deed of acknowledgement. ACCP breached its obligations under the contract and failed to transfer the properties to ABC Learning or otherwise pay back the AUD$41 million. Instead, ACCP took certain of the properties that were to be conveyed to ABC Learning and

transferred them to RCS for no consideration. ABC Learning believes, and has alleged in the Nevada Action, that the transfers from ACCP to RCS were fraudulent transfers that should be avoided or, in the alternative, give rise to a constructive trust in favor of ABC Learning.[4]

19. RCS stands in a different capacity with respect to the fraudulent conveyance and constructive trust claims that ABC Learning has asserted in the Nevada Action, than it does with respect to the direct breach of contract claims at issue in the Arizona Action. In the case of the Nevada Action, RCS is merely the trustee of a constructive trust held for the benefit of ABC Learning. In the Arizona Action, RCS is in privity with ABC Learning. It is well established that where the debt of an entity seeking setoff is in the nature of a trust, there is no mutuality. Western Dealer Management, Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp., Inc.), 473 F.2d 262, 265 (9th Cir.1973), cert. denied, 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973) ("[W]here the liability of one claiming a set-off . . . is in the nature of a trust, the requisite mutuality of debts and credits does not exist . . . ."); In re Ross-Viking Merchandise Corp. (Ross-Viking Merchandise Corp v. American Cyanamid Co., Lederle Div.), 151 B.R. 71, 74 (Bank. S.D.N.Y. 1993) This rule is in accord with longstanding Supreme Court precedent. See Libby v. Hopkins, 104 U.S. 303, 26 L.Ed. 769 (1881) (funds held in trust for a particular purpose may not be set off against creditor's claims). See also In re Bevill, 896 F.2d 54, 57-58 (3d Cir. 1990) (finding that where a creditors holds property of a debtor in trust, such property may not be used to effectuate setoff because the creditor's obligation to return the property is not a "debt").

20. It is also well established that fraudulent conveyance claims are not subject to setoff. See In re Acequia, Inc., 34 F.3d 800, 817 (9th Cir. 1994); see also In re United Energy

---

[4] Notably, the fraudulent transfers between RCS and ACCP occurred shortly after RCS filed the Arizona Action on October 20, 2008.

Corp., 944 F.2d at 597 ("It is true that a fraudulent conveyance cannot be offset against or exchanged for a general unsecured claim."); Mack v. Newton, 737 F.2d 1343, 1366 (5th Cir. 1984) ("The reason [for the 'no setoff' rule] is, to permit this to be done would defeat the right to recover the [conveyance] and render the statute futile. In such a case the transaction is single [as opposed to mutual], and results in a depletion of the fund that would otherwise have gone to creditors. . . . [T]he right to offset is denied, because the estate has been depleted to the detriment of creditors of like class, and to allow the right of set off would perpetuate the depletion.") (quotation omitted); Bustamante v. Johnson (In re McConnell), 934 F.2d 662, 667 (5th Cir. 1991) ("Section 553(a) setoffs . . . do not apply to actions by the Trustee to recover fraudulent transfers: It would defeat the purpose of the Bankruptcy Act's provisions relating to fraudulent transfers to allow [creditors] to offset the value of the property thus transferred to them by the amount of their unsecured claim against [the debtor].") (internal quotations omitted).

21. Here, ABC Learning's primary claims against RCS in the Nevada action are based on fraudulent conveyance and constructive trust theories. Therefore, based on the well-established and undisputed principles that no mutuality exists where debts are either (a) based on fraudulent conveyance or (b) in the nature of a trust, RCS is unable to set off its claims in the Arizona Action against ABC Learning's claims in the Nevada Action. To the extent that RCS now chooses to dispute these fundamental and logical principles, it must make its case in the proper forum: the Nevada Court.

    iii.    <u>RCS Seeks to Circumvent the Prohibition against Triangular Setoffs</u>

22. It is well-established that triangular setoffs -- canceling debts between two parties based on a countervailing debt between one party and the other party's affiliate, parent or subsidiary -- are generally impermissible. See In re SemCrude, 399 B.R. at 393 (finding triangular setoffs generally impermissible); Sherman v. First City Bank of Dallas (In re United

