## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| ABC LEARNING CENTRES LIMITED n/k/a | ) | |
| ZYX LEARNING CENTRES LIMITED & | ) | Case No. 10-11711 (KG) |
| A.B.C. USA HOLDINGS PTY LIMITED | ) | |
| Debtors in Foreign Proceedings | ) | Jointly Administered |
| | ) | |
| _____ | ) | **Re Dkt Nos. 7, 8, 11, 57, 85** |

## OPINION ON DEBTORS' PETITION FOR RECOGNITION &
## RCS CAPITAL DEVELOPMENT, LLC'S MOTION FOR RELIEF FROM STAY

### Counsel for ABC Learning Centres Ltd. & A.B.C. USA Holdings Pty Ltd.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Joel A. Waite, Esquire
Ryan M. Bartley, Esquire
Wilmington, DE 19801

CHADBOURNE & PARKE, LLP
Howard Seife, Esquire
Andrew Rosenblatt, Esquire
New York, NY 10112

### Counsel for RCS Capital Development, LLC

MORRIS, NICHOLS, ARSHT
& TUNNELL, LLP
Robert J. Dehney, Esquire
Gregory W. Werkheiser, Esquire
Matthew B. Harvey, Esquire
Wilmington, DE 19801

BAIRD, WILLIAMS, & GREER, LLP
Daryl M. Williams, Esquire
Michael C. Blair, Esquire
Phoenix, AR 85016

# I. **INTRODUCTION**

The Court has before it two matters: Debtors' petition seeking recognition of certain insolvency-related legal proceedings in Australia under Chapter 15 of Title 11 of the U.S. Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code") and a motion for relief from stay filed by RCS Capital Development, LLC.

On May 26, 2010, Debtors filed petitions seeking recognition pursuant to §§1515 and 1517 of the Bankruptcy Code[1] of voluntary administration proceedings (the "Voluntary Administration Proceedings") then ongoing in Australia pursuant to Australia's Corporations Act of 2001 (Cth) (the "Corporations Act"), of ABC Learning Centres Limited, n/k/a ZYX Learning Centres Ltd. ("ABC Learning"), and its wholly owned subsidiary A.B.C. USA Holdings Pty. Limited ("ABC Holdings" and, collectively, the "Debtors") (the "Petitions," D.I. 1)[2]. Subsequent to the filing of the Petitions, Debtors' creditors converted the Voluntary Administrations to liquidations (the "Liquidation Proceedings"), as provided for by the Corporations Act. Debtors' provided proper notice to this Court of their entry into liquidation and the Court now considers their Petitions as requests for recognition of the ongoing Liquidation Proceedings.

Debtors seek recognition of the Liquidation Proceedings under § 1517 as "foreign main proceedings," as defined by § 1502(4), or, in the alternative, as "foreign nonmain proceedings," as defined by § 1502(5). This Court's recognition of the Liquidation Proceedings as foreign main proceedings would entitle Debtors to certain protections of the Bankruptcy Code, including the

---

[1] All section numbers refer to the Bankruptcy Code, unless otherwise specified.

[2] ABC Learning was filed under Case No. 10-11711; ABC Holdings was filed under Case No. 10-11712. Upon Debtors' motion, the cases are jointly administered.

automatic stay provided for by § 362. Recognition of the Liquidation Proceedings as foreign nonmain proceedings would not trigger an automatic stay, but would permit the Court to impose one, which Debtors have requested.[3]

RCS Capital Development, LLC ("RCS"), an Arizona limited liability company, objects to the Petition (the "RCS Obj.," D.I. 57). RCS asserts that the Liquidation Proceedings are not "foreign proceedings" recognizable under Chapter 15 of the Bankruptcy Code because they do not meet the threshold factors set forth in § 101(23). Specifically, RCS argues that the Liquidation Proceedings are not collective in nature and are not supervised by a foreign court. In addition, RCS argues that the Court deny recognition of the Liquidation Proceedings as violative of U.S. public policy, pursuant to § 1506.

On May 14, 2010, RCS received a favorable jury verdict (the "Arizona Verdict") against Debtor ABC Learning and its non-debtor subsidiary ABC Development Learning Centres (USA), a Delaware corporation ("ABC Delaware") in certain litigation (the "Arizona Litigation") in The Superior Court of the State of Arizona In and For the County of Maricopa (the "Arizona State Court") (RCS Obj. at 3). Subsequently, Debtor ABC Learning and ABC Delaware filed a complaint against RCS, American Childcare Properties, Inc., and Kenneth Krynski alleging, in part, breach of contract, fraud, and unjust enrichment, which is currently pending in The District Court, Clark County, Nevada (the "Nevada State Court") (the "Nevada Litigation") (RCS Obj. at 3). RCS filed a motion in the instant case requesting modification of any stay the Debtors receive as a result of

---

[3] *See* 11 U.S.C. § 1520 (the automatic stay of 11 U.S.C. § 362 applies to a Chapter 15 debtor upon recognition of a foreign proceeding as a foreign main proceeding) and 11 U.S.C. § 1521 (the Court may stay certain actions against a debtor's assets, right, obligations or liabilities upon recognition of a foreign proceeding as either a foreign main proceeding or as a foreign nonmain proceeding).

recognition of the Liquidation Proceedings to permit RCS to convert the Arizona Verdict into a judgment (the "Arizona Judgment") and to assert a setoff based on the Arizona Judgment as a defense in the Nevada Litigation (the "Lift Stay Motion," D.I. 85).

Upon consideration of the evidence presented, and for the reasons stated below, the Court grants Debtors' Petitions and recognizes the Liquidation Proceedings as foreign main proceedings. Furthermore, the Court grants RCS's Lift Stay Motion for the limited purposes of (1) allowing RCS to convert its verdict in the Arizona Litigation to a judgment and (2) preserving RCS's right to assert the Arizona Judgment as a setoff in the Nevada Litigation.

