## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re                                                   :
                                                        :
A.B.C. LEARNING CENTRES LIMITED n/k/a                   :   Chapter 15
ZYX LEARNING CENTRES LIMITED, et al.¹                   :
                                                        :   Case No. 10- 11711 (KG)
                                                        :   Jointly Administered
Debtors in Foreign Proceedings                          :
                                                        :   Hearing Date: Oct. 4, 2011 at10:00 a.m. (ET)
------------------------------------------------------- x   Obj. Deadline: Sept. 22, 2011 at 4:00 p.m. (ET)
```

## LIQUIDATORS' MOTION FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC STAY AND RECOGNITION ORDER AGAINST RCS CAPITAL DEVELOPMENT LLC AND ORDERING PAYMENT OF COSTS AND DAMAGES FOR WILLFUL VIOLATIONS OF THE AUTOMATIC STAY AND RECOGNITION ORDER

Mr. Peter Walker and Mr. Gregory Moloney, as former administrators and now in their capacities as liquidators and foreign representatives (together, the "Liquidators") of A.B.C. Learning Centres Limited n/k/a/ ZYX Learning Centres Limited (in liquidation)(Receivers and Managers appointed) and A.B.C. USA Holdings Pty Ltd. (in liquidation)(Receivers and Managers appointed), who are parties in foreign proceedings (the "Liquidations") under Australia's *Corporations Act 2001* (Cth) (the "Corporations Act"),² file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit "A," (i) enforcing the automatic stay and this Court's Recognition Order (as defined below) against RCS Capital Development LLC ("RCS") and (ii) ordering RCS to pay the Liquidators' costs (including attorneys' fees) in bringing this Motion and other damages resulting from RCS's

---

[1]   The debtors in these jointly administered cases are A.B.C. Learning Centres Limited n/k/a ZYX Learning Centers Limited ("ABC Learning") and A.B.C. USA Holdings Pty Ltd. (together with ABC Learning, the "Debtors" or "ABC").

[2]   The Debtors are also subject to concurrent receiverships under the Corporations Act (the "Receiverships") conducted by Mr. Murray Campbell Smith, Mr. Christopher Honey and Mr. John Patrick Cronin (together, the "Receivers").

willful violations of the automatic stay and this Court's Recognition Order.[3]  In support of this Motion, the Liquidators respectfully state as follows:

## JURISDICTION

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory and legal predicate for the relief sought herein are sections 105(a), 362(a) and (k), 1520 and 1521 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

4.     This Motion seeks to preserve assets that should rightfully be distributed to the Debtors' creditors in accordance with Australian insolvency law by (a) unwinding RCS's unauthorized sale of property in which the Debtors hold a protectable property interest and which should have been held in constructive trust for the Debtors and (b) halting RCS's attempts to elicit Arizona state court rulings concerning the ownership of the Debtors' property that would run directly contrary to rulings already issued by this Court.  RCS's ongoing efforts to circumvent the Debtors' insolvency proceedings interfere with the Debtors' ability to liquidate their assets, channel creditor claims to the Liquidations and ultimately wind-down their affairs.  This Court's aid is required to compel RCS to cease such actions, comply with the automatic stay and Recognition Order and compensate the Debtors for damages caused by RCS's unlawful conduct.

---

[3]     As used herein, "automatic stay" shall mean the stay imposed under sections 362(a), 1520 and 1521 of Title 11 of the United States Code (the "Bankruptcy Code").

5. RCS's violations of the automatic stay and Recognition Order fall into two principle categories. First, following the imposition of the automatic stay, RCS intentionally transferred certain real property that the Debtors are seeking to recover through their Nevada lawsuit to various third parties in order to frustrate the Debtors' attempts to collect such property. RCS conveyed these properties despite an order from the District Court for Clark County, Nevada (the "Nevada Court") finding, among other things, that (a) ABC Learning has a claim affecting title and possession of the property, (b) ABC Learning would be injured by a transfer of the property and (c) ABC Learning was likely to recover such property through its constructive trust claim. These transfers have been ongoing, with the most recent sale having occurred only a little more than a month ago.

6. Second, RCS recently filed a motion (the "Substitution Motion") in the Superior Court of the State of Arizona in the County of Maricopa (the "Arizona Court") seeking to substitute the Debtors' secured creditors (the "Secured Lenders") as defendants and bind them to the judgment in RCS's action against ABC Learning in the Arizona Court (the "Arizona Lawsuit"). RCS will likely contend that the Substitution Motion is directed against third parties rather than the Debtors and, thus, not subject to the automatic stay. However, the Substitution Motion is premised almost entirely on RCS's contention that, upon the appointment of the Receivers, ABC was divested of its interest in all property subject to the Secured Lenders' charges. Aside from the fact that this Court has already come to precisely the opposite conclusion on that very issue (which should trigger estoppel in the Arizona Court), the Substitution Motion violates the automatic stay by asking the Arizona Court to make a judicial determination that would deprive the Debtors' of their property rights.