12

Sciences of Am., Inc.), 893 F.3d 720, 723 (5th Cir. 1990) (same); Elcona Homes Corp. v. Green Tree Acceptance, Inc. (In re Elcona Homes Corp.), 863 F.2d 483, 486 (7th Cir. 1988) (same); Wooten v. Vicksburg Refining, Inc. (In re Hill Petroleum Co.), 95 B.R. 404, 411 (Bankr. W.D. La. 1988) (same). The subject of the Nevada Action is the fraudulent transfer of property from ACCP to RCS. Such property should properly have been conveyed to ABC Learning (or its affiliate), rather than stripped from ACCP by RCS in furtherance of a self-help remedy. The timing of the transfers between RCS and ACCP at the end of 2008 (shortly after the Arizona Action was commenced) and the setoff claims now advanced by RCS strongly suggest that one purpose of the fraudulent transfers was to manufacture a defense (i.e., setoff) against payment of the monies advanced to ACCP by ABC Learning.[5]

23. Here, such a setoff would afford RCS a disproportionate recovery as a creditor of ABC Learning, to the direct detriment of ABC Learning's other creditors. It would be manifestly perverse to grant RCS the benefit of its fraudulent conduct by allowing such an artificial setoff. Indeed, the perverse nature of such a result, and the obvious and widespread abuse that would follow the adoption of such a rule, is precisely the reason that courts consistently hold setoff inapplicable not only to debts that result from fraudulent conveyance, but also from any other "tortious, fraudulent, or similarly unlawful conduct by the party seeking setoff." In re Windsor Communications Group, Inc., 79 B.R. 210, 217 (E.D. Pa. 1987).

### B. Relief to Convert the Jury Verdict to a Final Judgment Should Not be Granted at this Time

24. In conjunction with its request to modify the automatic stay to permit it to effectuate its setoff rights, RCS has requested that the Court modify the automatic stay to permit

---

[5] Notably, in a plenary chapter 11 case, section 553(a)(3) of the Bankruptcy Code would prohibit RCS from asserting or exercising a right of setoff under these circumstances.

it to convert its Jury Verdict into a final judgment. RCS's request that the stay be modified is premature and, if granted, would cause significant prejudice to the Debtors and the Debtors' estates.

25. The only reason to permit RCS to convert the Jury Verdict to a final judgment is for purposes of its setoff defense in the Nevada Action. As discussed above, there are numerous threshold issues to be determined in the Nevada Action that could moot the issue of whether RCS's claim arising in Arizona is valid.

26. RCS correctly notes that Section 362(d) of the Bankruptcy Code allows the court to grant relief from the stay for cause. 11 U.S.C. § 362(d). The party seeking relief from the stay has the initial burden of proving a *prima facie* case of entitlement to relief. See In re Score Board, 238 at 593.

27. The lifting of the automatic stay for cause must be determined on a case-by-case basis following an examination of the totality of the circumstances. In re SCO Group, Inc., 395 B.R. 852, 857 (Bankr. D. Del. 2007). In Delaware, courts apply a three-part balancing test to evaluate whether cause for relief from stay exists. Id. at 857. Courts consider (a) whether any great prejudice to either the bankrupt estate or the debtor will result; (b) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and (c) the probability of the creditor prevailing on the merits. Id. In deciding whether relief from the stay is appropriate, courts also often consider the impact of such relief on the policies underlying the automatic stay, including, (a) whether relief would result in a partial or complete resolution of the issues; and (b) whether litigation in another forum would prejudice the interests of other creditors. See In re Sonnax Indus., Inc. v. Tri Component Prods. Corp., 907 F.2d 1280, 1287 (2nd Cir. 1990); SCO Group, 395 B.R. at 854.

28.  RCS alleges that converting the Jury Verdict to a final judgment will not prejudice the Debtors in any way because all briefing is completed and the Arizona Action has been fully litigated. See Stay Motion ¶ 19. Specifically, RCS alleges that "ABC does not need protection from the expense of defending itself in litigation as the litigation against it has already concluded." Id. at ¶ 15.

29.  RCS's argument assumes that the Debtors are willing to waive their right to challenge the verdict on appeal if any stay was lifted. This is incorrect. The Debtors do not believe that the Jury Verdict was correctly decided and do not concede the validity of RCS's claim in Arizona.

30.  If, in fact, the Jury Verdict is converted into a final judgment, then the Debtors would be forced to expend considerable funds pursuing an appeal (and possibly having to post a bond) or concede the merits of the Jury Verdict. Forcing the Debtors to spend limited estate resources with respect to a litigation which may be moot would be prejudicial and would be contrary to the objectives of Chapter 15, namely to promote the fair and efficient administration of cross-border insolvencies. See 11 U.S.C. § 1501.