## II. <u>JURISDICTION</u>

The Court has jurisdiction under 28 U.S.C. § 157(b)(1) and § 1334(b) and (d). Venue is proper in this Court under 28 U.S.C. § 1410. The Debtors' petition for recognition of a foreign proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); RCS's motion for relief from stay is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

## III. <u>FACTS</u>

### A.    **Debtors' Business Operations**

Debtor ABC Learning is the parent company of thirty-eight subsidiaries (collectively, the "ABC Group"), including Debtor ABC Holdings and non-debtor ABC Delaware, ABC Learning's co-defendant and co-plaintiff in the litigation with RCS in Arizona and Nevada, respectively. Prior to the commencement of the Voluntary Administration Proceedings, ABC Group owned and operated child care centers primarily in Australia (approximately 1,045 centers), as well as in New Zealand, the United Kingdom, Canada, and the U.S.; "processed" approximately 100,000 child care transactions weekly; and employed approximately 15,000 full-time workers and a significant number

of part-time and contractual employees.  Declaration of Peter Walker ("Walker Decl.") at 3.  The ABC Group's business operations were funded, in part, by loans from eight banks (the "Bank Syndicate").  *Id.* These loans are secured by substantially all of the ABC Group's assets, with an outstanding balance as of May 2010, of approximately $1 billion.[4] *Id.*

ABC Group conducted business in the U.S. through its direct interest in ABC Delaware and its indirect interest in Learning Care Group (US) Inc. ("LCG U.S.").  Walker Decl. at 4.  ABC Delaware developed childcare centers in the U.S.:

> [ABC Delaware] has no principal places of business or employees in the United States.  The management and business decisions relating to [ABC Delaware] are made by ABC Group's management in Australia. [ABC Delaware], amongst other things, contracted with developers for the construction and development of childcare facilities located primarily in Florida, South Carolina, Nevada, Virginia, Arizona, Colorado and Georgia.  Once developed, the contracts usually provided for [ABC Delaware] to purchase the childcare facilities. . . .
> (Walker Decl.at 4)

LCG U.S., through various subsidiaries, owns and operates child care centers throughout the United States.  *Id.*  It was acquired by the ABC Group in 2006 and subsequently sold a majority interest to a third-party corporation.  *Id.*  ABC Group currently holds a 40% minority interest in  LCG U.S. through ABC Holdings.  *Id.*  Debtor ABC Learning, as the parent company of the ABC Group, wholly owns Debtor ABC Holdings.  Both Debtors are incorporated in Australia and listed on the Australian Stock Exchange.  *Id.* at 11.

---

[4]  The record does not specify whether the applicable denomination is Australian or U.S. dollars.  However, the difference in amount is not significant.  Based upon the exchange rate at the time of this Opinion, 1 U.S. dollar = 1.0228 Australian dollars.

**B.     Australian Voluntary Administration Proceedings**

On November 6, 2008, the boards of directors of Debtor ABC Learning and its thirty-eight subsidiaries resolved that the companies were likely to become insolvent and should enter voluntary administration, pursuant to the Corporations Act.  Walker Decl. at 5.  In conformity with these resolutions, the directors appointed Peter Walker and Greg Moloney as administrators for each of the entities  (the "Administrators" and the "Petitioners").  Walker Decl. at 1 and 5; Transcript of August 9, 2010 hearing ("Tr. 8/9") at  11 (Testimony of Greg Moloney); Petitioners' Exhibits 1-2. The commencement of the Voluntary Administration Proceedings stayed creditors from initiating or continuing collection actions.  Walker Decl. at 5; Declaration of John Kenneth Martin ("Martin Decl.") at 6-7; *See* Corporations Act, Part 5.3A, Div. 6.

The Corporations Act requires that companies in voluntary administration conduct two creditors' meetings.  At the first meeting, creditors determine 1) whether a committee of creditors should be formed and 2) whether to remove the administrators appointed by the board of directors and appoint alternate administrators.  Walker Decl. at 7.  The first meeting in the instant cases was held on November 18, 2008, and the creditors elected to form a creditors committee and to continue with Messrs. Walker and Moloney as the Administrators. Tr. 8/9 at 11 (Moloney).

The Debtors and the other ABC Group entities were in Voluntary Administration at the time the Petitions were filed in this Court on May 25, 2010.  The Voluntary Administrations continued until the second meeting of creditors on June 2, 2010.

## C.    Australian "Winding Up" Proceedings

At the second creditors' meeting for the ABC Group entities, held on June 2, 2010, the creditors resolved to "wind up" (i.e., liquidate) the companies.[5] Tr. 8/9 at 23 (Moloney); Petitioners' Exhibits 3-6.  The creditors appointed the Administrators, Peter Walker and George Moloney, as liquidators (the "Liquidators") and commenced winding up proceedings (the "Liquidation Proceedings").  Petitioners' Exhibits 3-6.  The creditors also created a "committee of inspection" comprised of nine (9) members representing a cross-section of creditors, including general unsecured creditors, the Bank Syndicate, bondholders, employees, and the government of the Commonwealth of Australia.  Tr. 8/9 at 29 (Moloney).  As required by the Corporations Act, the Liquidators timely filed Form 509D – "Notice of special resolution to wind up a company" and Form 505, reporting the appointment of the liquidators, with the Australian Securities & Investments Corporation ("ASIC") for each ABC Group entity.  Petitioners' Exhibits 3-6.

## D.    Australian Receivership Proceedings

The commencement of the Voluntary Administration Proceedings breached the terms of Debtors' loan agreements with the Bank Syndicate. Walker Decl. at 5-6; Tr. 8/9 at 10 (Moloney). In response, the members of the Bank Syndicate exercised their right under the Corporations Act as secured creditors to appoint receivers to represent their interests and commence receivership proceedings (the "Receivership Proceedings") to realize their assets.  *Id*. CBA Corporation Services (NSW) Pty Limited, acting as agent to the Bank Syndicate, appointed Murray Campbell Smith, John

---

[5]  At the second meeting of creditors, the creditors must choose between three possible outcomes for an administration: 1) the company under administration executes a Deed of Company Arrangement; 2) the administration ends and control of the company reverts back to the Board of Directors; or 3) the company be wound up (i.e., liquidated). *See* Corporations Act, § 439C; Supplemental Declaration of Peter Walker at 2.

Patrick Cronin, and Christopher Honey as joint receivers and managers of Debtors (the "Receivers"). Walker Decl. at 6. The Receivership Proceedings were proceeding concurrently with the Voluntary Administrations, and are now proceeding concurrently with the Liquidation Proceedings.