3

7.     RCS's actions in Arizona and Nevada constitute willful and knowing violations of the automatic stay.  RCS has been involved in these chapter 15 cases since they were commenced – it contested recognition, sought to limit the reach of the automatic stay imposed upon recognition, sought reconsideration of this Court's order granting recognition and applying the automatic stay to all property of the Debtors, and then filed an appeal of this Court's decisions.  Having failed to convince this Court that the automatic stay should not hinder its collection efforts, RCS adopted a novel strategy: ignore this Court's authority and collaterally attack this Court's orders before the Arizona Court.

8.     While it is essential that this Court order RCS to immediately desist from its violations of the automatic stay (and unwind those transaction that occurred in violation of the stay), such an order, standing alone, would be an insufficient remedy.  RCS has already demonstrated a willingness to ignore court orders.  The only way to bring a halt to this persistent pattern of violating the automatic stay is to force RCS, rather than the Debtors, to bear the costs of that willful defiance.  Accordingly, the Liquidators respectfully ask this Court to find RCS in violation of the automatic stay and in contempt of this Court, and order it to pay damages and costs accordingly.

## BACKGROUND

### I.     The Chapter 15 Cases

9.     On May 26, 2010, the Liquidators (then acting as the Debtors' administrators), filed Chapter 15 petitions before this Court on behalf of the Debtors, seeking recognition of the Debtors' Australian administration proceedings, which were subsequently converted to the Liquidations.

10.     RCS appeared in these Chapter 15 cases and filed an objection to recognition.  In particular, RCS asserted that recognition was improper due to the concurrent Receiverships and

that, if recognition was granted, the automatic stay should not apply to assets under the control of the Receivers.

11.     Over the course of two full days, this Court held an evidentiary hearing (the "Recognition Hearing") to determine whether to recognize (i) the Liquidators as the foreign representatives of ABC and (ii) the Liquidations as foreign main proceedings. During the course of the Recognition Hearing, the parties introduced testimony from a total of five witnesses, including two (one on behalf of ABC and one on behalf of RCS) who were qualified as experts in Australian insolvency law.

12.     During the Recognition Hearing, RCS asserted that "the Receivership Proceedings 'trump' or 'dominate' the Liquidation Proceedings" by divesting the Debtors (and the Liquidations) of their assets and that the Liquidations should not be recognized as foreign main proceedings. See *Opinion on Debtors' Petition for Recognition & RCS Capital Development, LLC's Motion for Relief from Stay* [Docket Entry ("D.E.") 101] (the "Opinion") at p. 15. However, both experts on Australian law (including RCS's own witness) testified that the Debtors, and not the Receivers, own the charged assets. See Tr. of Aug. 9, 2010 Hr'g [D.E. 99] at pp. 69:1-3; 116:12-19. Ultimately, this Court rejected RCS's argument and determined that:

> Australian law provides for the concurrent existence of Liquidation and Receivership Proceedings. Liquidators and Receivers have clearly delineated roles under the Corporations Act. Liquidators are appointed by the creditors as a whole and are responsible for winding up the affairs of a company and ultimately dissolving it . . . . Receivers, on the other hand, are appointed by a secured creditor and their primary role is to recover secured assets for the benefit of the secured creditor and return any surplus to the company. . . . The Court finds that the Receivership Proceedings and the Liquidation Proceedings are separate and distinct proceedings under Australian law, and that the Liquidation Proceedings should be evaluated on their own merits. Based upon the provisions of the Corporations Act, case law, and the evidence

> presented, the Court finds that the Liquidation Proceedings are
> collective in nature.

Opinion at pp. 15-16 (internal citations omitted). Thereafter, the Court granted recognition to the Liquidators as the foreign representatives of the Debtors and the Liquidations as foreign main proceedings. See *Order Granting Recognition of Foreign Proceedings and Related Relief* [D.E. 102] (the "Recognition Order"). Pursuant to the Recognition Order, the automatic stay was imposed with respect to all property of the Debtors within the territorial jurisdiction of the United States as mandated by section 1520 of the Bankruptcy Code. Recognition Order at p. 2.

13. On November 30, 2010, RCS filed a motion seeking to amend or alter the Recognition Order, claiming that it conflicted with the Opinion by (i) recognizing the Receiverships and (ii) imposing the automatic stay over property of the Debtors under the control of the Receivers. See *Motion of RCS Capital Development to Amend or Alter Chapter 15 Recognition Order* [D.E. 104] (the "Motion to Reconsider"). Through the Motion to Reconsider, RCS again sought to limit the scope of the automatic stay. In particular, RCS asserted that the automatic stay should not be applied to assets controlled by the Receivers based on RCS's erroneous claim that the ABC corporate entities were superseded by, and their interests transferred to, the Receiverships. After conducting a further hearing on the matter, this Court amended its Recognition Order to make clear that it had not recognized the Receiverships. See *Memorandum Order* [D.E. 116] (the "Order on Reconsideration") at p. 2. Moreover, the Court rejected RCS's argument that the Debtors had ceased to exist and that property controlled by the Receivers was not protected by the automatic stay under section 1520 of the Bankruptcy Code:

> The Liquidators filed the petitions seeking recognition under
> Chapter 15 *on behalf of* the Debtor ABC Learning Centres
> Limited, n/k/a ZYX Learning Centres Limited, and A.B.C. USA
> Holdings Pty Limited. Section 1502(1) defines "debtor" as "an
> entity that is the subject of a foreign proceeding." The Debtors are
> the corporate entities, and the property of the estate includes the

6

> Debtor entities' property, regardless of whether the property is
> subject to the control of Liquidators or the Receivers.