31.  By contrast, RCS's claim that it will be prejudiced if this Court leaves the automatic stay undisturbed, at the present time, is illusory. Several issues in the Nevada Action must be resolved before RCS could potentially realize any benefit from modifying the automatic stay. For example, setoff is only relevant if ABC Learning has a valid claim against RCS in the Nevada Action, and that issue has not yet been determined. Moreover, the validity of RCS's claim in Arizona for purposes of successfully asserting a setoff defense is only relevant if RCS can satisfy the other requirements for setoff. If ABC Learning is at some point deemed to have a valid claim against RCS in the Nevada Action, and it is additionally determined that a final

judgment in the Arizona Action would give rise to a meritorious defense in favor of RCS then, at that time, it may be appropriate to modify the automatic stay. Until such issues have been resolved, RCS will realize no benefit whatsoever from a modification of the automatic stay. Given that RCS will receive no benefit from modifying the automatic stay until such time as the relevant issues in the Nevada Action are resolved, RCS will not be prejudiced by maintaining the status quo in the Arizona Action.

32. Likewise, RCS's contention that ABC Learning filed the Chapter 15 cases to thwart RCS's defense demonstrates either disingenuousness or a fundamental misunderstanding of the proceedings thus far. RCS alleges that "[i]t is beyond dispute that ABC is actually using the Chapter 15 filing to defeat RCS's defenses to the Nevada Action." See Stay Motion ¶ 24. RCS bases its position on a report filed by the Petitioners (the "Administrators' Report") in which the Petitioners state that "RCS is unable to set [its award in Arizona] off against the Receivers and Managers' claim for $US 40 million against ACCP, which is being pursued in Nevada." See id; Exhibit C to Stay Motion. RCS's reliance on the Administrators' Report is misplaced. The Administrators' Report merely advances the well established principle that setoff requires mutuality between the same parties, *i.e.*, RCS cannot use setoff with respect to a claim that ABC Learning has against **ACCP** (which is a different entity than RCS). Notably, RCS fails to highlight the very next sentence of the Administrators' Report, which sets forth the true purpose of the Chapter 15 filings:

> In order to prevent any attempt by RCS to access A.B.C.'s shares in Learning Care Group, the Administrators at the request of the Receivers and Managers, have sought Chapter 15 US Bankruptcy Act recognition of the A.B.C. Group's Administration in the US. This will help prevent any creditor in the US from attempting to seize any of A.B.C. Group's US assets.

Id. In short, the Petitioners do not seek to use the Chapter 15 cases as a sword to prevent RCS's setoff defense from being adjudicated in the Nevada Action. As the very language quoted by RCS indicates, the purpose of the Chapter 15 cases is to protect the assets of the ABC Group from seizure by U.S. creditors to the detriment of other creditors.

33. Finally, RCS's complaints of unfairness should fall on deaf ears. RCS chose to continue to pursue the Arizona Action against ABC Learning after it knew that ABC Learning had become the subject of the Australian Proceedings and that creditors of ABC Learning were subject to a moratorium in place in Australia that has a world-wide effect. Like other creditors of ABC Learning, RCS could have (and still can) file a proof of debt in Australia and pursue its claims in that forum. Instead, RCS opted to circumvent those procedures in an attempt to extract an unfair advantage at the expense of all other creditors of ABC Learning.

34. Waiting for the results of the Nevada Action before allowing RCS to seek to lift the automatic stay, and inflict the attendant costs on the Debtors' estates and creditors, is in the best interests of all parties involved. However, as noted above, it is not the Petitioners' burden to show that maintaining the stay is in the best interests of all creditors. Rather, RCS bears the burden of showing, among other things, that "hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." In re SCO Group., 395 B.R. at 857. RCS cannot do so. Here, the court should balance the illusory prejudice to RCS that will result from maintaining the stay until such time as lifting the stay could actually provide a benefit to RCS against the substantial prejudice to the Debtors that would result from forcing them to expend significant sums in what is likely to prove to be an unnecessary appeal process. As the Debtors and their creditors will be greatly prejudiced by a decision to lift the stay in favor of RCS, and the benefit to RCS does not clearly outweigh the harm that will be

inflicted on the Debtors, RCS's request to lift the stay should be denied until at least such time as the relevant outstanding issues in the Nevada proceeding have been resolved.

## CONCLUSION

For the foregoing reasons, the Petitioners respectfully request that this Court (a) deny the relief requested in the Stay Motion, and (b) grant the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
July 30, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ryan M. Bartley*
Joel A. Waite (No. 2925)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

CHADBOURNE & PARKE LLP
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Members of the Firm
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

Attorneys for the Petitioners