## E.     Arizona Lawsuit

In June, 2008, ABC Delaware entered into a contract with RCS to develop child care centers in the United States. Walker Decl. at 9; Lift Stay Motion at 16. Debtor ABC Learning guaranteed ABC Delaware's obligations under the development contract. RCS brought suit against ABC Learning and ABC Delaware in Arizona State Court for a number of claims, including breach of contract, and sought damages in excess of $107 million. Walker Decl. at 9. On May 14, 2010, following trial, the jury returned a $47 million verdict in favor of RCS. *Id*. The Debtors filed their Petitions twelve (12) days later, at which time the Arizona Verdict had not yet been reduced to judgment. *Id*. RCS seeks relief from stay in part to allow it to reduce its verdict in the Arizona Litigation to judgment.

## F.     Nevada Lawsuit

In March 2009, Debtor ABC Learning and non-debtor ABC Delaware filed the Nevada Litigation, naming RCS as one of the defendants. Walker Decl. at 10. The complaint asserts multiple causes of action including, but not limited to, breach of constructive trust, fraudulent transfer, unjust enrichment, and breach of contract. *Id*. ABC Learning and ABC Delaware seek to recover $30 million or, in the alternative, specific performance to recover certain properties. Walker Decl. at 10; RCS Obj. at 3. The ABC plaintiffs also filed *lis pendins* against the properties subject to the Nevada Litigation. The Nevada Litigation is scheduled for trial in February 2011. Walker Decl. at 10. RCS seeks relief from stay so that it may seek to assert the $47 million favorable verdict

it received in the Arizona Litigation, once the verdict is reduced to judgment, as a defense in the Nevada Litigation.

**G.      Chapter 15 Filing**

On May 26, 2010, the former Administrators and current Liquidators of Debtors commenced the instant case by filing the Petitions and a Motion for Recognition (D.I. 7).  Petitioners seek an order from this Court recognizing the Liquidation Proceedings (originally, the Voluntary Administration Proceedings) as "foreign main proceedings," pursuant to §§ 1502(4) and 1517(b)(1), or, in the alternative, as "foreign nonmain proceeding," under §§1502(5) and 1517(b)(2).

The Petitioners seek recognition of the Liquidation Proceedings of both ABC Learning and ABC Holdings.   According to Petitioners, they have sought recognition for ABC Holdings' Liquidation Proceeding because RCS indicated the possibility of legal actions against LCG U.S., of which ABC Holdings maintains a 40% minority interest, for the collection and enforcement of the Arizona Verdict.   Walker Decl. at 41; *See* letter, dated May 18, 2010 from RCS's counsel to Learning Care Group, et al., Petitioners' Exh. 8.

In its Objection, RCS argues that the Liquidation Proceedings are not foreign proceedings under § 101(23) and, therefore, are ineligible for recognition under Chapter 15.  Alternatively, RCS argues that if the Court determines that the Liquidation Proceedings satisfy the Chapter 15 requirements for recognition, the Court nevertheless should deny recognition as contrary to U.S. public policy, as provided for by § 1506.  RCS also filed a Lift Stay Motion, seeking modification of any stay imposed through the recognition of the Liquidation Proceedings to allow it to reduce the Arizona Verdict to judgment and to assert such judgment as a defense in the Nevada Litigation.  As discussed above, the Court's recognition of the Liquidation Proceedings as foreign main proceedings

would trigger the automatic stay provided by § 362. *Supra* fn. 3. The Court's recognition of the Liquidation Proceedings as foreign nonmain proceedings would not trigger an automatic stay, but would permit the Court to impose a stay**,** which Debtors have requested. *Id*.

## IV. <u>DISCUSSION</u>

Two matters are before the Court: 1) Debtors' Petitions for recognition under Chapter 15 of the Liquidation Proceedings and 2) RCS's Motion for Relief From Stay.

### A. Recognition of the Liquidation Proceedings Under Chapter 15

The Petitioners ask this Court to recognize Debtors' Liquidation Proceedings as foreign main proceedings or, in the alternative, as foreign nonmain proceedings, pursuant to Chapter 15 of the Bankruptcy Code. As a threshold matter, this Court must first determine whether the Liquidation Proceedings are "foreign proceedings" as defined by §101(23), as only "foreign proceedings" are eligible for recognition under Chapter 15. *See* §§ 1501(b)(1), 1515(a), 1517(a). If the Court concludes that the Liquidation Proceedings are foreign proceedings under § 101(23), the Court must then determine whether they meet the requirements for recognition set forth in § 1517(a). In addition, the Court must consider whether recognition of the Liquidation Proceedings is "manifestly contrary to the public policy of the U.S." and therefore should be denied under the public policy exception of § 1506.

### 1. The Liquidation Proceedings Are "Foreign Proceeding(s)" As Defined By § 101(23)

The definition of "foreign proceeding" set forth in § 101(23) reads as follows:

The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the

debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

This definition is comprised of the following seven (7) requirements:

(a) a proceeding;

(b) either judicial or administrative in character;

(c) collective in nature;

(d) in a foreign country;

(e) authorized or conducted under a law related to insolvency or the adjustment of debts;

(f) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

(g) which is for the purpose of reorganization or liquidation.

*See In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009).

RCS objects that the Liquidation Proceeds are not collective in nature and are not subject to the control or supervision of a foreign court. No other objections have been raised. The Court will examine each requirement in turn.

### a. A Proceeding

The United States Bankruptcy Court for the District of Nevada recently ruled that an Australian voluntary winding up proceeding merited recognition under Chapter 15. *In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009).[6] In its opinion, the Nevada Bankruptcy Court developed

---

[6] Betcorp was an Australian corporation that provided gaming and gambling products and services, primarily on-line. The majority of its customers resided in the U.S. Betcorp encountered severe financial difficulties when newly enacted U.S. law prevented Betcorp from receiving funds' transfers from its U.S. customers, effectively cutting off the U.S. Market. 400 B.R. at 271. Betcorp's board of directors voted to liquidate the company through a voluntary wind-up proceeding pursuant to the Corporations Act, and sought recognition of the winding up proceeding in the U.S. Bankruptcy Court for the District of Nevada. A creditor involved in pending U.S. patent litigation with Betcorp objected to recognition. In granting recognition, the Nevada Bankruptcy Court determined that the Australian winding up process was a "foreign proceeding" under § 101(23) and met the requirements for recognition under § 1517 .

a framework for understanding the meaning of "proceeding" in the context of § 101(23):

> [The essence of a "proceeding" is] acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice. In the context of corporate insolvencies, the hallmark of a "proceeding" is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets.
>
> *In re Betcorp*, 400 B.R. at 278.