Order on Reconsideration at p. 3 (emphasis in original). RCS has filed an appeal of the Recognition Order and Order on Reconsideration, which is presently pending before the United States District Court for the District of Delaware.

## II.    The Nevada Action

14.    On or about June 30, 2008, ABC Learning and American Child Care Properties, LLC ("ACCP") entered into a Deed of Acknowledgment pursuant to which the parties agreed that ABC Learning had advanced ACCP approximately AUD$35 million[4] to purchase eleven real properties throughout the United States and develop and construct childcare centers on such properties (the "Properties"). Upon completion and satisfaction of certain conditions, the Properties were to be transferred to ABC Learning (or one of its subsidiaries). In accordance with their agreement, ACCP used the proceeds of ABC Learning's advance to purchase and develop the Properties.

15.    In violation of their agreement, ACCP failed to convey the Properties to ABC Learning upon completion. Instead, ACCP conveyed the Properties (and the rest of its assets) for no consideration to RCS,[5] which subsequently began selling such properties to third parties.

16.    Accordingly, on March 10, 2009, ABC Learning filed, in the Nevada Court, a complaint against ACCP, its principal and RCS alleging, among other things, a constructive trust

---

[4]    Including interest, the amount advanced by ABC to ACCP was ultimately deemed to be AUD$41 million.

[5]    Upon information and belief, on or about November 11, 2008 (within five days of ABC going into administration and receivership), RCS and Kenneth Krynski, then the sole member of ACCP, entered into an agreement whereby RCS acquired ACCP's membership interests. Shortly thereafter, RCS and ACCP entered into a liquidation agreement, whereby ACCP's assets and liabilities, including the Properties, were transferred to RCS.

over the Properties (the "Nevada Action").[6] ABC Learning also filed a *lis pendens* against each of the Properties.

17.    On April 6, 2009, ACCP and RCS filed a motion to expunge the *lis pendens*, followed by a renewed motion to expunge the *lis pendens* on August 20, 2009. After full briefing and a hearing on September 10, 2009, the Nevada Court entered an order denying the motion and concluded, among other things, that:

> [ABC Learning's] Constructive Trust claim affects the title or possession of the real property described in the Notices of Pendency of Action;
>
> [ABC Learning] would be injured by any transfer of an interest in the property before the action is concluded.
>
> [ABC Learning] has established that it is likely to prevail on the merits of its Constructive Trust Claim.

*Order Denying Defendants' Renewed Motion to Expunge Lis Pendens* (the "Lis Pendens Order"). [Case No. A584835 (Sept. 23, 2009)] (a copy of which is attached to the Declaration of Andrew Rosenblatt in support of this Motion dated as of September 8, 2011 (the "Rosenblatt Declaration") as Exhibit "A").

18.    Despite the fact that (i) the Nevada Action remains pending before the Nevada Court, (ii) a *lis pendens* remains affixed to each of the Properties and (iii) the automatic stay remains in effect, RCS has continued to sell the Properties to various third parties (such transfers

---

[6]    The complaint in the Nevada Action was docketed by the clerk of the Eighth Judicial Court in and for Clark County, Nevada as ABC Learning Centres Limited v. American Child Care Properties, LLC and assigned case number A584835. On or about March 10, 2010, having obtained leave of the Nevada Court, ABC Learning filed a First Amended Complaint, which added its subsidiary ABC Developmental Learning Centers (U.S.A.), Inc. ("ABC Delaware") as a party plaintiff.

collectively, the "Nevada Transfers"). Since entry of the Recognition Order, RCS has sold no less than three of the Properties, with the most recent sale closing in late July 2011.[7]

19. Due perhaps to the presence of the *lis pendens*, certain of those sales have occurred at steep discounts to market prices. For example, on March 24, 2011, RCS sold one such property, known as the "Russell Property," to Las Vegas CLA Partners, Ltd. for approximately $600,000.[8] However, as of March 29, 2011, the Russell Property was appraised at approximately $2.4 million.[9] Moreover, the Clark County Assessor's office recently assigned a 2010-2011 taxable value of $2,154,954 to the Russell Property. Thus, the Russell Property was sold by RCS at approximately 25-28 percent of fair market value.