The Corporations Act is just such a statutory framework. The mechanism for commencing the Liquidation Proceedings, the effect on corporate governance, the duties and responsibilities of the liquidators, the rights of creditors, including priorities – all are governed by Chapter 5 of the Corporations Act. No objections have been raised alleging that the Liquidation Proceedings fail to meet this requirement. This Court finds that the Liquidation Proceedings are "proceedings" under § 101(23).

### b. Judicial Or Administrative In Character

Section § 101(23) requires that a foreign proceeding be judicial or administrative in character. The majority of the Liquidators' tasks are administrative in nature, e.g., collecting assets; distributing assets pursuant to the priorities set forth in the Corporations Act; conducting investigations of possible voidable transactions (e.g., preferences); circulating information to creditors; preparing various required reports; convening meetings. As the court recognized in *Betcorp*, "[a]n Australian voluntary winding up is, generally, a proceeding with an administrative character, although under certain circumstances the proceeding may temporarily become more appropriately characterized as judicial." *Betcorp*, 400 B.R. at 280. A winding up becomes judicial in character whenever the Australian Court exercises its supervisory powers under the Corporations Act. *See infra* part (f).

The Court finds that the Liquidation Proceedings are primarily administrative in character, and at times judicial in character and therefore satisfy this requirement of § 101(23).

### c. Collective In Nature

A proceeding is collective if it considers the rights and obligations of all creditors. *In re Betcorp*, 400 B.R. at 281. "Liquidation is, like bankruptcy, a procedure of an inherently collective nature. . . . The procedure is compulsory, in order to ensure that there is an orderly, cooperative system. The result is that any attempt by a creditor to undermine the collective nature of liquidation is outlawed." *Id.* (quoting the Australian treatise *McPherson's Law of Company Liquidation*, Michael Gronow, at 1-51 (5th ed. 2006)). Various provisions of the Corporations Act reflect the collective nature of liquidation proceedings, e.g., § 501 (liquidator has a duty to consider the rights of all creditors in distributing the corporation's property) and § 555 (subject to priorities, preferences, etc., debts and claims rank equally and are to be paid pro rata).

The facts of this case bear out the collective nature of the Liquidation Proceedings. Sixty-two creditors, amounting to approximately $1.9 billion of debt[7], were represented at the second creditors' meeting, at which the Liquidation Proceedings were commenced. Tr. 8/9 at 29 (Moloney). The election to enter liquidation required the votes of the majority of creditors, in both absolute number and amount of debt. Transcript of June 24, 2010 hearing ("Tr. 6/24") at 43 (Testimony of Scott Hedge, counsel to Liquidators); Martin Decl. at 7. The creditors' committee formed at the second meeting (a "committee of inspection" under Australian law) consisted of nine (9) members representing various types of creditors, including, in part, general unsecured creditors, the Bank Syndicate, and bondholders. Tr. 8/9 at 29-30 (Moloney).

---

[7] *Supra* fn. 4.

RCS alleges that ABC Group's U.S. creditors did not have adequate notice of the Australian proceedings and the related creditors' meeting and were thereby excluded from active participation, rendering the Liquidation Proceedings non-collective. The notice provided to creditors is a proper consideration when assessing the collective nature of a proceeding. *See In re British American Insurance Co., Ltd.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010). However, there is no allegation that the notices provided by the ABC Group entities, the Administrators, and the Liquidators was inadequate under Australian law. Pursuant to orders by the Australian courts, the Administrators notified all known creditors and employees of the first creditors' meetings. Tr. 6/24 at 74 (Hedge). Notice of the second creditors' meeting, at which the creditors placed the ABC Group entities into liquidation, was more extensive: pursuant again to orders by the Australian Courts, the Administrators placed a notification on the Administrators' website; advertised in a national newspaper; and directly notified those creditors that the companies' directors identified in the "Report[s] as to Affairs" and any additional creditors that had come forward. Tr. 6/24 at 74 - 76 (Hedge); Tr. 8/9 at 24 - 25 (Moloney); Australian Court Order at Petitioners' Exh. 11. Petitioners, in their roles as Administrators and then Liquidators, notified approximately 172 non-Australian creditors of the Administration and Liquidation Proceedings, approximately 105 of whom were U.S. creditors. Tr. 8/9 at 35 (Moloney). RCS, specifically, had actual notice of the second creditors meeting. *Id*. at 26 - 27.

Furthermore, the Corporations Act provides creditors with the right to seek court review. Section § 1321 of the Act provides that "a person [including creditors] aggrieved by any act, omission or decision of . . . a liquidator" may appeal to an Australian court and the court "may confirm, reverse or modify the act or decision, or remedy the omission, as the case may be, and make such orders and give such directions as it thinks fit." *See also* § 511 of the Corporations Act and the

discussion at (f), *infra*. If RCS feels aggrieved, it may appeal to the Australian court.

Given that notice was proper under Australian Law, RCS had actual notice of the second creditors' meeting, and RCS may seek redress from the Australian court, the Court finds RCS's objection unpersuasive.

RCS further argues that even though the Petitioners seek recognition of the Liquidation Proceedings, the Court should consider the Petitions as requests for recognition of the Receivership Proceedings because, RCS alleges, the Receivers and Bank Syndicate control the Liquidation Proceedings and are directing them for their own benefit. RCS argues that the Receivership Proceedings "trump" or "dominate" the Liquidation Proceedings, such that the secured creditors are riding roughshod over the rights of all other creditors.[8]

The Court does not agree. Australian law provides for the concurrent existence of Liquidation and Receivership Proceedings. Liquidators and Receivers have clearly delineated roles under the Corporations Act. Liquidators are appointed by the creditors as a whole and are responsible for winding up the affairs of a company and ultimately dissolving it; specific duties include: collecting assets; establishing deadlines for proving claims; distributing assets per the priorities set forth in the Corporations Act; convening required meetings; maintaining records; creating and distributing required reports to various parties, including ASIC; and conducting investigations into possibly voidable transactions. *See, e.g.*, Corporations Act §§ 506 - 509, 533, 539, 556; Tr. 8/9 at 32-33 (Moloney). Receivers, on the other hand, are appointed by a secured creditor and their primary role is to recover secured assets for the benefit of the secured creditor and return any surplus to the company. Martin Decl. at 18. *See, e.g.*, Corporations Act §§ 420, 422, 433.