20. If the Nevada Transfers are not unwound in their entirety, the Debtors are in substantial danger of being deprived not only of the Properties, but also of any reasonable chance to recover on their claims against RCS and ACCP in the Nevada Action. RCS and ACCP have not provided the Debtors with an accounting of the funds that they have received in exchange for

---

[7] On June 1, 2011, RCS entered into an agreement to sell two of the Properties, known respectively as the Summerlin and Robindale properties, to Jinbo, LLC. Originally, the agreement contemplated an aggregate purchase price of $6,663,212.00 for the two Properties. Despite the pendency of the Nevada Action (and the related *lis pendens*), RCS made several representations in connection with the agreement, including that "there are no legal actions, suits or other legal or administrative proceedings pending or threatened against the Property, and [RCS] is not aware of any facts which might result in any such action, suit or other proceeding." See *Agreement for Purchase and Sale of Real Property for Summerlin and Robindale Property dated June 1, 2011*, a copy of which is attached to the Rosenblatt Declaration as Exhibit "B." On June 29 and June 30, 2011, RCS and Jinbo, LLC respectively entered into an amendment reducing the purchase price of the Properties by $300,000 in exchange for Jinbo, LLC's waiver of closing conditions, except as to those expressly preserved by the amendment. See *Addendum to Agreement for Purchase and Sale of Real Property*, a copy of which is attached to the Rosenblatt Declaration as Exhibit "C." The sale of the two Properties ultimately closed for $6,363,212.00 on July 21, 2011. See *Grant Bargain Sale Deed*, a copy of which is attached to the Rosenblatt Declaration as Exhibit "D."

[8] A copy of the Agreement for Purchase and Sale of the Russell Property is attached to the Rosenblatt Declaration as Exhibit "E."

[9] See *A Summary Appraisal Report of the Existing Tutor Time Childcare Center Located at 2488 East Russell Road, Las Vegas, Clark County, Nevada 89120*, a copy of which is attached to the Rosenblatt Declaration as Exhibit "F."

9

the Properties. Nor has RCS or ACCP pledged to set aside the proceeds of the Nevada Transfers pending resolution of the Nevada Action. As a result, the Debtors are utterly unprotected with respect to their claims against RCS and ACCP in the Nevada Action.

## III.   The Arizona Action

21.     In June 2008, ABC Delaware and RCS entered into an agreement to develop certain child care centers in the United States, and ABC Learning guaranteed ABC Delaware's obligations under that agreement. In October 2008, RCS brought suit against ABC Learning and ABC Delaware in the Arizona Court, asserting, among other things, breach of contract. See *Verified Petition under Chapter 15 for Recognition of Foreign Proceedings and Related Relief* [D.E. 7] (the "Verified Petition") at p. 11.

22.     In response to the Arizona Lawsuit, ABC Learning filed an answer stating, among other things, that ABC Learning was subject to insolvency proceedings in Australia that imposed a world-wide moratorium on the rights of creditors to, inter alia, commence or continue suits against ABC Learning, its subsidiaries, or any of their respective properties, wherever located, without the consent of the Liquidators (then administrators) or leave of the Federal Court of Australia.

23.     Disregarding the moratorium, RCS continued to prosecute the Arizona Lawsuit and ultimately obtained a jury verdict. Verified Petition at p. 11. Shortly thereafter, RCS began collection efforts, which included sending letters threatening to attach the Debtors' property located in the United States. Id. at p. 11.

24.     In order to protect ABC's assets in the United States, on May 26, 2010, the Liquidators filed the Chapter 15 petitions described above. Although RCS was unsuccessful in opposing recognition of the Liquidations, it did receive relief from the automatic stay to (i)

10

reduce its jury verdict in the Arizona Lawsuit to a final judgment and (ii) use that final judgment as a basis for asserting a right of setoff against ABC Learning in the Nevada Action.

25.     On August 10, 2011, RCS filed the Substitution Motion with the Arizona Court seeking to substitute or join the Secured Lenders as parties bound by the judgment in the Arizona Lawsuit and responsible – at a minimum – for the portion of the judgment constituting the fees of RCS's attorney.  See Substitution Motion, a copy of which is attached to the Rosenblatt Declaration as Exhibit "G."  However, in order to justify the relief sought in the Substitution Motion, RCS requires a judicial determination from the Arizona Court that the Debtors' property interests have passed to the Secured Lenders.  On August 29, 2011, ABC Learning filed an objection to the Substitution Motion, a copy of which is attached to the Rosenblatt Declaration as Exhibit "H."  The Substitution Motion has not yet been scheduled for a hearing before the Arizona Court.

## RELIEF REQUESTED

26.     By this Motion, the Liquidators respectfully request that this Court: (a) enforce the automatic stay and Recognition Order with respect to the Nevada Transfers and declare such transfers to be void *ab initio*; (b) require RCS to take such steps as are necessary to unwind the Nevada Transfers; (c) enforce the automatic stay and Recognition Order as to the Substitution Motion and hold that motion, and any findings of fact, conclusions of law or any other decision (other than dismissal) that may be entered by the Arizona Court in respect of the Substitution Motion to be void *ab initio*; (d) require RCS to dismiss the Substitution Motion with prejudice; and (e) order RCS to pay the Debtors' costs and expenses – including, but not limited to, attorneys' fees – for bringing this action, opposing the Substitution Motion and other damages pursuant to sections 105(a) and 362(k) of the Bankruptcy Code for willful violations of the automatic stay and this Court's Recognition Order.