---

[8] The Petitioners and RCS agree that receivership proceedings are not collective in nature as they are, by design, for the benefit of the secured creditor(s) that commence such an action.

Pursuant to the Corporations Act, the Receivers took control and possession of the A.B.C. Group's assets in which the Bank Syndicate had a security interest and which were in existence at the time the Receivership Proceedings were commenced. The assets were substantially all of the companies' assets. The Receivers are working to realize those assets for the benefit of the Bank Syndicate. Simultaneously, the Liquidators are realizing the assets under their purview, namely, claims related to potentially voidable transactions antecedent to the Liquidation Proceedings, such as preference payments, insolvent trading, and insider transactions. Tr. 8/9 at 41 (Moloney). (The security interests held by the Bank Syndicate are among the potentially preferential transactions that the Liquidators are investigating. *Id*. at 46.) There are no allegations that the Receivers have acted beyond the scope of their authority under the Corporations Act, and no allegations that the Liquidators have failed to discharge their duties under the Corporations Act.

The Court finds that the Receivership Proceedings and the Liquidation Proceedings are separate and distinct proceedings under Australian law, and that the Liquidation Proceedings should be evaluated on their own merits. Based upon the provisions of the Corporations Act, case law, and the evidence presented, the Court finds that the Liquidation Proceedings are collective in nature.

### d. Located In A Foreign Country

The fourth requirement of § 101(23) is that the proceeding must be located in a foreign country. The Debtors' Liquidation Proceedings are undisputedly located in Australia. The Debtors are registered Australian corporations. The Liquidation Proceedings were commenced under, and are governed by, Australian law. The Liquidators/Petitioners are based in Australia. Judicial authority rests with the Australian courts and regulatory authority rests with ASIC. Based upon the evidence, the Court finds that the Liquidation Proceedings are located in a foreign country.

### e. Authorized Or Conducted Under A Law Related To Insolvency Or The Adjustment of Debts

The Corporations Act governs all Australian corporations from the incorporation stage to dissolution. *In re Betcorp*, 400 B.R. at 281. Numerous subsections within the Corporations Act address corporate insolvency and the adjustment of corporate debt. *See* Corporations Act §§ 435A-451D, 461-464, 465A-489E. Australia's Cross-Border Insolvency Bill of 2008 (adopting the United Nations Commission on International Trade Law's Model Law on Cross-Border Insolvency) and the accompanying Explanatory Memorandum by the Australian Senate identify Chapter 5 and § 601CL[9] of the Corporations Act as the Australian laws "relating to" corporate insolvency. (http://www.comlaw.gov.au, select "Advanced Search," enter "C2008B00008," select "Cross-Border Insolvency Bill 2008," last visited Oct. 19, 2010.) The Court finds that as the Liquidation Proceedings are authorized under and are being conducted pursuant to the Corporations Act, this element of § 101(23) is satisfied.

### f. Debtor's Assets and Affairs Under A Foreign Court's Control Or Supervision

Section 101(23) requires a foreign proceeding be conducted in such a manner that the assets and affairs of the debtor are subject to the control or supervision of a foreign court. Section 1502 of the Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."

The Australian Court had significant involvement in Debtors' Voluntary Administration Proceedings. It issued orders, *inter alia*, extending the deadline for convening a second meeting of creditors; providing for notice of employee-creditors; creating a single creditors' committee for all

---

[9] Section 601CL concerns the "cessation of business" of a registered foreign company in Australia. (http://www.comlaw.gov.au, enter "Corporations Act 2001," last visited Oct. 19, 2010.)

ABC Group entities; and approving a mechanism for terminated employees to access government benefits. Moloney Decl. at 8, 11-13. It conducted contested hearings and public examinations, and issued opinions.

The Australian Court's control and supervisory role continues in the Liquidation Proceedings, as provided for by numerous sections of the Corporations Act. Martin Decl. at 12-14; Tr. 6/24 at 77-80 (Hedge). Sections 482-489 provide that a court may terminate the liquidation, require property to be delivered to the liquidator, appoint a special manager on request of the liquidator, fix a claims bar date, and issue arrest warrants. An Australian court can remove a liquidator from his or her position for cause and appoint another liquidator. *Id*. at § 503. Under § 536 of the Corporations Act, if it appears to a court that the actions of a liquidator are in derogation of the Act, the court "may take such action as it thinks fit." *In re Betcorp*, 400 B.R. at 284 (quoting *Cresvale Far East (in liq) v. Cresvale Sec. Ltd,* (2001) 39 A.C.S.R. 622, ¶ 63, 2001 WL 1353240 (Austl.) ("In a voluntary winding up, the appointment of the liquidator is consensual but a liquidator's duties and powers are prescribed by the Corporations Act, and there are elements of supervision by the Court.")). Furthermore, numerous provisions allow interested parties to seek relief from the court. Section 1321 of the Corporations Act provides that "a person aggrieved by any act, omission or decision of . . . a liquidator" may appeal to an Australian court and the court "may confirm, reverse or modify the act or decision, or remedy the omission, as the case may be, and make such orders and give such directions as it thinks fit." Section 511 of the Corporations Act allows both liquidators and creditors to request a court to determine "any question arising in the winding up of a company." A creditor can file an application with the Australian court to review the decisions of a liquidator. Corporations Act § 536. A creditor can also require the liquidator to hold a creditor formation meeting and, in the event

that the liquidator refuses to hold such a meeting, the liquidator's decision is immediately reviewable by an Australian court. *Id*. at §§ 548-52.