11

## BASIS FOR RELIEF REQUESTED

**I.      The Automatic Stay Bars Actions against the Debtors and their Property**

27.     When this Court recognized the Liquidations as foreign main proceedings, an automatic stay arose that prohibited actions against the Debtors and all of their property located in the United States.  As specified by section 1520 of the Bankruptcy Code, upon recognition of a foreign main proceeding "sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States."  11 U.S.C. § 1520(a)(1).  Section 362(a) of the Bankruptcy Code imposes an automatic stay on, among other things, the "commencement . . . of a judicial . . . action . . . against the debtor that was or could have been commenced before the commencement of the case" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case."  11 U.S.C. § 362(a)(1), (6).  Moreover, upon recognition of a foreign main proceeding, section 1521 allows a bankruptcy court to "grant any appropriate relief."  11 U.S.C. § 1521.

28.     In this case, upon recognition of the Liquidations as foreign main proceedings, this Court granted the Debtors "all relief afforded foreign main proceedings pursuant to § 1520 of the Bankruptcy Code."  Additionally, pursuant to section 1521, this Court ordered, among other things that:

> all persons and entities are permanently enjoined from seizing, repossessing, transferring, relinquishing or disposing of any property of the Debtors or the proceeds thereof in the United States"; [and]
>
> all persons and entities are enjoined from commencing or continuing any action or legal proceeding against the Debtors, or any of their property . . . ."

Recognition Order at p. 2.  Upon reconsideration, this Court reiterated the continued validity and importance of such relief, noting that:

> [t]he imposition of an automatic stay upon recognition of a foreign main proceeding is necessary to ensure that the goals of Chapter 15 – including cooperation between U.S. courts and foreign courts, fair an efficient administration of cross-border insolvencies, and the protection and maximization of the value of the debtors' assets – are met.

Order on Reconsideration at p. 3. Accordingly, to the extent that RCS's actions in either Arizona or Nevada constitute a seizure, transfer, relinquishment or disposal of the Debtors' property (or the proceeds thereof), or amount to the commencement or a continuance of an action against the Debtors or their property, RCS is in violation of the automatic stay and the Recognition Order.

## II. RCS Violated the Automatic Stay and the Recognition Order by Selling the Properties

### A. The Properties are Protected by the Automatic Stay and the Recognition Order

29.     RCS violated the automatic stay and this Court's Recognition Order by selling the Properties in which the Debtors have a protectable property interest. RCS may contend that the Properties fall outside the scope of the automatic stay because the Debtors' property interests have not been fully adjudicated and because the Properties were never turned over to the Debtors. If so, RCS is incorrect.

30.     The Third Circuit Court of Appeals has made clear that the scope of the automatic stay is extremely broad. See, e.g., Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982) ("The legislative history to section 362 and our jurisprudence leave no doubt that the scope of the automatic stay is broad."). Indeed, the Third Circuit has explicitly held that the prohibition against third parties exercising control over property of the estate "applies regardless of whether the property is in the debtor's possession." Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1035 n. 2 (3d Cir. 1991). The mere fact that

13

RCS has thus far refused to turn the Properties over to the Debtors in no way limits application of the automatic stay.

31.     Likewise, the fact that the Nevada Action – which is intended to force exactly that turnover – has not yet been concluded is also no bar to the application of the automatic stay. Property of the estate is defined by Section 541 of the Bankruptcy Code and is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541; see AcandS, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 260 (3d Cir. 2006), cert. denied, 547 U.S. 1159 (2006). In the absence of controlling bankruptcy law, determinations of substantive property rights in potential estate assets are governed by state law. See Butner v. United States, 440 U.S. 48, 54 (1979); O'Dowd v. Trueger (In re O'Dowd), 233 F.3d 197, 202 (3d Cir. 2000). Those substantive property rights are exactly what are presently being litigated before the Nevada Court.

32.     However, even prior to the Nevada Court issuing its ruling, the Properties are protected by the automatic stay. The automatic stay applies to all property over which a debtor has a colorable claim of ownership. See, e.g., In re Chestnut, 400 B.R. 74, 82 (N.D. Tex. 2009), aff'd, 356 Fed.Appx. 732 (5th Cir. Dec.17, 2009) ("the automatic stay prevented action by Templeton against the Eastland County property . . . so long as Debtor has . . . a colorable basis for claiming an interest in the property . . . ."); In re Levenstein, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007) (applying the automatic stay where the "debtor had an actual interest in property albeit an interest that had not yet been judicially determined by a court."). Such a rule is only logical – a contrary finding would allow (or even encourage) parties sued by a debtor to divest themselves of property (exactly as RCS has done through the Nevada Transfers) and force the

14

debtor to "chase" such property through fraudulent transfer litigation. Such costly collection efforts are exactly what the automatic stay is designed to prevent.

33. Significantly, here the Debtors' claim to an interest in the Properties is more than merely colorable. In connection with RCS's motion to expunge ABC Learning's *lis pendens* on the Properties, the Nevada Court has already determined that "[ABC Learning] has established that it is likely to prevail on the merits of its Constructive Trust Claim." *Lis Pendens* Order at p. 3. The Nevada Court also determined that ABC Learning's "Constructive Trust claim affects the title or possession of the real property described in the Notices of Pendency of Action." Id. at p. 3. Finally, the Nevada Court concluded that ABC Learning "would be injured by any transfer of an interest in the property before the action is concluded." Id. at p. 3.