In arguing that Australian courts' role in winding up proceedings is extremely limited and does not rise to supervision, RCS points out that 1) actions in the Australian courts related to liquidation proceedings are typically initiated by interested parties, 2) Australian courts give deference to a business' "commercial judgment" and do not direct the day-to-day operations of a debtor, and 3) liquidators proceed with most of their duties without court involvement. Tr. 6/24 at 94, 99-100, 105-107 (Hedge). These examples do not undermine the Australian courts' supervisory role. Most actions in a U.S. Bankruptcy Court are upon the motion of an interested party and are not undertaken *sua sponte*, U.S. Bankruptcy Courts also give deference to business judgments and do not direct the daily activities of debtors, and the majority of U.S. bankruptcies proceed with minimal court involvement.

Based on the provisions of the Corporations Act and the evidence presented, the Court finds that the Liquidation Proceedings are under the control and supervision of a foreign court.

### g. Reorganization Or Liquidation Purpose

The final element of § 101(23) requires that the foreign proceeding have a reorganization or liquidation purpose. The Debtors' creditors resolved at the second creditors' meeting to wind up the companies and commenced the Liquidation Proceedings. *See* Walker Suppl. Decl. at 2-3; Petitioners' Exhibits 3 and 5. The express purpose of winding up proceedings under the Corporations Act is the orderly liquidation of the subject business. *See, e.g.*, Corporations Act § 493. Tr. 8/9 at 33 (Moloney). The Court finds, therefore, that this final element of § 101(23) is satisfied.

In summary, the Court finds that the Liquidation Proceedings are "foreign proceedings" pursuant to § 101(23). Having addressed this preliminary issue, the court now addresses the requirements for recognition of foreign proceedings set forth in §§ 1515 and 1517, turning to § 1517 first.

**2.      The Liquidation Proceedings Meet The Requirements For Recognition Under § 1517**

Section 1517 requires recognition of a foreign proceeding if:

> (1)  such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2)  the foreign representative applying for recognition is a person or body; and
>
> (3)  the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a)

Recognition under §1517 of the Bankruptcy Code is not a "rubber stamp exercise." *In re Gold & Honey, Ltd.,* 410 B.R. 357, 366 (Bankr. E.D.N.Y. 2009)(quoting *In re Basis Yield Alpha Fund (Master),* 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008)). The ultimate burden of proof of each element is on the foreign representative, i.e., the Petitioners. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. 325, 335 (S.D.N.Y.2008).

**a.      The Liquidation Proceedings Are Foreign Main Proceedings**

A foreign main proceeding is defined as a "foreign proceeding pending in the country where the debtor has the center of its main interests ["COMI"]." 11 U.S.C. § 1502(4). A foreign nonmain proceeding is any other proceeding "pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). "Establishment" is defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

Section 1516(c) provides that "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *See In re Tri-Continental Exchange Ltd.,* 349 B.R. 627, 635 (Bankr. E.D. Cal. 2006) (recognizing the winding up proceedings of insurance companies in St. Vincent and the Grenadines as foreign main proceedings). Debtors are registered in Australia. No objection was raised and no evidence presented rebutting the presumption that Debtors' registered office is their COMI.

For further analysis, the District Court for the Southern District of New York has outlined several factors for courts to consider when making a COMI determination, including:

1.   the location of the debtor's headquarters;

2.   the location of those who actually manage the debtor;

3.   the location of the debtor's primary assets;

4.   the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or

5.   the jurisdiction whose law would apply to most disputes.

*In re Bear Stearns,* 389 B.R. 325 (S.D.N.Y. 2008)

The undisputed evidence overwhelmingly supports the determination that each of the Debtors' COMI is Australia: Debtors are incorporated and registered in Australia; Debtors are listed on the Australian stock exchange; Debtors' directors, the Liquidators, and the Receivers reside in Australia; Debtors' principal place of business is Australia; Debtors' books and records are located in Australia; the majority of Debtors' assets are located in Australia; the majority of Debtors' creditors are located in Australia; the Debtors' liquidations and receiverships were initiated and are proceeding under Australian law. The Court finds that the center of main interests of both Debtors is Australia and that

the Liquidation Proceedings are properly considered foreign main proceedings under §§ 1517(b)(1) and 1502(4).

### b. The Petitioners Are Persons & Foreign Representatives

"Foreign Representative" means "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." § 101(24) "The term 'person' includes individual, partnership, and corporation . . ." § 101(41).

The Petitioners Peter Walker and George Moloney are individuals whom the Debtors' creditors appointed as Debtors' Liquidators and, as Liquidators, they administer the liquidation of those assets not governed by the Receivership Proceedings and act as representatives of the Liquidation Proceedings, thereby meeting the requirements of § 1517(a)(2).

### c. The Petition Meets The Requirements of § 1515

The final requirement for recognition under § 1517 is that the petition for recognition meets the procedural requirements of § 1515:

§ 1515. Application for recognition
(a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
(b) A petition for recognition shall be accompanied by —
 (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
 (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
 (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.
(c) A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

(d) The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515

The Court has already determined that the Petitioners are "foreign representatives" and that the Liquidation Proceedings are "foreign proceedings." (§ 1515(a)) The Petitioners properly filed Petitions seeking recognition. (§ 1515(a)) Petitioner Peter Walker's *Statement of Foreign Representative*, at D.I. 4, is acceptable evidence under § 1515(b)(3) of the existence of the foreign proceedings and the appointment of the foreign representatives. The translation requirement of § 1515(d) is inapplicable, as the *Statement* obviates the need for documentary evidence under §§ 1515(b)(1) and (b)(2) and, furthermore, the original language of documents issued by the Australian courts is English. The *Statement* also contains Petitioner Walker's assertion that, to his knowledge, no other foreign proceedings exist with respect to Debtors. (§ 1515(c))

The Petition meets the requirements for recognition under § 1517. The Court now considers RCS's argument that recognition of the Liquidation Proceedings is contrary to U.S. public policy.

3. **Recognition Of The Liquidation Proceedings Is Not Manifestly Contrary To U.S. Public Policy**

Chapter 15 of the Bankruptcy Code was enacted in 2005 to implement the Model Law on Cross-Border Insolvency (the "Model Law") (promulgated by the United Nations Commission on International Trade Law ("UNCITRAL") and available at http://www.uncitral.org/uncitral/en/ uncitral_texts/insolvency/1997Model.html, last visited Oct. 27, 2010). *See In re Tri-Continental Exchange Ltd.,* 349 B.R. at 631-32. The purpose of Chapter 15 is to encourage and increase the cooperation between U.S. courts and authorities and foreign courts and authorities in cross-border insolvency cases; to provide greater certainty and consistency in the law for trade and investment; to promote fair and efficient administration of cross-border insolvencies while protecting the interests

of all creditors and other interested parties, including the debtor; to protect and maximize the value of a debtor's assets; and to facilitate the rescue of financially troubled businesses. 11 U.S.C. § 1501. *In re Ernst & Young, Inc.*, 383 B.R. 773, 776 (Bankr. D. Col. 2008)(recognizing a Canadian receivership as a foreign main proceeding).