34. Moreover, in connection with discovery taken in the Nevada Action, Mr. Kenneth Krynski, the former principal of ACCP, admitted that ABC Learning is the rightful owner of the Properties. At Mr. Krynski's deposition taken on July 21, 2011, he stated that:

> American Child Care Properties was working to ABC's benefit to finish the properties that they had originally provided the funding for that was now memorialized in the Deed of Acknowledgement and that American Child Care Properties had an obligation to continue to provide those properties to ABC's benefit because that's what – that's what was – the parties had agreed to. And that's what was required to satisfy the – the – the deposits.

Deposition of Kenneth Krynski, Vol. II taken on July 21, 2011 at pp. 191-192, a copy of which is attached to the Rosenblatt Declaration as Exhibit "I." Given that ABC Learning has already established that it has a meritorious claim of ownership of the Properties, the Properties are protected by the automatic stay and the Recognition Order. Accordingly, RCS violated the automatic stay and Recognition Order by engaging in the Nevada Transfers.

15

### B. The Nevada Transfers are Void *ab Initio*

35. Because any of the Nevada Transfers that occurred after entry of the Recognition Order violated the automatic stay and the terms of such order, such transfers are void *ab initio*. In the Third Circuit, actions taken in violation of the automatic stay are void *ab initio*. See Constitution Bank v. Tubbs, 68 F.3d 685, 692 (3d Cir. 1995); Fleet Consumer Discount Co. v. Graves, 33 F.3d 42, 247 (3d Cir. 1994); Maritime Electric Co. Inc. v. United Jersey Bank, 959 F.2d 1194, 1207 (3d Cir. 1991).[10] As such, the Liquidators respectfully request that the Court enter an order (i) holding that RCS violated the automatic stay and Recognition Order by engaging in the Nevada Transfers, (ii) declaring the Nevada Transfers void *ab initio*, (iii) ordering RCS to take all steps necessary to unwind the Nevada Transfers and (iv) ordering RCS to refrain from engaging in any similar transactions, pending resolution of the Nevada Action.

## III. RCS Violated the Automatic Stay and Recognition Order by Filing the Substitution Motion

36. RCS violated the automatic stay and this Court's Recognition Order by filing the Substitution Motion. Through the Substitution Motion, RCS has asked the Arizona Court to substitute the Debtors' Secured Lenders as defendants bound by the judgment against ABC Learning in the Arizona Lawsuit, notwithstanding that they were never named as defendants, were not served with notice of the proceedings and have no relationship whatsoever with RCS. The Debtors are particularly concerned about RCS's Substitution Motion because, although it is nominally directed against third parties, it calls for the Arizona Court to make broad legal and

---

[10] The Third Circuit has carved out only a narrow exception to the rule that actions taken in violation of the stay are void *ab initio*. In the limited circumstances in which a party seeks retroactive relief from the stay, the actions in question may be deemed "voidable" pending the resolution of the motion, rather than void *ab initio*. See In re Siciliano, 13 F.3d 748 (3d Cir. 1994).

factual findings concerning the Debtors' property interests in direct opposition to findings already entered by this Court.

37.     RCS will likely contend that the Substitution Motion is an action against third-parties who are not protected by the automatic stay. That argument is flawed for at least two reasons. First, the automatic stay protects not just the Debtors, but also the Debtors' property. The Substitution Motion concerns the Debtors' property because it is predicated on the argument (and can only be granted upon a finding) that the Debtors' property actually belongs to the Secured Lenders. Second, the automatic stay *does* protect third parties in the rare instances that a third party has an identity of interests with a debtor, such as where a claim against a third party would trigger liability by the debtor. Accordingly, RCS violated the automatic stay by filing the Substitution Motion.

> A.     The Substitution Motion Concerns the Debtors' Property

38.     The Substitution Motion violates the automatic stay because it is an impermissible continuation of a judicial process against the Debtors and their property. See 11 U.S.C. §§ 362(a)(1). Although the Substitution Motion is nominally directed against third parties, it is predicated on the Arizona Court finding that the Debtors' Secured Lenders have succeeded to the Debtors' property interests. For obvious reasons, such a finding would directly impact the Debtors and their property interests and, therefore, constitutes an action against the Debtors.

39.     According to RCS, it is appropriate to substitute the Secured Lenders for ABC Learning in the Arizona Lawsuit based on Arizona Rule of Civil Procedure 25(d), which is broadly similar to Federal Rule of Civil Procedure ("FRCP") 25(c). See Substitution Motion at p. 2. However, even according to RCS, substitution under rule 25 is *only* appropriate where "one party transfers its assets to another or where a corporation ceases to exist and another entity has taken its rights and obligations." Substitution Motion at p. 2 (citing U.S. ex rel. Acme Granite &

17

Tile Co. v. F.D. Rich Co., 437 F.2d 549, 552 (9th Cir. 1970); Luxliner P.L. Export Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71 (3d Cir. 1993)). RCS has asked the Arizona Court to find that substitution is appropriate in this case because "under Australian law, when a company goes insolvent . . . that crystallization of charges results in the company having no rights in the charged assets." Substitution Motion at p. 3. In this case, according to RCS, the crystallization of the Secured Lenders' charges on their collateral completely divested the Debtors of their equitable interest in their assets and/or resulted in the effective termination of the Debtors as distinct entities.