Section 1506 allows the Court to refuse to recognize a foreign proceeding under Chapter 15 if such recognition is "manifestly contrary" to U.S. public policy.

> *11 U.S.C. § 1506. Public policy exception*
> Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States.

This exception is to be narrowly construed . *In re Tri-Continental Exchange, Ltd.*, 349 B.R. at 638-39. "This provision follows the Model Law article 5 exactly, is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." *Id*. at fn. 6, quoting H.R.Rep. No. 109-31(I) at 109. *See also In re Ephedra Products Liability Litigation*, 349 B.R. 333, 336 (S.D.N.Y. 2006).

RCS argues that Debtors are seeking recognition of the Liquidation Proceedings at the behest of the Receivers and Bank Syndicate for the purpose of gaining an unfair advantage in the Arizona and Nevada Litigations. The Court's granting of recognition of the Liquidation Proceedings as foreign main proceedings imposes the automatic stay of § 362 and thereby affects the course of the Arizona and Nevada Litigations to the benefit of ABC Group. However, the Court is not persuaded that the effect on the litigation with RCS was the motivating factor behind the filing of the Petition. Petitioner Moloney testified credibly regarding the Petitioners' reasons for seeking recognition of the Liquidation Proceedings under Chapter 15:

> Because of threats by RCS that they were looking to – or threatening to attach to [sic]
> American assets of A.B.C. And a fundamental tenet of the Australian solvency and
> liquidation law is that all creditors should be treated equally and that the assets
> allowable to a company in liquidation should be distributed equally and ratably
> amongst creditors – all creditor [sic] – all unsecured creditors. And I also believe
> that one of my duties as a liquidator was to preserve and protect the assets of the
> company.

Tr. 8/9 at 35 (Moloney).

These reasons are wholly proper.

Furthermore, the Debtors are not receiving protections beyond what debtors in U.S. bankruptcy proceedings receive. The fact that these protections are disadvantageous to RCS does not mean that they violate U.S. public policy. On the contrary, a stay of litigation against a debtor and of the enforcement of a judgment against a debtor is explicitly provided for by §§ 362(1) and (2) of the Bankruptcy Code. The District Court for the Eastern District of Virginia recently held that "[a] conflict between foreign law and U.S. law is a necessary prerequisite to the § 1506 analysis – for absent such conflict the comity and public policy exception questions become moot." *In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547, 568 (E.D. Va. 2010)(remanding the Bankruptcy Court's recognition of German insolvency proceedings for consideration of § 1506). There is no such conflict here.

While not raised by RSC, inadequate notice might be grounds for refusal to grant recognition, pursuant to § 1506. However, the Court has determined that the notice provided by the ABC Group, the Administrators, and the Liquidators was adequate.

The Court finds that recognition of the Liquidation Proceedings is not manifestly contrary to U.S. public policy and the Court will not deny recognition under the public policy exception of § 1506.

### 4.    Relief Granted Upon Recognition

Section 1520 provides that the automatic stay is imposed upon recognition of a foreign proceeding as a foreign main proceeding.[10]  Furthermore, § 1521 allows the court to impose additional relief.

> Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interest of the creditors, the court may, at the request of the foreign representatives, grant any appropriate relief . . .

11 U.S.C. § 1521(a)

The Petitioners are seeking additional relief pursuant to § 1521, as set forth in the proposed order provided to the Court.  RCS has set forth alternative additional relief in its proposed order.  Based upon a review of the record and the additional relief suggested by each party, the Court's companion order sets forth the additional relief the Court deems appropriate.

### B.    RCS'S Lift Stay Motion Is Granted As For A Limited Purpose

Pursuant to § 1520, recognizing the Liquidation Proceedings as foreign main proceedings triggers the automatic stay of § 362.   RCS seeks relief from the automatic stay to 1) reduce the Arizona Verdict to judgment and 2) assert the resulting judgment as a setoff in the Nevada Litigation.  The Debtors object, arguing that such relief would impose unnecessary costs on Debtors and is premature.

The purpose of the automatic stay is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or

---

[10]  "Upon recognition of a foreign proceeding that is a foreign main proceeding – (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor within the territorial jurisdiction of the United States; . . ."  11 U.S.C. § 1520(a).

rehabilitation of the debtor." *St. Croix Condominium Owners v. St. Croix Hotel,* 682 F.2d 446, 448 (3d Cir. 1982). The automatic stay is not meant to be absolute, and the Bankruptcy Code provides for relief from stay in appropriate circumstances. *In re The SCO Group, Inc.,* 395 B.R. 852, 856 (Bankr. D. Del. 2007)*(citing Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd., (In re Wedgewood),* 878 F.2d 693, 697 (3d Cir.1989). Section 362(d)(1) of the Bankruptcy Code provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay-
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

Beyond lack of adequate protection, "cause" is not defined in § 362(d)(1). "Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re The SCO Group, Inc.*, 395 B.R. at 856 (*citing Baldino v. Wilson (In re Wilson*), 116 F.3d 87, 90 (3d Cir.1997); *In re Laguna Assocs. Ltd.,* 30 F.3d 734, 737 (7th Cir.1994); *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del.1993)).

This Court has developed a three-prong balancing test to determine whether to grant relief from the stay to pursue litigation in another forum:

1.   Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;

2.   Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

3.   The probability of the creditor prevailing on the merits.

*In re SCO*, 395 B.R. 852, 857 (Bankr. D. Del. 2007); *See also Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del.1992).