40.     These arguments may, with good reason, sound familiar to the Court. RCS advanced *precisely* the same arguments in connection with its Motion for Reconsideration. The Court resoundingly rejected RCS's argument at the time, stating:

> RCS asserts that the property under the control of the Receivers – which is substantially all of the Debtors' assets, and upon which RCS wants to execute judgment – is not part of the Debtors' bankruptcy estate and therefore is not protected by the automatic stay of 11 U.S.C. § 362, applicable to foreign main proceedings under §§ 1520(a)(1). The Court rejects this argument.

Order on Reconsideration at p. 2. RCS also advanced a similar argument on appeal from the Recognition Order and Order on Reconsideration. Tellingly, RCS did not consider this Court's firm rejection of its argument on ownership of the Debtors' property (or its appeal of that rejection) to be relevant in briefing the Substitution Motion. The Debtors have nonetheless been damaged, as they have been required to bear the expenses of formulating and filing a response.

41.     While it is very likely that the Arizona Court will find that RCS is collaterally estopped from prosecuting the Substitution Motion, the Substitution Motion should be deemed void *ab initio* as an impermissible attempt to shift authority for determining the Debtors' property rights from this Court (which has already rejected RCS's position) to a state court that

18

RCS hopes will rule more favorably. Given that the automatic stay and Recognition Order bar the continuation or commencement of actions against the Debtors and their property, such a shift of responsibility is impermissible. See 11 U.S.C. § 362(a). It is self-evident that a ruling that the Debtors do not, in fact, own their property would impact both the Debtors and their property. Moreover, the automatic stay centralizes determinations of a debtor's property rights in the bankruptcy court in order to promote orderly reorganization or liquidation. See Borman, 946 F.2d at 1036. In contrast, the Substitution Motion is predicated on the Arizona Court making a determination with respect to ownership of the Debtors' property that is directly at odds with a ruling of this Court. See Substitution Motion at p. 3. Permitting the Arizona Court to undercut this Court's rulings on the Debtors' property rights would profoundly interfere with the Liquidations. As such, the Substitution Motion should be barred by the automatic stay and Recognition Order.

> B.  The Stay and Recognition Order Bar Actions that
>     Give Rise to Indemnification Claims against the Debtors

42.  Although the Debtors strongly disagree with the premise of the Substitution Motion, if that premise is accepted, the automatic stay extends to the Secured Lenders because they would have a right of indemnification against the Debtors for any costs, expenses or liability arising under their indenture. An identity of interests sufficient to warrant extension of the automatic stay exists where a third party defendant has a right of indemnification against a debtor. See In re North Star Contracting Corp., 125 B.R. 368, 370 (S.D.N.Y. 1991) ("an identity of interests exists between a debtor and a third party non-debtor when a right to indemnification exists."); In re Lomas Fin. Corp., 117 B.R. 64, 68 (S.D.N.Y.), remanded, 932 F.2d 147 (2d Cir. 1991) (citing A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.), 788 F.2d 994, 999 (4th Cir. 1986)). The Liquidators understand that the Debtors are required to indemnify the

Secured Lenders for any loss (which includes, among other things, any claim, damage or loss) that the Secured Lenders suffer or are liable for in respect of the occurrence of any event of default by the Debtors and in connection with any Secured Lender exercising its powers following an event of default by the Debtors.[11] Thus, the Substitution Motion, which is nominally an attempt by RCS to recover against the Secured Lenders, would likely result in an increase of the Secured Lenders' claims against the Debtors. As such, the Substitution Motion is in violation of the automatic stay, and must be treated as void *ab initio*.

**IV.     RCS Should be Sanctioned for Repeatedly
          <u>Violating the Automatic Stay and Recognition Order</u>**

      **A.     RCS Willfully Violated the Automatic Stay and Recognition Order by
          <u>Engaging in the Nevada Transfers and Filing the Substitution Motion</u>**

43.     Pursuant to section 362(k), "an individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Although the statute refers to "an individual," the Third Circuit has recognized that section 362(k) also applies to corporations and other entities. <u>See</u> <u>In re Atl. Bus. and Cmty. Dev. Corp.</u>, 901 F.2d 325, 329 (3d Cir. 1990); <u>In re Montgomery Ward, LLC</u>, 292 B.R. 49 (Bankr. D. Del. 2003). Section 362(k) created a private right of action for parties damaged by a willful violation. <u>See</u> <u>Pettitt</u> v. <u>Baker</u>, 876 F.2d 456, 457 (5th Cir. 1989) (holding that the newly enacted subsection (h), which is now subsection (k), "create[d] a private remedy for one injured by a willful violation of an automatic stay.").