### 1. Relief From Stay Does Not Result In Great Prejudice To Debtors

The first factor the Court must consider in determining whether to grant relief from the automatic stay for "cause" is whether lifting the stay will result in "great prejudice" to the debtors or their estates. Debtors argue that lifting the stay and allowing RCS to convert its verdict into a judgment would force the Debtors to either concede the decision against it or expend considerable funds pursuing its right to appeal. The Debtors have the right to appeal the decision in the Arizona Litigation, but are not required to do so by law. An appeal certainly carries costs, but the Court finds that the costs of appeal do not rise to "great prejudice." Additionally, the Arizona and Nevada Litigations are being pursued and managed by the Receivers, not by the Liquidators/Petitions, *see* Tr. 8/9 at 58 (Moloney), which supports the Court's finding that the Debtors will not suffer "great prejudice" from an appeal.

### 2. The Hardship To RCS Of Maintaining The Stay Considerably Outweighs The Hardship To Debtors

As for the second factor, whether the hardship to the creditor considerably outweighs the hardship to the Debtors and their estates, the Court again finds in favor of RCS. Absent relief from stay, RCS cannot reduce its verdict in the Arizona Litigation to judgment, and therefore cannot seek setoff in the Nevada Litigation. Section 553 of the Bankruptcy Code recognizes and preserves a creditor's setoff rights against a debtor. Even though setoff often results in a creditor receiving a greater percentage of recovery on its claim compared to those creditors without setoff, this seemingly inequitable result is provided for explicitly by the Code. *See* 5 Collier on Bankruptcy ¶ 553.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. (describing setoff as "a lawful preference."). "Conceivably, Congress might have abrogated setoff rights in all bankruptcy proceedings. In practice, Congress has done precisely the opposite . . ." *Id.* (discussing historical reasons for protection of setoff

rights).  The hardship to RCS of not being able to assets its setoff rights in the Nevada Litigation considerably outweighs the minimal hardship to Debtors of appealing the Arizona Verdict.

### 3.  RCS Has A Probability Of Success On The Merits

Finally, the Court must consider the probability that RCS will succeed in 1) having its Arizona Verdict reduced to judgment and 2) receiving a setoff in the Nevada Litigation.  Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case. *In re SCO Group, Inc.,* 395 B.R. at 859 *(citing Int'l Business Machines v. Fernstrom Storage & Van, Co. (In re Fernstrom Storage & Van Co.*), 938 F.2d 731, 737 (7th Cir.1991); *Rexene*, 141 B.R. at 578).

### a.  Reducing The Arizona Judgment To Verdict

Reducing a verdict to judgment is usually a simple ministerial task that does not constitute the continuation of a judicial proceeding, which would be stayed under § 362(a)(1).  *In re Rexnord Holdings, Inc.,* 21 F.3d 522, 527 (7th Cir. 1994).  However, under Arizona law, reducing the Arizona Verdict to judgment requires more than the mere entry of the judgment by the Clerk of Court.  The Arizona Court first must rule on certain post-verdict matters, namely: (1) the application for award of attorneys' fees; (2) the application for costs; (3) the application of award for pre-judgment interest; and (4) the form of judgment.  Due to these requirements, and out of an abundance of caution, RCS seeks relief from stay to seek entry of a verdict.  Courts routinely grant relief from stay to permit a verdict to be reduced to judgment when fees and costs must first be determined.  *See, e.g.*, *In re Beguelin v. Volcano Vision, Inc.*, 220 B.R. 94, 97-98 (B.A.P. 9th Cir. 1998); *In re Nugent*, 254 B,R, 14, 40 (Bankr. D. N.J. 1998).  The rulings that the Arizona Court is required to make prior to entry of judgment do not call into question whether judgment should be entered.  Instead, they ensure that the Arizona Court

has addressed all related matters. The Court finds a strong probability that RCS will succeed in reducing its Arizona Verdict to judgment.

### b. Asserting Setoff Rights In The Nevada Litigation

The automatic stay enjoins "the setoff of any debt owing to the debtor that arose before the commencement of the case. . . ." 362(a)(7). RCS's claim arose pre petition. A creditor is entitled to seek relief from the automatic stay in order to assert its setoff rights. *In re NTG Industries, Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989). Here, Debtors' representatives are prosecuting an action in the Nevada State Court. The imposition of the automatic stay would place RCS at a disadvantage, thereby prompting the Court to exercise its discretion to grant stay relief to RCS. *See Berustein v. IDT Corp.*, 76 B.R. 275, 280 (S.D.N.Y. 1975).

Section 553(a) of the Code does not create an independent federal right to setoff, but merely preserves whatever setoff rights may exist under applicable state law. Here, the merits of any setoff defense asserted by RCS in the Nevada Litigation are properly determined by the Nevada Court. Based on the parties' arguments, the Court is convinced that RCS has at least a slight probability of success in receiving recognition of setoff by the Nevada Court, and therefore meets this requirement. Furthermore, even if the Court were to abstain from any conjecture regarding RSC's likely success in asserting setoff, the totality of the circumstances supports granting relief. All other factors in the Court's analysis strongly favor granting RCS's request for relief, and this Court finds it appropriate to leave the analysis and application of Nevada law to the Nevada Court.

### 4. The Timing Of Relief From Stay

Debtors argue that granting relief at this time is premature because RCS's setoff rights will arise only if a Nevada jury enters a verdict in favor of the Debtors, and the Nevada Litigation has not

yet gone to trial. In order to assert setoff rights, RCS must first reduce the Arizona Verdict to judgment. Allowing RCS to reduce the Arizona Verdict to judgment now forces Debtors either to concede the Arizona Verdict or to lodge an appeal, when it is unknown whether RCS will ever be in a position to seek a setoff . The Court, however, is not convinced that delaying relief is appropriate. As discussed above, the Court finds that the burden on Debtors of appealing the decision in the Arizona Litigation is minimal. In addition, delaying RCS relief to assert setoff before the Nevada Court provides no benefit to the parties and may create judicial inefficiencies if the parties must return to this Court in the future.

## VI. <u>CONCLUSION</u>

The Court finds that the Liquidation Proceedings satisfy §101(23) and §§1517 and 1515 of the Bankruptcy Code and therefore grants the Petitions and recognizes the Australian Liquidation Proceedings of Debtors as foreign main proceedings. The Court further grants RCS's Lift Stay Motion for the limited purposes of allowing RCS to convert its Arizona Verdict to judgment and to seek setoff in the Nevada Litigation. An appropriate order will follow.

Dated: November 16, 2010

Kevin Gross
U.S.B.J.