---

[11]   The Liquidators reserve all rights with respect to any claim that may be asserted by the Secured Lenders for indemnification, contribution or any similar right or claim, and nothing herein shall be deemed or construed as an admission in connection therewith.

44.     RCS willfully violated the automatic stay by (i) engaging in the Nevada Transfers and (ii) filing the Substitution Motion. A violation of the automatic stay is willful "where the defendant (1) knows about the automatic stay, and (2) the defendant's actions that violate the stay are intentional." In re Montgomery Ward, LLC, 292 B.R. at 57; see also In re Panek, 402 B.R. 71, 76 n.5 (Bankr. D. Mass. 2009). In other words, a party may willfully violate the stay without having specific intent to do so. See In re Montgomery Ward, LLC, 292 B.R. at 57 (finding that "[n]o specific intent requirement exists" to find a party liable for a willful violation of the automatic stay).

45.     RCS was aware of the automatic stay. RCS has been heavily involved in all stages of the Chapter 15 cases, and has repeatedly sought to restrict application of the automatic stay. RCS also intentionally (i) engaged in the Nevada Transfers and (ii) filed the Substitution Motion. In both cases, RCS undertook affirmative steps of the type that give rise to a violation of the automatic stay. In sum, RCS's violations of the stay were willful because RCS had knowledge of the stay and intentionally undertook the actions that violated the stay. See Montgomery Ward, 292 B.R. at 57.

46.     Here, however, RCS's actions were more than simply willful; they were egregious. First, the Nevada Transfers demonstrate more than disregard for the Debtors bankruptcy protections – they evince an unmistakable intent to injure the Debtors. The Nevada Court informed RCS – through a formal order – that ABC had a protectable property interest in the Properties that would be damaged if the Properties were transferred. RCS refused to heed the Nevada Court's warning and sold certain of the Properties anyway, sometimes at vastly below market prices. Likewise, RCS's actions before the Arizona Court demonstrate its intent to attack this Court's authority and undermine the Debtors' ability to liquidate their assets. Most

obviously, RCS's request that the Arizona Court declare that the Secured Lenders, not the Debtors, own the charged assets runs directly contrary to this Court's Order on Reconsideration. See Order on Reconsideration at p. 3. More insidious, however, is that such a ruling would make it virtually impossible for the Debtors' property to be liquidated. As the discounted sale prices RCS obtained for the Properties demonstrate, it is exceptionally difficult to liquidate property at market rates where the ownership of such property is in dispute. Given the egregious nature of RCS's actions, this Court should apply whatever penalties are necessary, including punitive damages, to ensure compliance with the automatic stay and its Recognition Order.

> B. RCS is Liable for Damages for Willfully
> Violating the Automatic Stay and Recognition Order

47. RCS is obligated to reimburse the Debtors for the actual damages caused by its violations of the automatic stay. Violations of the automatic stay trigger a mandatory award of actual damages, including costs and attorneys' fees. See 11 U.S.C. § 362(k)(1) (the debtor "*shall* recover actual damages, including costs and attorneys' fees," for willful violations of the automatic stay) (emphasis added).

48. Moreover, pursuant to section 105(a) of the Bankruptcy Code, this Court has the inherent authority to enforce its own orders. Here, the Recognition Order (as modified by the Order on Reconsideration) specifically prohibited parties from, among other things, (i) transferring, relinquishing, or other exercising control over the Debtors' property and (ii) commencing or continuing legal actions regarding the Debtors or their property. See Recognition Order at p. 2. By engaging in the Nevada Transfers and filing the Substitution Motion, RCS has willfully violated that order, and imposed substantial costs (including the cost of filing this Motion and opposing the Substitution Motion) on the Debtors. If the automatic stay embodied by the Recognition Order is to have any force and effect, it must make parties who

22

violate its strictures responsible for the costs they inflict on the Debtors (and their creditors). Here, it cannot be disputed that the Debtors have had to bear significant costs as a result of RCS's willful violations of the Recognition Order. As the Supreme Court has noted, "sanctions in civil contempt proceedings may be employed 'for either or both of two purposes: *to coerce the defendant into compliance with the court's order*, and to compensate the complainant for losses sustained.'" <u>Local 28 of the Sheet Metal Workers' Int'l Ass'n</u> v. <u>EEOC</u>, 478 U.S. 421, 443 (1986) (citations omitted) (emphasis added). In light of RCS's persistent and egregious violations of the Recognition Order, a degree of coercive pressure by this Court is more than warranted to enforce compliance. Accordingly, the Court should award damages to the Debtors for the actual damages caused by those violations, including costs and attorneys' fees, as well as whatever further amounts are necessary to ensure that RCS ceases its violations of the automatic stay and this Court's orders.

## CONCLUSION

WHEREFORE, the Liquidators respectfully requests that the Court enter an order, granting the relief requested herein and such other and such further relief as the Court may deem just and proper.

Dated:  Wilmington, Delaware
         September 8, 2011

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Joel A. Waite (No. 2925)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600

- and -

CHADBOURNE & PARKE LLP
Howard Seife, Esq.
Andrew Rosenblatt, Esq.
Members of the Firm
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100

*Attorneys for the Liquidators*